IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL ALVARADO MARTINEZ; <br> ALEXANDRO PEREZ; <br> NELSON EGUIZABAL BRITO; <br> CARLOS CASTRO; and <br> ALEXIS MARQUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST CLASS INTERIORS OF NAPLES, LLC; JOSE ROBERTO REYES Individually and d/b/a FIRST CLASS INTERIORS OF NAPLES, LLC; and MR. DRYWALL SERVICES, LLC, <br><br> Defendants. | Civil Action No.: _____ |

## COMPLAINT

Plaintiffs bring this complaint against Defendants First Class Interiors of Naples, LLC, Jose Roberto Reyes, individually and d/b/a First Class Interiors of Naples, LLC, and Mr. Drywall Services, LLC (collectively "Defendants"), on behalf of themselves and all others similarly-situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Tenn. Code Ann. § 50-1-102 ("Fraud in Hiring"), and for violation of the Internal Revenue Code, 26 U.S.C. § 7434 ("Fraudulent filing of IRS information returns"), and would allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a collective action, on behalf of themselves and all persons similarly

situated. Specifically, jePlaintiffs seek redress for Defendants' willful failure to compensate them for hours worked at the applicable federal minimum wage and for failing to compensate them for hours worked in excess of 40 hours per week at one and one half times the regular hourly rate.

2. Plaintiffs additionally bring an FLSA retaliation claim pursuant to 29 U.S.C. § 215 against Defendant Reyes and First Class Interiors of Naples, LLC, as a collective action, on behalf of themselves and all persons who complained about their wages and were wrongfully terminated as a result of exercising their wage and hour rights.

3. Plaintiffs bring claims pursuant to 26 U.S.C. § 7434 against Defendants First Class Interiors of Naples, LLC and Reyes based on fraudulent filing of IRS informational returns. Specifically, these Defendants willfully filed fraudulent informational returns classifying Plaintiffs as independent contractors rather than employees. As a result, Plaintiffs have been prejudiced in the amount of wages paid due to their misclassification.

4. Plaintiff Martinez brings claims of fraud in hiring pursuant to Tenn. Code Ann. § 50-1-102 on behalf of himself and a class of employees against Defendants Reyes and First Class Interiors of Naples, LLC, for misrepresenting material facts related to their employment, for the purpose of inducing Plaintiff Martinez and similarly situated class members to move to Tennessee in reliance on those false statements.

## **PARTIES**

5. Plaintiff Daniel Alvarado Martinez is a resident of Jefferson Parish, Louisiana. He was employed by Defendants from about July 10, 2017 until May 24, 2018.

6. Plaintiff Alexandro Perez is a resident of Davidson County, Tennessee. He was employed by Defendants from about July 1, 2017 until February 9, 2018.

7. Plaintiff Nelson Eguizabal Brito is a resident of Davidson County, Tennessee. He was employed by Defendants from about August 21, 2017 until March 31, 2018.

8. Plaintiff Carlos Castro is a resident of Davidson County, Tennessee. He was employed by Defendants from about July 30, 2017 until May 26, 2018.

9. Plaintiff Alexis Marquez is a resident of Davidson County, Tennessee. He was employed by Defendants from about August 27, 2017 until March 31, 2018.

10. Defendant Jose Roberto Reyes ("Reyes") is a resident of the State of Florida. Upon information and belief, he is the owner of and does business as First Class Interiors of Naples, LLC.

11. Defendant First Class Interiors of Naples, LLC ("First Class") is a Florida limited liability company with its principal place of business at 501 N.E. 5th Terrace, Suite 327 Fort Lauderdale, FL 33301. Process can be served on Defendant First Class through its registered agent, Jose Roberto Reyes, at the same address.

12. Defendant Mr. Drywall Services, LLC ("Mr. Drywall") is a Florida limited liability company with its principal place of business at 2660 N.E. 7th Avenue Pompano Beach, FL 33064. Process can be served on Defendant Mr. Drywall through its registered agent, Rick Aghassi, at the same address.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse, and pursuant to 28 U.S.C. § 1331, through the vehicle of 29 U.S.C. § 216(b), and 28 U.S.C. § 1367.

14. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to the claim occurred in this district,

and Defendants have conducted substantial, continuous and systematic commercial activities in this District.

## FACTS

15. Defendant Mr. Drywall is a company that provides drywall hanging and interior finishing services to other construction contractors for commercial and residential projects.

16. Defendants First Class and Reyes are labor brokers who provide workers for companies such as Mr. Drywall.

17. Plaintiffs all worked on the JW Marriott hotel construction project, located at 201 8th Ave South, Nashville, TN 37203 ("Marriott Project" or "work site").

18. Upon information and belief, the owner of the Marriott Project hired Skanska USA Building, Inc. ("Skanska") as general contractor for construction of the hotel.

19. Upon information and belief, Skanska entered into a contract with Mr. Drywall to provide drywall and interior finishing services on the Marriott Project.

20. Upon information and belief, Mr. Drywall entered into a contract with First Class and Reyes to provide labor and other services on the Marriott Project.

21. In or around July 2017, Defendants First Class and Reyes began recruiting workers, including Plaintiffs, to perform drywall and finishing work on the Marriott Project.

22. Defendants paid different hourly pay rates to individual workers, although many were paid at $20 per hour.

    a. Plaintiff Daniel Martinez was paid $20 per hour.

    b. Plaintiff Alexandro Perez was paid $19 per hour.

    c. Plaintiff Nelson Eguizabal Brito was paid $20 per hour.

    d. Plaintiff Alexis Marquez was paid $20 per hour.

  e. Plaintiff Carlos Castro was paid $20 per hour.

  23. Defendant Reyes recruited laborers not only from Nashville, but from multiple states in the region. Reyes promised Plaintiff Martinez and similarly situated workers not only the hourly rate of pay, but also lodging in a hotel free of charge. Workers like Martinez relied on those promises and were induced to travel from their home states to Nashville for the job.

  24. On the Marriott Project, Plaintiffs primarily performed drywall installation, framing, and finishing work.

  25. Defendants recorded Plaintiffs' entry and exit time on the work site every day using, at first, a handwritten sign in sheet and then, later, a fingerprint scanning machine. The scanner was located at the work site entrance.

  26. Each work day, Plaintiffs and other workers arrived at the work site at 6:00am. The day started with a safety meeting conducted by Skanska, followed by a meeting for Plaintiffs with Defendant Reyes. Construction work began by 7:00am.

  27. At least four employees of Mr. Drywall were on site at various times during the relevant period and would instruct Plaintiffs and other workers on how to perform their job and monitor their drywall and finish work.

  28. Two employees of Mr. Drywall, Richard and Silvano, provided daily monitoring and supervision of Plaintiffs and the other workers for Mr. Drywall. These men would come by to monitor Plaintiffs' progress and instruct them on what work to do up to several times per day.

  29. If needed, Silvano supplied Plaintiffs with gear such as gloves and vests. Defendants Reyes, First Class, and Mr. Drywall all provided the construction materials necessary for Plaintiffs' work.

30. Every day on the work site, Defendant Reyes and Mr. Drywall employee Richard told Plaintiffs when they were allowed to break for lunch. Plaintiffs' lunch break typically lasted forty-five minutes to one hour.

31. Around 4:45pm every day, Plaintiffs and other similarly situated employees would return tools and equipment to the First Class office on the work site. After returning the tools, workers "scanned out" of work by using the fingerprint scanner. Often, the lines to "scan out" were so long that Plaintiffs were not able to leave the work site until after 5:00 PM.

32. Plaintiffs typically worked eleven (11) hours per day, minus a lunch break, for six (6) days per week, Monday through Saturday.

33. However, Defendants First Class and Reyes only paid Plaintiffs for approximately 58 hours per week. They paid Plaintiffs with a company check on a bi-weekly basis.

34. Despite regularly working more than forty (40) hours per week, Plaintiffs never received payment at a rate one and one-half times their regular hourly wage for hours worked over forty, as required by federal law.

35. Defendants First Class and Reyes paid Plaintiffs in a lump sum without taking out income tax and other withholdings. These Defendants also issued for 1099s to many Plaintiffs and other employees. Defendants knowingly misclassified Plaintiffs and other employees as independent contractors.

36. Despite not withholdings federally mandated deductions, Defendants First Class and Reyes made other, impermissible deductions from Plaintiffs' pay.

37. For example, Defendant Reyes required Plaintiff Perez to purchase drywall stilts from First Class at a cost of $200.00. After deducting the first payment of $100 from Plaintiff Perez's paycheck, Defendant Reyes told Plaintiff Perez he would actually have to pay $300.00

for the drywall stilts. On or about February 9, 2018, when Plaintiff Perez objected to the changed price, Defendants Reyes and First Class fired him.

38. Similarly, Defendants Reyes and First Class deducted $100 per month from the check of Plaintiff Martinez and other similarly situated workers from out-of-state for housing. Rather than putting them up in a hotel, however, Defendants forced groups of eight to ten out-of-town workers to share a two bedroom apartment together.

39. On or about March 31, 2018, Defendant First Class fired Plaintiffs Marquez and Brito, claiming there was no more work for them on the Marriott Project, when in fact Defendants' work on the project was ongoing.

40. Upon information and belief, it became apparent to Defendant Reyes the week of May 21, 2018 that he would not have the funds to pay Plaintiffs and other employees the paycheck due and owing for the last two weeks of work.

41. On or about May 24, 2018, as many employees began to express concerns about their pay, Defendants Reyes and First Class fired Plaintiffs Martinez and Castro and dozens of similarly situated employees.

42. Defendant Reyes told all of the employees to come back the next Tuesday, May 29th, to demand their wages from Defendant Mr. Drywall.

43. A group of approximately 80 workers arrived at the work site on Tuesday, May 29, 2018, and demanded their wages. They gathered in and outside the Marriott Project and demanded their wages from Defendants.

44. Those employees who had not been fired the previous week were effectively terminated after that meeting, as they were not allowed to return to the work site.

45. To date, none of the Defendants have paid effected workers for the last two weeks of wages owed.

46. Upon information and belief, as many as 150 workers performed drywall installation, framing, and/or finishing work on the Marriott Project during the relevant period.

## FLSA COLLECTIVE ACTION ALLEGATIONS

47. At all times relevant, Plaintiffs were employed by Defendants to perform drywall installation, framing, and finishing work on the Marriott Project. Plaintiffs bring their FLSA claims as an opt-in collective action on behalf of themselves and all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

48. Plaintiffs seek to represent two collective groups of similarly situated workers:

   a. All workers performing drywall installation, framing, and/or finishing work on the Marriott Project at any time in the in the last three (3) years ("Overtime Class"); and

   b. All workers performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018 ("Last Paycheck Class").

49. Defendants failed to pay Plaintiffs Castro, Martinez and all members of the Last Paycheck Class at the federal minimum wage for their final two (2) weeks of employment.

50. Defendants failed to pay all Plaintiffs and all other members of the Overtime Class one and one half times their regular hourly rate for all hours worked in excess of forty (40) per week during the relevant period. Defendants also failed to pay all Plaintiffs and all other members of the Overtime Class the federal minimum wage for all hours worked after clocking in, including hours spent attending safety meetings and performing other such work.

51. Plaintiffs and the collective group members are similarly situated, perform substantially similar labor for Defendants and are subject to Defendants' common employment practices and policies.

52. Defendants' liability under the FLSA for failing to compensate Plaintiffs and the collective group members properly is uniform across the two collective groups.

53. Defendants have willfully and intentionally engaged in a knowing and continuous pattern and practice of violating the FLSA, as detailed herein, by failing to properly compensate Plaintiffs and the collective group members.

54. As a result of Defendants' unlawful acts, Plaintiffs and collective group members have been deprived of regular rate compensation and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

## CLASS ACTION ALLEGATIONS

55. Plaintiffs bring their federal claim for fraudulent tax filing as an opt-out class action on behalf of themselves and all other similarly situated employees pursuant to 26 U.S.C. § 7434 ("Tax Fraud Class").

56. Plaintiffs bring their federal claims for fraudulent filing of IRS information returns on behalf of all similarly-situated employees who worked for Defendants performing drywall installation, framing, and/or finishing work on the Marriott Project at any time in the in the last two (2) years and were issued an IRS Form 1099 by one or more of the Defendants.

57. Upon information and belief, the Tax Fraud Class encompasses the same individuals as the Overtime Class.

58. Plaintiff Martinez additionally brings his state law claim for fraud in hiring as an opt-out class action on behalf of himself and all other similarly situated employees pursuant Tenn. Code Ann. § 50-1-102 ("Hiring Fraud Class").

59. Plaintiff Martinez brings his Tennessee state law claim for fraud in hiring on behalf himself and all employees who relocated to Nashville from other states in order to perform drywall installation, framing, or finishing work on the Marriott Project.

60. The number and identity of the Class members are readily ascertainable from Defendants' business records and/or the testimony of Defendants' employees and Plaintiffs. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

61. The proposed Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

62. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Classes, and the relief sought is typical of the relief which would be sought by any member of the Classes in a separate action.

63. Questions of law and fact common to the Classes as a whole predominate over any questions affecting only individual Class members.

64. The questions of law and fact common to the Tax Fraud Class include, but are not limited to, the following:

   a. Whether Defendants are statutory or joint employers of Class members;

   b. Whether Defendants issued IRS Form 1099s to Class members; and

   c. Whether Defendants' misclassification of Class members as independent contractors was willful.

65. The questions of law and fact common to the Hiring Fraud Class include, but are not limited to, the following:

   a. Whether details of pay, including reimbursement of incidentals, are facts material to the employment agreement;

   b. Whether Defendant Reyes made false statements regarding salary and out-of-pocket expenses with the intent of inducing Plaintiff Martinez and Hiring Fraud Class members to rely on those statements; and

   c. Whether Plaintiff and Hiring Fraud Class members' reliance was reasonable.

66. Plaintiffs understand the responsibilities of representation, are able to and will fairly and adequately protect the interests of the Classes, and have no interests antagonistic to those of the Classes. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour and related cases.

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual Class members are low-income, working-class persons who lack the financial resources to prosecute a lawsuit vigorously against multi-state corporate defendants individually. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense of numerous individual actions.

68. The adjudication of individual litigation claims would result in a great expenditure of court and public resources. Treating the claims as a class action would result in a significant savings of these costs. The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent and/or varying adjudications, establishing

incompatible standards of conduct for Defendants and result in the impairment of Class members' rights. Rather, because all the issues before the Court are common and could be fairly determined in a class action context, the class action is superior to any the other available method of adjudication. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action, including subclassing or bifurcation.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### (29 U.S.C. §§ 206, 207)

69. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

70. Plaintiffs bring this claim on behalf of themselves and the Overtime Class and Last Paycheck Class pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

71. Upon information and belief, Defendants Mr. Drywall and First Class both have an annual dollar volume of sales that now exceeds and has exceeded $500,000.00 at all times relevant to this Complaint.

72. Defendants bid on and engage in construction projects across multiple states and their business operations substantially affect interstate commerce.

73. Defendants are employers operating covered enterprises, as defined by 29 U.S.C. § 203, and are otherwise covered by and subject to the provisions of the FLSA.

74. Defendants are statutory and joint employers of Plaintiffs and members of the Overtime Class and Last Paycheck Class.

75. Defendants exercised control over Plaintiffs' and Class members' performance of their job duties and work schedules, provided the necessary tools and materials, and set the terms

and conditions of employment. Additionally, Defendants First Class and Reyes held out Plaintiffs and Class members as employees.

76. At all times relevant, Plaintiffs and members of both collective groups were employees of Defendants, as defined by 29 U.S.C. § 203.

77. Plaintiffs and the collective group members do not qualify as exempt employees, as defined by the FLSA or applicable Federal regulations.

78. At all times relevant, Defendants have been required to pay employees a minimum wage, pursuant to Section 6 of the FLSA, per hour of work performed.

79. Defendants failed to pay Plaintiffs and Overtime Class members the required minimum wage for each hour of work they performed throughout their employment. Further, Defendants failed to pay Plaintiffs and Last Paycheck Class members the required minimum wage for each hour of work they performed during the last pay period of employment.

80. At all times relevant, Defendants were required to pay employees "a rate not less than one and one-half times the regular rate at which [they were] employed," for all hours worked in excess of forty (40) per work week, pursuant to Section 7 of the FLSA.

81. Defendants failed to pay Plaintiffs and Overtime Class members one and one-half times their regular wage for any and all hours worked in excess of forty (40) per work week throughout the duration of their employment.

82. Defendants have violated Sections 6 and 7 of the FLSA by failing to comply with federal minimum wage and maximum hour requirements.

83. As a result of Defendants' unlawful conduct, Plaintiffs and collective group members have suffered and continue to suffer harm, including but not limited to lost wages and other financial loss.

84. Plaintiffs and collective group members are entitled to all remedies available for violation of the FLSA, including, but not limited to damages provided in 29 U.S.C. § 216(b).

## COUNT II
## FAIR LABOR STANDARDS ACT RETALIATION
## (29 U.S.C. § 215)

85. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

86. Plaintiffs Castro and Martinez bring this claim on behalf of themselves and the Last Paycheck Class pursuant to the FLSA, 29 U.S.C. § 215, against Defendants First Class and Reyes.

87. Defendants First Class and Reyes terminated Plaintiffs and collective group members because they exercised their wage and hour rights in demanding their pay.

88. In fact, this retaliation is part of a larger pattern of retaliation suffered by other employees, such as Plaintiff Perez, as a result of complaining about their wages.

89. Each instance in which Plaintiffs, individually or in concert, expressed concerns or asked questions about their wages, ultimately culminating in a mass demand for their wages, constitutes protected activity under the FLSA.

90. Defendants' termination of Plaintiffs and collective group members is a clear, actionable adverse action.

91. Plaintiffs' and collective group members' protected activities directly and proximately caused Defendants to retaliate against them.

92. As a result of Defendants' retaliatory conduct, Plaintiffs and collective group members have suffered and continue to suffer harm, including but not limited to lost wages and earnings, moving expenses and other non-wage economic damages, and mental anguish.

{005396/18367/00450876.DOCX / Ver.2}    14

Case 3:18-cv-00583    Document 1    Filed 06/25/18    Page 14 of 17 PageID #: 14

93. Plaintiffs and collective group members are entitled to all remedies available for violation of the FLSA, including, but not limited to damages provided in 29 U.S.C. § 216(b).

## COUNT III
## FRAUD IN HIRING
## (Tenn. Code Ann. § 50-1-102)

94. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

95. Plaintiff Martinez brings this claim on behalf of himself and the Hiring Fraud Class pursuant to Tenn. Code Ann. § 50-1-102 against Defendants First Class and Reyes.

96. Defendants First Class and Reyes intentionally misrepresented to Plaintiff Martinez and members of the Hiring Fraud Class the amount and character of the compensation to be paid for their work in order to induce them to relocate from their home states to Tennessee to work on the Marriott Project.

97. Those misrepresentations and false pretenses did, in fact, induce and directly cause Plaintiff Martinez and members of the Hiring Fraud Class to accept the positions offered and relocate to Tennessee.

98. Plaintiff's and the Hiring Fraud Class's reliance on Defendant Reyes's false and deceptive representations was reasonable, as the representations made were typical terms and conditions of employment and appeared to them to be in conformity with applicable laws.

## COUNT IV
## FRAUDULENT FILING OF IRS INFORMATION RETURN
## (26 U.S.C. § 7434)

99. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

100. Plaintiffs bring this claim on behalf of themselves and the Tax Fraud Class pursuant to 26 U.S.C. § 7434 against Defendants First Class and Reyes.

101. Section 7434 of the Internal Revenue Code provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

102. An IRS Form 1099 is an "information return" pursuant to 26 U.S.C. § 6724(d)(1)(A)(vii).

103. Defendants First Class and Reyes knowingly and willfully filed fraudulent 1099s for payments made to Plaintiffs and members of the Tax Fraud Class.

104. In doing so, Defendants knowingly and falsely represented to the federal government that Plaintiffs and members of the Tax Fraud Class were independent contractors rather than employees.

105. As a result of Defendants' actions, Plaintiffs and members of the Tax Fraud Class have been forced to make additional tax payments and have been prejudiced in the amount of wages paid due to their misclassification.

106. Based on Defendants' willful and fraudulent filing of 1099s, Defendants are liable to Plaintiffs and members of the Tax Fraud Class in an amount equal to the greater of $5,000 or the sum of any actual damages sustained by Plaintiffs and members of the Tax Fraud Class as a result of such filing, the costs of this action, and reasonable attorneys' fees. 26 U.S.C. § 7434(b).

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated employees, request the following relief:

A. Designation of Plaintiffs as representatives of the Overtime Class;

B. Designation of Plaintiffs Castro and Martinez as representatives of the Last Paycheck Class;

C. Designation of Plaintiffs as representatives of the Tax Fraud Class;

D. Designation of Plaintiff Martinez as the representative of the Hiring Fraud Class;

E. Certification of the FLSA claims as a collective action pursuant to the FLSA § 216(b);

F. Certification of the Fraud in Hiring claim and the Fraudulent IRS Filing claim as class actions pursuant to Fed. R. Civ. P. 23(b)(1) and (3) and/or Tenn. R. Civ. P. 23.02(1) and (3);

G. An award of all damages, including but not limited to unpaid wages and liquidated damages, permitted by the FLSA, 29 U.S.C. § 201 *et seq.*, and supporting regulations to Plaintiffs and members of the two collective groups;

H. An award of all damages, including but not limited to unpaid wages and benefits, statutory damages, compensatory damages, disgorgement damages, punitive damages, and any other damages permitted by law or equity to Plaintiffs and members of the two Classes;

I. Pre- and post-judgment interest, as provided by law;

J. Attorneys' fees and costs; and

K. Such other legal or equitable relief as this Court shall deem just and proper.

June 25, 2018                    Respectfully submitted,

/s/ Karla M. Campbell
Karla M. Campbell (BPR #27132)
Callie Jennings (BPR #35198)
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Ave., 2nd Floor
Nashville, Tennessee 37203
(615) 254-8801

*Attorneys for Plaintiffs Daniel Alvarado Martinez, Alexandro Perez, Nelson Eguizabal Brito, Carlos Castro, Alexis Marquez And the Collective Group and Class Members*