IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DANIEL ALVARADO MARTINEZ;<br>ALEXANDRO PEREZ; NELSON<br>EGUIZABAL BRITO; CARLOS<br>CASTRO; and ALEXIS MARQUEZ,<br><br>       Plaintiffs,<br><br>v.<br><br>FIRST CLASS INTERIORS OF NAPLES,<br>LLC; JOSE ROBERTO REYES<br>Individually and d/b/a FIRST CLASS<br>INTERIORS OF NAPLES, LLC; and MR.<br>DRYWALL SERVICES, LLC,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 3:18-cv-00583<br>JUDGE RICHARDSON |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Plaintiffs' Motion for Conditional Certification of this Case as a Collective Action. (Doc. No. 37, "Motion"). Defendants responded in opposition (Doc. Nos. 53, 57), and Plaintiffs replied (Doc. No. 58). For the reasons discussed below, Plaintiffs' motion (Doc. No. 37) will be granted in part and denied in part.

## BACKGROUND

On June 25, 2018, Plaintiffs,[1] on behalf of themselves and all others similarly situated, commenced this collective action against their former employers,[2] First Class Interiors of Naples, LLC ("First Class"), Jose Roberto Reyes individually and on behalf of First Class (together with First Class, "First Class Defendants"), and Mr. Drywall Services, LLC ("Mr. Drywall")

---

[1] Daniel Alvarado Martinez, Alexandro Perez, Nelson Eguizabal Brito, Carlos Castro, and Alexis Marquez.

[2] Each Plaintiff allegedly was employed by each Defendant.

(collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. (Doc. No. 1 ¶ 1).[3] Plaintiffs performed drywall installation, framing, and finishing work during construction of the JW Marriott Hotel in downtown Nashville ("Marriott Project"). (*Id.* ¶ 47). Plaintiffs seek to conditionally certify two classes of allegedly similarly situated workers:

1. All workers performing drywall installation, framing, and/or finishing work on the Marriott Project at any time in the in the last three (3) years ("Overtime Class"); and

2. All workers performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018 ("Last Paycheck Class").

(Doc. No. 38 at 3).

Plaintiffs allege that Defendants' policies and practices violated the minimum wage and overtime provisions of the FLSA. (Doc. No. 1 ¶¶ 1-2). Specifically, Plaintiffs allege that Defendants failed to pay Plaintiffs and members of the Overtime Class one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week during the relevant period. (*Id.* ¶50). Plaintiffs also allege that Defendants failed to pay Plaintiffs and members of the Overtime Class the federal minimum wage for all hours worked after clocking in, including hours spent attending safety meetings and performing other such work. (*Id.* ¶50). As to the Last Paycheck Class, Plaintiffs allege that Defendants failed to pay Plaintiffs Castro and Martinez, and members of the Last Paycheck Class, for their final two weeks of employment. (*Id.* ¶ 49). Plaintiffs further claim that after members of the Last Paycheck Class requested their wages, First Class Defendants

---

[3] Plaintiffs also bring causes of action under Tenn. Code Ann. § 50-1-102 (Fraud in Hiring) and 26 U.S.C. § 7434 (Fraudulent Filing of IRS Information Return) against the First Class Defendants. (Doc. No. 1). As per the Court's scheduling order (Doc. No. 31), Plaintiffs seek conditional certification of only their wage and hour and retaliation claims, Counts I and II.

terminated those drywall workers in violation of the FLSA's anti-retaliation provision. (*Id.* ¶¶ 86-92).

On October 30, 2018, Plaintiffs filed the Motion supported by an affidavit from each of three Plaintiffs and one putative class member. Plaintiff asks the Court (1) to conditionally certify this case as a FLSA collective action under 29 U.S.C. § 216(b); (2) to approve Plaintiffs' two proposed classes; and (3) to authorize a brief two-week opt-in period. (Doc. No. 38 at 14).[4]

Mr. Drywall and the First Class Defendants have each filed a separate brief in opposition to the Motion. (Doc. Nos. 53, 57). In support of the First Class Defendants' opposition, Defendant Reyes has also submitted an affidavit. (Doc. No. 54-1).

## LEGAL STANDARD

The FLSA provides that a collective action may be maintained against any employer by one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Because the FLSA requires only that employees be similarly situated, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016). Also, unlike class actions under Federal Rule of Civil Procedure 23, FLSA collective actions require similarly situated employees to "opt-in" as plaintiffs. 29 U.S.C. § 216(b).

_____

[4] Pursuant to the Court's Initial Case Management Order, Plaintiffs do not seek Court-supervised notice to potential plaintiffs. (Doc. No. 31 at 3). Although a district court has broad discretion under the FLSA to facilitate notice to potential collective action plaintiffs, plaintiffs in FLSA actions are not required to affirmatively seek the district court's approval in sending out notices. See *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989).

Although the FLSA does not define the term "similarly situated," the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. Employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required." *Id.* at 584.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Id.* at 546 (internal quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, Case No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D. Tenn. Nov. 29, 2010). Conditional certification requires only a modest factual showing, and district courts should use a fairly lenient standard that typically results in certification. *Comer*, 454 F.3d at 547. At the first stage, the court does not resolve factual disputes, decide substantive issues related to the merits of the case, or make credibility determinations. *Roberts v. Corr. Corp. of Am.*, Case No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. June 25, 2015).

"[T]he certification is conditional and by no means final." *Comer*, 454 F.3d at 546. After discovery, the defendant may move for decertification of the conditional class, which triggers the second phase of the court's review. *See O'Brien*, 575 F.3d at 583. At this second stage, the court

has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## ANALYSIS

The Motion involves the first (or "notice") stage and seeks only conditional, not final, certification. In support of the Motion, Plaintiffs Brito, Martinez, and Castro have submitted their own affidavits (Doc. Nos. 39-41); Plaintiffs have also submitted the affidavit of Pablo Torres, a putative class member and drywall worker who was also employed by Defendants on the Marriott Project (Doc. No. 42). Plaintiffs maintain that this evidence, in conjunction with certain of Defendants' admissions in their answers, meets the "fairly lenient" standard that typically results in certification. *Comer*, 454 F.3d at 547.

## I.      Conditional Class Certification of the Overtime Class

The first proposed class, the Overtime Class, includes "all workers performing drywall installation, framing, and/or finishing work on the Marriott Project at any time in the last three years." (Doc. No. 38 at 3). Plaintiffs argue that they have demonstrated that they are similarly situated to putative members of the Overtime Class because they were subject to the same workplace conditions and the same FLSA-violating employer policy. (Doc. No. 38 at 11-12). Specifically, Plaintiffs claim that all drywall workers performed similar drywall-related work for Defendants at the same location, during similar hours, and were supervised by the same supervisors of the Defendants. (*Id.*) Plaintiffs allege that Defendants misclassified drywall workers as independent contractors in order to deny them overtime pay in violation of the FLSA. Plaintiffs assert that they and other drywall workers regularly worked more than forty hours per week and

were paid no overtime compensation. In support of these arguments, Plaintiffs rely on the Complaint, four employee affidavits, and Defendants' answers.[5]

The affidavits of Plaintiffs Castro, Martinez, and Brito, and putative class member Mr. Torres, supporting conditional certification of the Overtime Class, are substantially similar.[6] Each affiant claims that he "was employed by Defendants as a drywall worker . . . on the JW Marriott Hotel construction project" for a period of time between June 2017 and May 2018. Brito Aff. ¶ 2; Martinez Aff. ¶ 2; Castro Aff. ¶ 2; Torres Aff. ¶ 2. Plaintiffs and Mr. Torres each state that they performed job duties relating to drywall installation, including "preparing walls for drywall installation, measuring and cutting panels of drywall, [] fastening drywall panels to interior walls and ceilings" (Brito Aff. ¶ 6; Castro Aff. ¶ 6; Torres Aff. ¶ 6), "applying tape and compounds to the joints between the panels, and sanding the panels to make them smooth for painting." (Martinez Aff. ¶ 6).

---

[5] In their Reply to Defendants' Responses, Plaintiffs refer to the sworn testimony of *five* drywall workers. (Doc. No. 58 at 3). The Court is aware of only four affidavits filed in support of Plaintiffs' Motion. (*See* Doc. No. 39 (Affidavit of Nelson Eguizabal Brito ("Brito Aff.")); Doc. No. 40 (Affidavit of Carlos Castro ("Castro Aff.")); Doc. No. 41 (Affidavit of Daniel Alvarado Martinez ("Martinez Aff.")); Doc. No. 42 (Affidavit of Pablo Torres ("Torres Aff.")); *see also* Doc. No. 37 at 4 ("Three Plaintiffs and one putative class member have submitted affidavits . . .")).

[6] The Court is not concerned by the similarities between Plaintiffs' and putative class members' affidavits. Although the Court understands that a seemingly scripted affidavit can undermine the credibility of an affiant and his or her claims, the Court has no reason to believe that the near identical language in Plaintiffs' and Mr. Torres's affidavits are not accurate or credible. To the contrary, First Class Defendants have conceded that all Plaintiffs were employed by First Class as independent contractors and "performed drywall labor services on the JW Marriott Nashville Project" including "drywall installation, framing and finishing work." (Doc. No. 21 ¶¶ 5-10, 17, 24). Under these circumstances, the Court finds persuasive Plaintiffs' argument that the similarity "***bolsters*** Plaintiffs' point that all class members are similarly situated." (Doc. No. 58 at 4-5 (emphasis in original)). *See Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014) (finding that essentially identical affidavits suggested that plaintiffs had identical experiences and had made identical observations).

The affiants also performed their duties at the same time and in the same place, each stating that they "typically worked six (6) days a week, for about ten (10) hours per day on Monday through Friday and eight (8) hours on Saturdays." Brito Aff. ¶ 3; Martinez Aff. ¶ 3; Castro Aff. ¶ 3; Torres Aff. ¶ 3. Plaintiffs and Mr. Torres aver that they, along with approximately 150 other drywall workers, attended a daily meeting held by Mauricio, Byron, or Defendant Reyes at approximately 6:30 a.m. each morning. Brito Aff. ¶ 5; Martinez Aff. ¶ 5; Castro Aff. ¶ 5; Torres Aff. ¶ 5. According to their affidavits, Plaintiffs and Torres also observed up to 150 other workers stand in line at the end of the day to scan out of the same fingerprint-scanning machine. Brito Aff. ¶ 8; Martinez Aff. ¶ 8; Castro Aff. ¶ 8; Torres Aff. ¶ 8. Each affiant states that he "observed and spoke to numerous other drywall workers who got their checks from [Mauricio, Byron, or Defendant Reyes] and were never paid overtime wages." Brito Aff. ¶ 10; Martinez Aff. ¶ 10; Castro Aff. ¶ 10; Torres Aff. ¶ 10.

Defendants oppose conditional certification of the Overtime Class, arguing that Plaintiffs have failed to meet their applicable burden of proof under § 216(b). The Court disagrees. As discussed above, to show that Plaintiffs and putative class members are similarly situated for the purposes of § 216(b), Plaintiffs need only make a "modest factual showing" demonstrating that their "position[s] [were] similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D 591, 595-96 (S.D. Ohio 2002)). The Court finds that the allegations in the Complaint, the sworn affidavits of Plaintiffs and Mr. Torres, and First Class Defendants' Answer to the Complaint confirming that they classified Plaintiffs and all other drywall workers as "independent contractors," (Doc. No. 21 ¶35), are sufficient under this stage's "fairly lenient" standard to show that Plaintiffs are similarly situated to some putative class members. Plaintiffs have clearly "outlined a single, FLSA-violating

policy, thereby satisfying the requirements of conditional certification of a collective action." *Neilwoldman v. AmeriColor, LLC*, Case No. 3:18-cv-00151, 2018 WL 4384996, at *4 (M.D. Tenn. Sept. 13, 2018); *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 953 (M.D. Tenn. 2011) (conditionally certifying a class where "the claims of the class [will] proceed under common, focused theories of statutory liability). The Court finds that Plaintiffs have not, however, shown that they are similarly situated to *all* putative class members as the class is currently defined. Therefore, as further detailed below, the Court finds it necessary to limit the scope of the Overtime Class.

Defendants set forth a variety of arguments against conditional certification of the Overtime Class. First, Defendants argue that Plaintiffs' affidavits are insufficient because Plaintiffs have not submitted affidavits from enough employees (Doc. No. 53 at 8 ("Plaintiffs have only submitted four (4) Affidavits to account for the alleged one hundred and fifty (150) potential claimants in the proposed Overtime Class"); Doc. No. 57 at 1 (claiming that Plaintiffs' single affidavit from a putative class member is insufficient to show that "that any putative plaintiff was not compensated in compliance with the Fair Labor Standards Act.")). The Court finds that the sworn affidavits of Plaintiffs and Mr. Torres collectively are quantitatively sufficient under this stage's "fairly lenient" standard to show that Plaintiffs and putative Overtime Class members were similarly situated. *See Comer*, 454 F.3d at 547; *O'Brien*, 575 F.3d at 585. The number of affidavits here is hardly overwhelming, but Courts have routinely held that even fewer supporting submissions is sufficient to satisfy Plaintiffs' light burden. *See Young v. Hobbs Trucking Co.*, Case No. 3:15-cv-991, 2016 WL 3079027, at *3 (M.D. Tenn. June 1, 2016) (granting conditional certification where the plaintiff submitted only his own declaration and payroll records); *Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *5 (M.D. Tenn. Apr. 10, 2008) (finding

that "[t]he Amended Complaint, coupled with the [the plaintiff's] Declarations provide a 'modest showing' that" employees were similarly situated); *Lee v. Gab Telecom, Inc.*, Case No. 12-cv-14104, 2013 WL 1632552, at *3 (E.D. Mich. Apr. 16, 2013) (granting conditional certification where the named plaintiffs submitted only their affidavits in support).

Second, Defendants argue that Plaintiffs' affidavits are insufficient to show that Plaintiffs and the proposed claimants suffered the same FLSA-violating policy because they contain only conclusory statements and are not based on specific information or personal knowledge. (Doc. No. 53 at 8-9; Doc. No. 57 at 9-11). Again, the Court disagrees. This Court has routinely held that the "personal observations" of other employees and conversations had or overheard at work are sufficient to demonstrate personal knowledge of FLSA-violating policies and are not "mere conclusory allegations." *Burgess v. Wesley Fin. Grp, LLC*, Case No. 3:16-cv-1655, 2017 WL 1021294, at *4 (M.D. Tenn. Mar. 16, 2017). For example, in *Amos v. Lincoln Prop. Co.*, Case No. 3:17-cv-37, 2017 WL 2935834 (M.D. Tenn. July 7, 2017) (Trauger, J.), this Court held that the plaintiff's statements that she learned through personal visits and conversations that other business managers, like her, were "expected to work in excess of 40 hours per workweek without being paid an overtime wage" were not "mere conclusory allegations." *Id.* at *3-4. Rather, this Court found that such statements regarding the pay policies applied to, and the hours worked by, other business managers were based on "[f]irst-hand experience" and "personal observations" and were, therefore, sufficient to support conditional certification. *Id.* at *4. Like those in *Amos*, the affidavits of Plaintiffs and Mr. Torres contain statements regarding direct observations of and conversations with other drywall workers, demonstrating that Plaintiffs and Mr. Torres have personal knowledge that other drywall workers who worked similar hours and performed similar duties were denied overtime pay in violation of the FLSA. Brito Aff. ¶¶ 7, 8, 10; Martinez Aff. ¶¶ 7, 8, 10; Castro Aff.

¶¶ 7, 8, 10; Torres Aff. ¶¶ 7, 8, 10. These representations are not merely conclusory as Defendants suggest; rather, they are sufficient to demonstrate that Plaintiffs and putative members of the Overtime Class are similarly situated to each other.[7]

Second, First Class Defendants argue that Plaintiffs' request for conditional certification must fail because Plaintiffs do not identify additional independent contractors who desire to opt-in to Plaintiffs' lawsuit. (Doc. No. 53 at 7-8). In support of this argument, First Class Defendants rely heavily on language that they incorrectly attribute to *Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562 (11th Cir. 1991). The quotations actually come from *Barten v. KTK & Assocs., Inc.*, Case No. 8:06-cv-1574, 2007 WL 2176203, at *2 (M.D. Fla. July 26, 2007). In *Bradford v. Logan's Roadhouse, Inc.,* 137 F. Supp. 3d 1064 (M.D. Tenn. 2015) (Trauger, J.), however, this Court explicitly declined to follow *Barten*, holding that, unlike in the Eleventh Circuit, in the Sixth Circuit there is no controlling precedent requiring plaintiffs to show sufficient interest among members of the putative class in joining the litigation. *Id.* at 1077; *Burgess*, 2017 WL 1021294, at *4 ("The Sixth Circuit has never required evidence that others will opt in before the certification decision can be made."). Instead, this Court found persuasive the reasoning outlined in *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007), which noted that the sufficient-interest requirement "puts the cart before the horse" and "would undermine the 'broad remedial goal' of the FLSA." *Id.* (citation omitted).

---

[7] As discussed above, the Court finds that, like Plaintiffs' affidavits, First Class Defendants' concession that workers were classified as independent contractors supports Plaintiffs' argument that Defendants employed a unified policy resulting in FLSA violation to all putative Overtime Class members. (Doc. No. 38 at 11 (citing Answer of FCI & Reyes, ¶ 35 ("Defendants admit that FCI classified workers [as] independent contractors.")). *See Amos*, 2017 WL 2935834, at *4 (finding that the defendant's policy of classifying managers as supervisors outlined in the defendant's own Employee Handbook corroborated the plaintiff's affidavit and supported conditional certification).

Third, Mr. Drywall argues — for the greater part of its brief — that it did not "employ," as defined by the FLSA, Plaintiffs or any members of the putative class. (Doc. No. 57 at 4-9). Whether Mr. Drywall "employed" Plaintiffs, however, is a merits-based argument that is not relevant at the conditional certification stage. *See Gallardo* v. *Los Portales Bolivar LLC*, Case No. 1:16-cv-01055, 2017 WL 913805, at *4 (W.D. Tenn. Mar. 7, 2017) (finding that whether defendants "satisfy the FLSA's definition of an 'employer' . . . [is a] fact-bound issue, . . . properly raised in a Rule 12 motion attacking the sufficiency of the pleadings or a Rule 56 motion for summary judgment"). The Court declines to reach this argument at this time.

Similarly, Mr. Drywall argues that Plaintiffs present no evidence of a decision, policy, or plan "undertaken by [Mr. Drywall in particular] with respect to Plaintiffs." (Doc. No. 57 at 10-11). Again, the Court finds that such a fact-intensive inquiry is inappropriate at this stage of the litigation. "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir.1991) (citations omitted). For the purpose of conditional certification, Plaintiffs need only satisfy the low burden of demonstrating that they are similarly situated to the employees they seek to notify and represent. "[S]everal courts have found it proper to conditionally certify an FLSA class that consists of employees of related employers. This procedure permits a court to issue notice to potential class members and delay the determination of whether the defendants may be treated as single employer for the decertification stage . . . [A]ny question of a particular defendant's liability can be taken up at a later time." *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 762 (W.D. Tenn. 2011) (citation omitted). As such, the Court declines to conduct the fact-intensive inquiry necessary to determine each Defendants' liability at this time.

Finally, although the Court finds that Plaintiffs have made the modest factual showing required for conditional certification of a collective action as to some putative members of the Overtime Class, Defendants' objections to the scope of the Overtime Class as overbroad are well taken. Plaintiffs define the Overtime Class as "[a]ll workers performing drywall installation, framing, and/or finishing work on the Marriott Project at any time in the in the last three (3) years." (Doc. No. 1 ¶ 48). This definition includes drywall workers who were employed prior to First Class commencing work on the Marriott Project and therefore must have been employed by entities other than Defendants. (Doc. No. 53 at 8-9). Defendants correctly point out that Plaintiffs have not shown that they are similarly situated to those drywall workers who were employed by unrelated non-Defendant entities. Plaintiffs have filed no affidavits from drywall workers employed by an entity other than Defendants.[8] Nor have they demonstrated, by personal knowledge or otherwise, that drywall workers not employed by Defendants were designated "independent contractors," worked more than forty hours per week, or were unlawfully denied overtime pay. In other words, Plaintiffs have not demonstrated that those drywall workers not employed by Defendants were generally subject to a common FLSA-violating policy.

In response to Defendants' argument regarding the scope of the Overtime Class, Plaintiffs suggest that Defendants should have proposed alternative language for class definitions. Plaintiffs suggest that because they lack information necessary to determine whether a narrower definition

---

[8] In *David v. Kohler Co.*, Case No. 2:15-cv-01263, 2017 WL 3865656, at *6 (W.D. Tenn. Aug. 30, 2017)., the court recognized that "some opt-in Plaintiffs were not actually [defendant's] employees and instead were employees of temporary employment agencies." The court held that although the distinctions could mean that the members of the putative class have dissimilar claims, this could be addressed through subsequent dispositive motions, subclasses, or decertification. *Id.* Unlike in *Kohler*, Plaintiffs here have not provided affidavits from or personal knowledge regarding potential opt-in plaintiffs employed by entities other than Defendants. Therefore, Plaintiffs have not shown that employees of other entities are similarly situated.

is appropriate, the class should be conditionally certified now and can be narrowed at a later time. (Doc. No. 58 at 7). But the Court is not aware of — nor do Plaintiffs provide — any authority that places the burden on defendants to provide alternative language to modify an overbroad class. To the contrary, it is well-established that, at the notice stage of a FLSA collective action, plaintiffs (not defendants) must show that they and potential opt-in plaintiffs are similarly situated to each other. *Frye v. Baptist Memorial Hospital, Inc.*, 495 Fed. Appx. 669, 672 (6th Cir. 2012) ("[L]ead plaintiffs bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs"). Furthermore, First Class Defendants did, in fact, propose alternative language, suggesting that the Overtime Class be limited to drywall workers that were employed between July 2017 and May 2018, as First Class's independent contractors. (Doc. No. 53 at 9).

The evidence submitted by Plaintiffs, therefore, does not justify certification of the Overtime Class as defined by Plaintiffs, and the court will limit the conditional certification of the Overtime Class to all workers *who were employed by Defendants* performing drywall installation, framing, and/or finishing work on the Marriott Project *between July 2017 and May 2018*.[9]

## II. Conditional Class Certification of the Last Paycheck Class

The second class that Plaintiffs seek to conditionally certify, the Last Paycheck Class, includes "all workers performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018." (Doc. No. 38 at 3). Plaintiffs argue that they are similarly situated to putative members of the Last Paycheck Class because they are unified by common theories of Defendants' statutory liability. (Doc. No. 38 at 12). Specifically, Plaintiffs allege that (1) Defendants' failure to pay members of the Last Paycheck Class for their last two weeks of work in May 2018 amounts to a

---

[9] The Court has the discretion to narrow or modify parties' proposed class definitions. *E.g. Amos*, 2017 WL 2935834, at *4; *Gallardo*, 2017 WL 913805, at *4; *David*, 2017 WL 3865656, at *7.

minimum wage violation under the FLSA and (2) Defendants' decision to fire Plaintiffs when they demanded their paychecks amounts to a violation of the FLSA's anti-retaliation provision. (*Id.* at 13). In support of their argument, Plaintiffs rely on the Complaint, three employee affidavits, and Defendants' answers.

Plaintiffs allege that during the week of May 21, 2018, Defendant Reyes realized that he would not have the funds to pay Plaintiffs and putative members of the Last Paycheck Class for their last two weeks of work. (Doc. No. 1 ¶ 40). When Plaintiffs and putative class members raised concerns regarding their pay, Defendant Reyes told "all of the employees to come back the next Tuesday, May 29th, to demand their wages from Defendant Mr. Drywall." (Id. ¶¶ 41-42). In their affidavits, Plaintiffs Castro and Martinez, and Mr. Torres aver that on May 29, 2018, they observed, in addition to themselves, approximately eighty other workers demand and be denied their last two weeks of pay from Defendant Reyes. Castro Aff. ¶ 11; Martinez Aff. ¶ 11; Torres Aff. ¶ 11. In Plaintiff Martinez's affidavit, he states that when he arrived at work on May 29, 2018, Richard, a Mr. Drywall employee, told him and roughly fifty other workers that they would not get their pay for the last two weeks and that they had to leave the worksite. Martinez Aff. ¶ 11. Plaintiff Castro and Mr. Torres aver that they were told the same by another Mr. Drywall employee named Silvano. Castro Aff. ¶ 11; Torres Aff. ¶ 11. The affiants also state that they "never received payment for [their] last two weeks of work and [they] still have not been paid." Castro Aff. ¶ 12; Martinez Aff. ¶ 12; Torres Aff. ¶ 12.

The Court finds that Plaintiffs have sufficiently alleged that they are similarly situated to some putative members of the Last Paycheck Class. Although Plaintiffs argue that they are similarly situated because they have "set forth common theories of Defendants' statutory violations" (Doc. No. 38 at 12), the Court finds that they have, in fact, gone one step further by

demonstrating that putative members of the Last Paycheck Class were "all impacted by a single decision, policy, or plan." *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 813 (M.D. Tenn. 2008). Plaintiffs have sufficiently alleged that on May 29, 2018, Plaintiffs Martinez and Castro, Mr. Torres, and approximately eighty other workers were dismissed, and demanded and were denied their pay from Defendants. Castro Aff. ¶¶ 11-12; Martinez Aff. ¶¶ 11-12; Torres Aff. ¶¶ 11-12. Defendants' decision not to pay Plaintiffs occurred at the same time, in the same location, and in the same manner as to all putative class members. Thus, the claims of the Last Paycheck Class will proceed under a single theory — as opposed to multiple common theories — that Defendants' decision not to pay members of the Last Paycheck Class for their last two weeks of work in May 2018 amounts to a minimum wage violation under the FLSA. *See O'Brien*, 575 F.3d at 585 ("[P]laintiffs are similarly situated when . . . proof of [an FLSA-violating policy] or of conduct in conformity with that policy proves a violation as to all the plaintiffs."). As discussed in more detail below, the Court does not find, however, that Plaintiffs have sufficiently alleged that they are similarly situated to putative members of the Last Paycheck Class as to their retaliation claim. Thus, conditional certification of the Last Paycheck Class is based on only Plaintiffs' allegation that Defendants failed to pay members of the Last Paycheck Class for their last two weeks of work in May 2018.

Defendants raise four arguments opposing certification of the Last Paycheck Class. First, First Class Defendants allege that the three affidavits Plaintiffs have submitted are insufficient to demonstrate Plaintiffs and putative members of the Last Paycheck class are similarly situated. (Doc. No. 52 at 10). The Court disagrees. Together, the allegations in the Complaint and the sworn affidavits are sufficient under this stage's "fairly lenient" standard to show that Plaintiffs and putative class members are similarly situated because they were all impacted by Defendants'

decision or plan to deny those drywall workers their last two weeks of pay in May 2018. As discussed *supra*, courts have routinely found to be sufficient motions supported by even fewer declarations or affidavits. *E.g., Neilwoldman*, 2018 WL 4384996, at *5 (granting conditional certification where the named plaintiff submitted only his declaration in support).

Rather, the key issue here is whether the affidavits provide sufficient factual support to demonstrate that Plaintiffs and other drywall workers suffered from a single, FLSA-violating decision, policy, or plan, or whether their claims are "unified by common theories of defendants' statutory violations." *Amos*, 2017 WL 2935834, at *2-3 (citing *O'Brien*, 575 F.3d at 585). First Class Defendants claim that the affidavits do not provide sufficient support because they do not contain "any specific information or personal knowledge in support of [Plaintiffs'] conclusory allegations . . ." (Doc. No. 35 at 10). Again, the Court disagrees. Through their affidavits, Plaintiffs aver that they personally observed Defendants dismiss and fail to pay roughly eighty other drywall workers. Castro Aff. ¶ 11; Martinez Aff. ¶ 11; Torres Aff. ¶ 11. As discussed above, the Court finds that these personal observations are sufficient to satisfy Plaintiffs' low burden at this stage.

Next, First Class Defendants argue that it is not procedurally proper to certify the Last Paycheck Class, because seventy-five of the roughly eighty putative class members were fully compensated by First Class as a result of an agreement with the DOL and have therefore waived their claims regarding the same. (Doc. No. 53 at 10-11). In support of this argument, Defendant Reyes' affidavit states that "[a]s a result of the agreement with the Department of Labor, these seventy-five (75) workers were paid back their wages for the weeks of May 14, 2018 and May 21, 2018, and thereby released First Class Defendants from any and all liability related to the nonpayment regarding the weeks of May 14, 2018 and May 21, 2018." Reyes Aff. ¶ 19. This argument fails for a number of reasons. As an initial matter, the Court cannot, at this stage of the

litigation, resolve the factual disputes created by Defendants' affidavits. The balancing of competing affirmations would require credibility determinations, which are inappropriate at this stage of the litigation. The Court cannot decide substantive issues going to the ultimate merits, or make credibility determinations, now. *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018).

Moreover, the Court rejects as unsupported and conclusory Defendants' argument that any putative member of the Last Paycheck Class has in fact waived his FLSA minimum wage violation claim. Defendant Reyes's affidavit states that as a result of being paid back their wages, the seventy-five compensated drywall workers "*thereby* released First Class Defendants from any and all liability . . ." Reyes Aff. ¶ 19 (emphasis added). But this is nothing more than an unsupported legal conclusion. Even if seventy-five workers have in fact been fully compensated as a result of the DOL agreement, Defendants have not provided any evidence that those drywall workers explicitly waived any FLSA claim or that any explicit waiver would be effective. Nor have Defendants set forth any authority suggesting that repayment of wages months after work is completed amounts to an implicit waiver of a FLSA minimum-wage violation claim as a matter of law. To the contrary, 29 U.S.C. § 216(b) provides that an employer who violates the FLSA minimum wage provision is liable for repayment of the unpaid wages as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Defendants have not suggested that any drywall worker has been paid liquidated damages. Accordingly, whether certain individuals have in fact waived their FLSA minimum wage claims against Defendants is a fact-intensive inquiry and is not relevant at the conditional certification stage. *See Bradford*, 137 F. Supp. 3d at 1027.

Third, Mr. Drywall argues that Plaintiffs and putative members of the Last Paycheck Class have not suffered a common practice or FLSA violation by Mr. Drywall in particular. (Doc. No.

57 at 11). As fully discussed above, the Court will not conduct such a fact-intensive inquiry into Mr. Drywall's particularly liability at this stage. The Court need not recreate the above analysis here.[10]

Finally, both Defendants allege that the Last Paycheck Class is overly broad because, as defined, it includes workers employed by entities other than Defendants. (Doc. No 53 at 10; Doc. No. 57 at 12-13). The Court agrees. Plaintiffs define the Last Paycheck Class as "[a]ll workers performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018." (Doc. No. 1 ¶ 48). As with the Overtime Class, Plaintiffs have filed no affidavit of any drywall worker employed by a non-Defendant entity who claims he suffered a minimum wage violation or was unlawfully terminated at any time between May 21 and May 29, 2018. Accordingly, Plaintiffs have not demonstrated that they are similarly situated to all putative members of the Last Paycheck Class as currently defined. The Court will therefore limit the conditional certification of the Last Paycheck Class to all workers *who were employed by Defendants* performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018.

With regard to Plaintiffs' retaliation claim, the Court finds that Plaintiffs have not made even "a modest factual showing" sufficient to demonstrate that they and potential plaintiffs (1)

---

[10] Even if specific defendants' liability were relevant at the conditional certification stage, Plaintiffs have sufficiently demonstrated that Mr. Drywall employees were connected to the FLSA minimum-wage violation. In Plaintiff Martinez's Affidavit, he states that when he arrived at work that day, Richard, a Mr. Drywall employee, told him and roughly fifty other workers they had to leave the worksite and would not get their pay for the last two weeks. Martinez Aff. ¶ 11. Plaintiff Castro and Mr. Torres aver that they were told the same by another Mr. Drywall employee named Silvano. Castro Aff. ¶ 11; Torres Aff. ¶ 11.

were victims of a FLSA- violating policy or plan, *Comer*, 454 F.3d at 547, or (2) are "unified by common theories of defendants' statutory violations," *O'Brien*, 575 F.3d at 585. *See also Medley v. S. Health Partners, Inc.*, Case No. 1:17-cv-00003, 2017 WL 3485641, at *5 (M.D. Tenn. Aug. 15, 2017) ("The named plaintiff 'must present some factual support for the existence of a class-wide policy or practice' that violates the FLSA." (citation omitted)). Plaintiffs' unsupported assertion that Defendants violated the FLSA's anti-retaliation provision by firing Plaintiffs Castro and Martinez and putative members of the Last Paycheck Class is insufficient even under the most lenient standard to show a class of drywall workers was similarly situated. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The 'modest factual showing' cannot be satisfied by 'unsupported assertions . . .'"); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir.1983) (district court did not abuse its discretion in refusing to authorize class notice where plaintiff's counsel offered only unsupported assertions of widespread FLSA violations); *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D.Minn.1991) (motion for court–authorized notice denied where plaintiff's unsupported allegations, standing alone, provided "an insufficient basis for determining whether sending court–authorized notice is appropriate").

Moreover, Plaintiffs' allegations regarding Defendants' violation of the FLSA's anti-retaliation provision are not only unsupported, they are directly contradicted by Plaintiffs' own affidavits submitted in connection with the Motion. In their Memorandum, Plaintiffs argue that the Last Paycheck Class is united by Defendants' violation of the FLSA's anti-retaliation provision for "fir[ing] them for demanding their paychecks." (Doc. No. 38 at 13). But in their affidavits, Plaintiffs and Mr. Torres concede that they did not demand their unpaid wages until after they were told that "there was no more work for [them] and they had to leave." Castro Aff. ¶ 11; Torres Aff. ¶ 11 (same); Martinez Aff. ¶ 11 ("When I arrived, Richard told me and about fifty (50) other

workers that we would not get our pay for the last two weeks. He told us to leave the worksite. Eventually, other workers arrived and we demanded our last two weeks pay . . .”). According to these affidavits, therefore, the decision to terminate members of the Last Paycheck Class was made prior to, and thus not in retaliation for, their demanding their paychecks.

Although, at the conditional certification stage, Courts "[do] not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," *Crosby*, 348 F. Supp. 3d at 747 (citation omitted), "plaintiffs' pleadings must be legally sufficient," *Boutros v. JTC Painting and Decorating Corp.*, Case No. 12-cv-7576, 2013 WL 3110943, at *4 (S.D.N.Y. June 19, 2-13).[11] "The court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management, and it does not promote efficient case management to facilitate notice to potential class members where the representative plaintiffs have failed to state plausible FLSA violations." *Id.* (citation omitted). Accordingly, although the Court does certify—subject to the specified limitations—the Last Paycheck Class with respect to Plaintiffs' minimum wage claim, Plaintiffs' unsupported and contradicted allegations regarding Defendants' violation of the FLSA's anti-retaliation provision are insufficient to support the Court's conditional certification of the Last Paycheck Class with respect to Plaintiffs' retaliation claim.

---

[11] This is not a case in which the Court is improperly weighing competing affidavits or declarations submitted by a defendant. *See Crosby*, 348 F. Supp. 3d at 749 (affording little or no weight to employee declarations submitted in support of defendant's opposition to conditional certification); *Racey v. Jay-Jay Cabaret, Inc.*, Case No. 15-cv-8228, 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016) (distinguishing between contradictory declarations submitted by defendant and contradictory declarations submitted by plaintiff).

# CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Conditional Certification of this Case as a Collective Action (Doc. No. 37) will be **GRANTED IN PART AND DENIED IN PART**. The Court conditionally certifies this matter as a collective action consisting of the following classes:

> The "Overtime Class" will consist of all workers who were employed by Defendants performing drywall installation, framing, and/or finishing work on the Marriott Project at any time between July 2017 and May 2018.

> The "Last Paycheck Class" will consist of all workers who were employed by Defendants performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018.
> In addition, the Court will **APPROVE** Plaintiffs' request for a brief opt-in period of two weeks.[12]

An appropriate order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] "Courts have the authority to supervise the issuance of notice in FLSA collective actions, with the objective of 'manag[ing] the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.'" *Amos*, 2017 WL 2935834, at *4 (quoting *Hoffmann–La Roche*, 493 U.S. at 169). Plaintiffs have requested the Court exercise its authority to authorize a brief opt-in period of two weeks. Defendants did not address this request or raise any objections to it in their Responses. The Court has reviewed and approves Plaintiffs' request for a brief two-week opt-in period.