IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL ALVARADO MARTINEZ; ALEXANDRO PEREZ; NELSON EGUIZABAL BRITO; CARLOS CASTRO; and ALEXIS MARQUEZ, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FIRST CLASS INTERIORS OF NAPLES, LLC; JOSE ROBERTO REYES individually and d/b/a FIRST CLASS INTERIORS OF NAPLES, LLC; and MR. DRYWALL SERVICES, LLC, | ) ) ) ) ) ) ) |
| Defendants. | ) |

NO. 3:18-cv-00583
JUDGE RICHARDSON

## **MEMORANDUM OPINION & ORDER**

On March 4, 2020, the parties appeared before the Court for a hearing to show cause on Plaintiffs' motion for civil contempt and discovery sanctions under Federal Rule of Civil Procedure 37 (Doc. No. 145, "Motion for Contempt"). Via Order dated March 5, 2020, consistent with its comments made at the show-cause hearing, the Court granted Plaintiffs' Motion for Contempt, holding Defendant First Class Interiors of Naples, LLC ("FCI") in contempt for violating this Court's January 11, 2019 Order (Doc. No. 64, "Discovery Order") and finding FCI subject to discovery sanctions under Federal Rule of Civil Procedure 37. (Doc. No. 187, "March 5 Order"). Via the same Order, the Court directed the parties to file post-hearing briefs regarding (1) the appropriate remedy to be ordered against FCI; (2) the extent to which the contempt proceedings are stayed as to Defendant Reyes under 11 U.S.C. § 362(a); and (3) to the extent that contempt proceedings are not stayed against him, the kind(s) of relief that can be ordered against Defendant Reyes if he were to be found in contempt.

I. <u>Post-Hearing Briefing Regarding Remedies for Contempt and Rule 37 Sanctions</u>

In response to the March 5 Order, FCI filed a "[Proposed] Order on Plaintiffs' Motion for Contempt and for Sanctions Against Defendant First Class Interiors of Naples, LLC." (Doc. No. 193-1, "FCI's Proposed Order"). In FCI's Proposed Order, FCI requests that the Court order, as the applicable remedies for FCI's contempt and violation of the Discovery Order, that:

1. Default be entered against FCI and entry of final judgment be entered against it in an amount to be determined by the Court upon a showing of proof by Plaintiffs (except that FCI does not admit any fraudulent or criminal activity as alleged in Counts III and IV of the Complaint (D.E. 1));

2. Plaintiffs be awarded attorneys' fees in the amount of $25,000.00 against FCI as reimbursement to Plaintiffs for their attorneys' time to pursue compliance with the discovery;

3. FCI be prohibited from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; and

4. FCI be prohibited from opposing Plaintiffs' proof of damages.

FCI also requests that the Court find that the contempt proceedings against Defendant Reyes are automatically stayed as a result of Reyes' pending Chapter 13 bankruptcy proceedings. (*Id.*).

On March 11, 2020, Plaintiffs filed their "Brief Regarding Appropriate Remedies for Contempt and Rule 37 Violations" (Doc. No. 194, "Plaintiffs' Remedies Brief") and attached a "[Proposed] Order of Contempt Against Defendants First Class Interiors of Naples, LLC and Jose Roberto Reyes" (Doc. No. 194-1, "Plaintiffs' Proposed Order"). In Plaintiffs' Remedies Brief, Plaintiffs argue that the automatic stay triggered by Reyes' bankruptcy filing does not prohibit the Court from finding Reyes in contempt and imposing certain remedies against him. (Doc. No. 194

at 3). Plaintiffs therein also responded to the remedies proposed by FCI in FCI's Proposed Order, arguing that FCI's proposed remedies are "inadequate to repair the harm caused by FCI's flagrant violations of the Court's many discovery orders." (*Id.* at 4). In Plaintiffs' Proposed Order, Plaintiffs request, as the applicable remedies for FCI's and Reyes's contempt and violation of the Discovery Order, that:

1. The Court assess monetary sanctions against FCI pursuant to Rule 37 in the amount of $24,533.00;

2. The Court enter default against FCI in an amount to be determined by the Court at a later date;

3. Defendants FCI and Reyes be prohibited from introducing in this lawsuit or otherwise providing to Defendant Mr. Drywall Services, LLC information or documents that would have been responsible [sic] to Plaintiffs' discovery requests to FCI and/or Reyes;

4. Docket Entry 21 be stricken and that the allegations contained in Plaintiffs' Complaint, (Doc. No. 1), be admitted by Defendants FCI and Reyes;

5. Plaintiffs be entitled to the relaxed burden of proof as to damages as articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972); and

6. That the Court retain jurisdiction to enforce this Order and its terms.

Defendant Mr. Drywall Services, LLC ("Mr. Drywall") also filed a brief pursuant to the March 5 Order regarding the appropriate remedies to be ordered against FCI and Reyes. (Doc. No. 195, "Mr. Drywall's Contempt Brief"). In its brief (Doc. No. 195 at 2-3), Mr. Drywall proposes that the Court order, as the applicable remedies for FCI's contempt and violation of the Discovery Order, that:

1. FCI reimburse Plaintiffs for Plaintiffs' reasonable attorneys' fees and costs incurred in obtaining compliance with the Supplemental Production Order;

2. FCI activate their subscription with the payroll provider, sufficient for FCI to supplement their response to Request No. 2. (Doc. No. 136 at 5); and

3. FCI hire, and pay for, a forensic expert, approved in writing by Plaintiffs and Mr. Drywall, to examine the computer which contained FCI's and Reyes's alleged written communications with Mr. Drywall and employment classification documents, and produce all relevant documents recovered from that computer.

In addition, Mr. Drywall argues that the contempt proceedings are stayed as to Reyes. (*Id.* at 4). However, if the Court finds that contempt proceedings against Reyes are not stayed, Mr. Drywall requests that the Court order the same relief against Reyes that Mr. Drywall proposed against FCI. Finally, Mr. Drywall is particularly concerned with Plaintiffs' proposition that FCI be barred from providing to Mr. Drywall information or documents that would have been responsive to Plaintiffs' discovery requests to FCI or Reyes. (Doc. No. 195 at 7). Mr. Drywall asserts that the reason Plaintiffs request this remedy is that such documents would show that Mr. Drywall is not a proper defendant in this matter. (*Id.*).

On March 16, 2020, Plaintiffs replied to Mr. Drywall's Contempt Brief (Doc. No. 197), arguing that Mr. Drywall's second and third proposed remedies against FCI—that FCI be required to activate their subscription with the payroll provider and to hire, and pay for, a forensic expert to examine the computer—are unrealistic, prejudicial to Plaintiffs, and wasteful of the Court's time. (*Id.* at 1-2). Additionally, Plaintiffs argue that these remedies, if ordered by the Court, would likely be futile, in which case Plaintiffs would have to file yet another motion for contempt. (*Id.* at 2).

Also on March 16, 2020, Mr. Drywall responded to Plaintiffs' Remedies Brief, arguing that Plaintiffs' proposed remedies would unfairly prejudice Mr. Drywall. (Doc. No. 199). Mr. Drywall addressed each of Plaintiffs' proposed remedies. First, although Mr. Drywall's asserts that proceedings are stayed as to Defendant Reyes under § 362(a), it opposes Plaintiffs' requested relief for sanctions against FCI "to the extent that it does not include a finding of contempt and sanctions under Rule 37 against Reyes." (Doc. No. 199 at 2). Second, Mr. Drywall argues that if the Court imposes a monetary sanction against FCI for reasonable expenses and attorney's fees to compensate Plaintiffs for their attorneys' time to pursue compliance with this discovery, it should require Plaintiffs to demonstrate how they arrived at the amount of $24,533.00. Third, Mr. Drywall argues that the Court should not grant Plaintiffs' request for a default against FCI or relieve FCI from complying with any discovery because so doing would prejudice Mr. Drywall, which is currently awaiting decisions regarding pending motions concerning affirmative defenses and outstanding discovery requests from Plaintiffs, which may necessitate additional discovery from FCI and Reyes (Doc. No. 199 at 4). Fourth, Mr. Drywall argues that the Court should not prohibit FCI and Reyes from introducing or otherwise providing to Mr. Drywall information or documents that would have been responsive to Plaintiffs' discovery requests, because such a remedy would prejudice Mr. Drywall. Fifth, Mr. Drywall argues that the Court should not strike FCI and Reyes' pleading because less drastic sanctions are available. (*Id.* at 8-9). Finally, Mr. Drywall argues that Plaintiffs, contrary to their assertion, should not be entitled to the relaxed burden of presumption as to damages as articulated in *Anderson*, 328 U.S. at 687. To the extent the Court grants Plaintiffs' request for a relaxed burden of proof as to damages, Mr. Drywall requests that that relaxed burden apply only to FCI and Reyes and that Mr. Drywall not be held jointly and severally liable for any judgment obtained by Plaintiffs against FCI and Reyes.

II.     Automatic Stay as to Defendant Reyes

"As a general rule, the filing of a bankruptcy petition operates to stay, among other things, the continuation of a judicial proceeding against the debtor that was commenced before the petition." *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012) (citing 11 U.S.C. § 362(a)(1)). The filing of the bankruptcy petition, however, does not always trigger the automatic stay; there are statutory and non-statutory exemptions. The district court has jurisdiction to determine whether the proceeding before it is subject to the automatic stay or falls within an exemption. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) (quoting *In re Baldwin–United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. 1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.")). But the final say regarding the applicability of the automatic stay ultimately belongs to the bankruptcy court. *See Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001).

Here, it is clear that no §362(b) *statutory* exemption applies. Therefore, the contempt proceedings against Defendant Reyes will only proceed if it falls under a *non-statutory* exemption. Generally, civil contempt proceedings are not exempt from the application of the automatic stay. *Tracer Logistics, LLC v. MJS Carriers LLC*, No. 3:14-cv-0890, 2018 WL 10149995, at *4 (M.D. Tenn. Sept. 26, 2018). However, in *Dominic's Restaurant*, the Sixth Circuit held that the defendant's petition for bankruptcy did not stay the contempt proceedings against him for his failure to obey court orders enjoining him from infringing the plaintiff's trademark. *Dominic's Restaurant*, 683 F.3d at 760. Specifically, the court held that "the automatic bankruptcy stay 'protects interests in a debtor's property, not tortious uses of that property by the debtor.'" *Id.*

(citation omitted). But here, by contrast, Reyes's failure to comply with the Court's discovery order does not amount to a tortious use of his property. Furthermore, as Mr. Drywall notes, it does not appear that the Sixth Circuit has recognized a non-statutory exemption that would apply in this case.[1] Accordingly, the Court will not push the application of the exemption further than expressly contemplated by the Sixth Circuit.

Although the Court finds that the automatic stay is in effect as to the contempt proceedings against Reyes, FCI cannot evade its discovery obligations by claiming that FCI's documents are in the possession, custody, or control of Reyes.[2] Neither FCI nor its property are part of the

---

[1] This is not to definitively say that the Sixth Circuit would reverse an order if this Court were to hold Reyes in contempt and order certain remedies against him. Indeed, the Sixth Circuit in *Dominic's Restaurant* acknowledged that

> [i]t is within a court's inherent power to take whatever steps [are] necessary to ensure those persons within its power comply with its orders. [We] cannot conceive that Congress intended to strip [a] court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge. If this were so, the court's orders could be rendered almost meaningless.

*Dominic's Restaurant*, 683 F.3d at 761 (citing *In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)). Relevant to this point is Magistrate Newbern finding that, prior to filing for bankruptcy, "Reyes knew of and violated the Court's definite and specific order (Doc. No. 64) requiring [FCI and Reyes] to supplement their responses to the plaintiffs' requests for production on or before January 18, 2019, by failing to search relevant records in their possession, custody, or control." (Doc. No. 178 at 6).

[2] The Court recognizes that although automatic stays under § 362(a) generally do not bar actions against non-debtors, proceedings against nonbankrupt codefendants may be stayed in 'unusual circumstances.'" *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000). An "unusual circumstance" arises when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re Eagle-Picher Industries, Inc.*, 963 F.2d 855, 861 (6th Cir. 1992) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). "Courts interpreting this directive have stayed actions against non-debtor co-defendants 'where they have found that the bankrupt estate would be adversely affected because the [] action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be

bankruptcy estate and therefore do not fall under the protection of the automatic stay. And because Reyes has already testified before this Court that he has miscellaneous paperwork in his house that may be responsive to Plaintiffs' requests for production (Doc. No. 178 at 2), he must participate in the discovery phase of this litigation; not in his capacity as an individual defendant but as the CEO, president, and sole member of FCI. (*See* Doc. Nos. 21, 203).

III. Remedies Ordered Against FCI

Federal Rule of Civil Procedure 37 authorizes district courts to sanction discovery abusers and flouters. "With respect to civil contempt proceedings, '[j]udicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with

---

devoted to a reorganization effort.'" *In re MCSi, Inc.*, 371 B.R. 270, 271-72 (S.D. Ohio 2004) (quoting *Gray v. Hirsch*, 230 B.R. 239, 243 (S.D.N.Y.1999)).

The Court does not find that an unusual circumstance exists sufficient to justify such an extension here. First, the burden of showing "unusual circumstances" falls on the party seeking the extension, and FCI has not requested protection under the stay, let alone done anything to meet the burden it would assume upon making such a request. *See NHI REIT of TX-IL, LLC v. LaSalle Group, Inc.*, 387 F. Supp. 3d 850, 851-852 (M.D. Tenn. 2019) (citing *Luppino v. York*, 562 B.R. 894, 898 (W.D. Tex. 2016)). Second, a judgment against FCI is not equivalent to a judgment against Reyes himself. Although FCI was a closely held company, no evidence has been provided that FCI is indemnified by Reyes such that a judgment against FCI would be in effect a judgment against Reyes. Third, compliance with the discovery obligations of FCI would not impose a substantial burden of discovery on FCI "that would otherwise be devoted to a reorganization effort." *In re MCSi, Inc.*, 371 B.R. at 272. Although Reyes (on behalf of non-debtor FCI) presumably would be required to spend some time and effort completing FCI's outstanding discovery obligations, when determining whether an "unusual circumstance" exists, courts look to whether there would be a consumption of "the time and energy of the *non-debtor*" (*id.*), not the debtor. Moreover, the burden upon Reyes himself could hardly be classified as substantial. Indeed, during a case management conference held on December 20, 2019, Reyes testified that he has boxes of "miscellaneous paperwork in [his] house" that he had not yet searched or provided to his counsel and that might contain FCI employee classification records from 2017 responsive to the Plaintiffs' requests for production. (Doc. No. 178 at 2 (citing Doc. No. 170 at 44)). Producing these documents would not substantially burden Reyes. Nor, does the Court find, that Reyes's future participation in the discovery in this action, including possibly sitting for one deposition, can be said to impose a substantial burden.

8

the court's order, and to compensate the complainant for losses sustained.'" *Elec. Workers Pension Tr. Fund of Local Union 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "A district judge holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment." *Grange Mutual Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008). However, entry of a default judgment for failure to cooperate in discovery is a sanction of last resort. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).

Both FCI and Plaintiffs ask the Court to enter default and a final judgment against FCI in an amount to be determined by the Court at a later date. But doing so at this time would not serve either of the purposes for which judicial sanctions in contempt proceedings are employed. First, it would not coerce FCI into compliance with the Court's order. To the contrary, it would terminate FCI's participation in this litigation as a party,[3] thereby terminating FCI's obligation to comply with the Discovery Order, which imposed ultimatums on it *as a party* participating in discovery. Perhaps entering default judgment as a sanction against a defendant in FCI's position would be appropriate, even if it had the effect of letting the defendant shirk its obligations under a court order, if doing so would in fact resolve the entire litigation. In such a case, the case's resolution would render moot any outstanding discovery (and discovery disputes) in the entire case, thus eliminating the practical (if not symbolic) need to ensure compliance with the Court's order. But that is not the situation here. Even if the Court entered default and a final judgment against FCI, it

---

[3] This appears to be exactly what FCI wants. Indeed, during the March 4, 2020 hearing to show cause on Plaintiffs' Motion for Contempt, counsel for FCI suggested that FCI was insolvent. In its Business Entity Disclosure Statement, FCI represented that it is inactive and voluntarily dissolved on February 25, 2020. (Doc. No. 203-1). And in FCI's Proposed Order, FCI essentially agreed to (1) stop litigating the case, (2) concede almost all of the allegations against it in the Complaint, and (3) consent to a default judgment. (Doc. No. 193-1).

would still need to resolve Plaintiffs' claims against Mr. Drywall. Because the documents in FCI's possession are likely relevant to resolving those claims, FCI should be subject to producing them as a party, under the Federal Rules' procedures for obtaining discovery from a party.[4] To this point, FCI has suggested that it will not be able to pay any judgment entered against it, highlighting Plaintiffs' need to continue on with the litigation against Mr. Drywall even if a default judgment is entered against FCI, lest Plaintiffs never collect any potential damages at all. Thus, entering default and final judgment against FCI would not coerce FCI into complying with the Discovery Order or effectuate resolution of the entire case as a tolerable alternative to FCI's compliance.

Second, entering default against FCI at this time would overcompensate Plaintiffs for the losses they have sustained as a result of FCI's failure to produce discovery responsive to Plaintiffs' request for production. As a consequence of FCI's noncompliance, Plaintiffs have suffered two main losses: (1) deprivation of information critical to proving their claims and (2) expenses and attorney's fees required to seek to force FCI to provide this information in discovery.[5] There are certainly less drastic sanctions that the Court can and will impose on FCI in order to adequately compensate Plaintiffs for these losses.

Moreover, the remedy that FCI proposes is not in fact a default judgment. Although FCI requests that the Court enter default and final judgment against it, it also states that "[n]othing in

---

[4] It is possible that Plaintiffs and Mr. Drywall could request, via subpoena under Federal Rule of Civil Procedure 45, documents from FCI as a non-party to this litigation after an entry of default judgment against FCI. But to require parties to go the Rule 45 subpoena route, rather than use the simpler discovery provisions currently applicable to FCI as a party, would result in a waste of time and resources.

[5] Although Plaintiffs have also suffered delays as a result of FCI's noncompliance, the delays are not so substantial as to warrant entry of a default judgment when less severe sanctions are available.

this order shall be construed as an admission by [FCI] of any fraudulent or criminal activity as alleged in Counts III and IV of the Complaint (D.E. 1)." (Doc. No. 193-1 at 1). Federal Rule of Civil Procedure 55(b)(2) governs default judgment. *See* Fed. R. Civ. P. 55(b). Once default has been entered against a party, the defaulting party is deemed to have admitted *all* of the well-pleaded factual allegations in the complaint regarding liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995)). FCI requests that some, but not all, of the allegations against it regarding liability (none of which FCI asserts or the Court perceives as not well pleaded) be deemed admitted. So it is requesting consequences less fulsome (and less damning) than those that result from a true default judgment—meaning that it is actually requesting something different from a default judgment.

For all of these reasons, default judgment is not an appropriate remedy for FCI's failure to comply with the Court's orders.

Nevertheless, despite ultimately not acceding to a true default judgment, FCI has indicated that it does not intend to defend itself from the claims asserted against it and proposes that the Court prohibit it from supporting or opposing designated claims or defenses. The Court has no intention of compelling a defendant to defend itself in a lawsuit against the defendant's wishes. Accordingly, the Court will grant some of FCI's requests and order the following:

First, FCI is prohibited from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Specifically, FCI shall not be permitted to offer any defenses as to liability or, indeed, to oppose Plaintiffs' assertion of liability at all. And in opposing Plaintiffs' proof of damages to be awarded against FCI, FCI shall not be permitted to rely on any documents that it has not yet provided to Plaintiffs. This shall not be construed as prohibiting FCI from turning documents over to Mr. Drywall or prohibiting Mr. Drywall from using any of the

documents that FCI has withheld to date but subsequently provides to Mr. Drywall. Plaintiffs will not be prejudiced by Mr. Drywall's use of any information it receives in the future (or has already received) from FCI in discovery because: (a) Plaintiffs' discovery requests to Mr. Drywall presumably (and certainly should) cover documents turned over to Mr. Drywall from FCI and Reyes: and (b) in an abundance of caution, the Court in any event hereby orders Mr. Drywall to turn over to Plaintiffs any discovery it subsequently receives (or has already received) from FCI regarding the miscellaneous documents in Reyes's house, documents and information from the allegedly nonfunctioning computer, and documents and information from the subscription payroll provider.

Second, in order to properly compensate Plaintiffs for their lack of access thus far to documents and information that has been withheld, the Court orders that Plaintiffs are (to the extent indicated below) entitled to the relaxed burden of proof as to damages as articulated in *Anderson*. However, the relaxed burden of proof will apply only to damages to be awarded against *FCI*, not Mr. Drywall, which should not suffer prejudice from FCI's transgressions (for which Mr. Drywall is not responsible). This means, among other things, that if Mr. Drywall and FCI are found to be joint employers of Plaintiffs and Class Members, such that they are jointly and severally liable on the Fair Labor Standards Act ("FLSA') claims against them, Plaintiffs will not be entitled to the relaxed burden regarding damages to be awarded *against Mr. Drywall* unless that is otherwise appropriate under the framework outlined by the Supreme Court in *Anderson*. Under *Anderson*, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee [can satisfy] his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*,

328 U.S. at 687. Once the employee satisfy this relaxed burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. If the Court finds that Mr. Drywall is a joint employer, Mr. Drywall will be individually and jointly responsible for complying with the provisions of the FLSA governing record retention. *See* 29 C.F.R. § 791.2(a) ("[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act . . . ."); *Wade v. Woodland Commons*, LLC, No. 1:09-CV-1426, 2012 WL 929839, at *5 n.7 (N.D.N.Y. Mar. 19, 2012) ("Under the FLSA, every employer is required to "make, keep, and preserve such records of the persons employed by [it] and of the wages, hours, and other conditions and practices of employment." (quoting 29 U.S.C. § 211(c))); *see also Liu v. Win Woo Trading*, LLC, No. 14-CV-02639-KAW, 2016 WL 3279466, at *7 (N.D. Cal. June 15, 2016); *Antenor v. D & S Farms*, 39 F. Supp. 2d 1372, 1379 (S.D. Fla. 1999).

This means that Mr. Drywall conceivably could *be responsible for maintaining* all of the records Plaintiffs currently are seeking from FCI. But it also means that Mr. Drywall could be, for all the Court knows, *capable* of producing such records. Plaintiffs will be entitled to a relaxed burden against Mr. Drywall only if neither Mr. Drywall or FCI produce to Plaintiffs the relevant documents and information Plaintiffs need to prove that they performed work for which they allege they were not compensated.

Third, to compensate Plaintiffs for the losses they have sustained as a result of their attorneys' time and expenses in attempting to retrieve this discovery, the Court will award Plaintiffs attorneys' fees in the amount of $24,533.00 against FCI, as requested by Plaintiffs and FCI.

Fourth, by April 28, 2020, FCI shall produce to Plaintiffs the miscellaneous paperwork that, according to Reyes's testimony, is in his house. Although the Court generally does not presume to dictate who at a legal (non-natural) entity is required to act on behalf of the entity, Reyes has represented that the responsive documents belonging to FCI are in his house. Therefore, either Reyes must collect and produce this paperwork, or he must authorize someone to enter his house in order to collect and produce these documents on FCI's behalf.[6]

Fifth, FCI shall either (1) hire, and pay for, a forensic expert to examine the allegedly nonfunctioning computer and produce all relevant documents recovered from that computer or (2) at a time and place to be agreed upon by the parties, make available for review (including by logical copying and/or imaging) the same computer. If Plaintiffs and Mr. Drywall are unable to access the relevant information from this allegedly nonfunctioning computer (upon their initial review), the Court shall construe this information as unavailable. However, Mr. Drywall shall be permitted reasonable time to find, hire, and pay for someone to recover the relevant information from the computer. If Mr. Drywall is able to retrieve the relevant information, the Court shall not construe this information as unavailable as to any claims asserted against Mr. Drywall.

If FCI does not produce these documents by the allotted date or make the computer available for review at the time and place to be agreed upon by the parties, or provide a compelling explanation as to why it is unable to do so, Plaintiffs' request that the Court strike FCI's answer will be granted, and FCI's answer shall be stricken in its entirety—resulting in, among other things,

---

[6] The Court will not order FCI to reactivate its subscription with the payroll provider. The parties have not argued or provided any case law suggesting that such documents or information qualify as being within FCI's possession, custody, or control. If Mr. Drywall believes that the documents in the possession of the third-party payroll provider are integral to defending the claims against it, it can issue a third-party subpoena to the payroll provider under Fed. R. Civ. P. 45.

an admission by FCI of fraudulent or criminal activity as alleged in Counts III and IV of the Complaint.[7] Additionally, if FCI does not comply with these discovery obligations, the Court will not hesitate to order more severe civil contempt sanctions, such as the incarceration of Reyes in his capacity as representative of FCI. *See United States v. Conces*, 507 F.3d 1028, 1043–44 (6th Cir. 2007) (recognizing that although "incarceration is a severe sanction for a party's failure to comply with a discovery order," which "ordinarily should be employed only as a last resort. . . [,] [t]he district court has inherent authority to fashion the remedy for contumacious conduct, and incarceration is among the authorized remedies" (internal quotation marks and citations omitted)).

If FCI fails to comply with this Order by the required deadlines, Plaintiffs and/or Mr. Drywall shall inform the Court of FCI's noncompliance, and the Court will proceed as circumstances dictate. Plaintiffs will not be required to file another motion to compel or motion for contempt at that time.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[7] If the Court strikes FCI's answer, the Court will reserve entering default against FCI until the Court has been able to determine whether Defendants are jointly and severally liable.