IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DANIEL ALVARADO MARTINEZ, et al.,   )
   )
      Plaintiffs,   )     NO. 3:18-cv-00583
   )     JUDGE RICHARDSON
v.   )
   )
FIRST CLASS INTERIORS OF NAPLES,   )
LLC, et al.,   )
   )
      Defendants.   )

## MEMORANDUM OPINION

Pending before the Court is Defendant Mr. Drywall Services, LLC ("Mr. Drywall")'s Motion to Defer Consideration of or Deny Plaintiffs' Motion for Summary Judgment (Doc. No. 219, "Motion"). Plaintiffs have responded in opposition (Doc. No. 223, "Response"). For the reasons discussed below, Mr. Drywall's Motion will be **GRANTED IN PART**.

## BACKGROUND

In this conditionally certified collective action, Plaintiffs allege that Defendants' policies and practices violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). (Doc. No. 1 ¶¶ 1-2). Specifically, Plaintiffs allege that Defendants failed to pay Plaintiffs and members of the Overtime Class one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week during the relevant period. (*Id.* ¶ 50). Plaintiffs also allege that Defendants failed to pay Plaintiffs and members of the Overtime Class the federal minimum wage for all hours worked after clocking in, including hours spent attending safety meetings and performing other such work. (*Id.*). Plaintiffs allege that Defendants failed to pay Plaintiffs Castro and Martinez, and members of the Last Paycheck Class, for their final two weeks of employment. (*Id.* ¶ 49). Plaintiffs further claim that after members of the Last Paycheck Class

requested their wages, Defendants First Class Interiors of Naples, LLC ("FCI") and Jose Roberto Reyes terminated those drywall workers in violation of the FLSA's anti-retaliation provision. (*Id.* ¶¶ 86-92).

Plaintiffs assert one count against Mr. Drywall, alleging that Defendants violated the overtime and minimum wage provisions of the FLSA. (Doc. No. 1 ¶¶ 69-84 (Count I)). Count II, alleging FLSA retaliation, is asserted against only Defendants FCI and Reyes. (*Id.* ¶¶ 84-93). The parties have agreed to voluntarily dismiss Counts III & IV of the Complaint, which allege fraud in hiring and fraudulent filing of IRS information returns respectively. (Doc. No. 218).

On September 6, 2019, the Court granted in part Plaintiffs' Motion for Conditional Certification of this Case as a Collective Action. (Doc. No. 98). The Court granted an opt-in period of two weeks, and Plaintiffs filed their last set of opt-in consent forms on September 20, 2019. (Doc. Nos. 98, 99, 101). In addition to the five Named Plaintiffs, 112 persons ("Opt-In Plaintiffs") have executed an opt-in consent form. (Doc. Nos. 99, 101).

On October 10, 2019, after the Court conditionally certified this case as a FLSA collective action, the Court issued an Amended Case Management Order (Doc No. 110, "Amended CMO"). Pursuant to the Amended CMO, all written discovery and fact depositions were scheduled to conclude by March 13, 2020; Defendants were ordered to serve all written discovery on the Opt-In Plaintiffs by October 18, 2019, and all parties were ordered to file discovery motions by January 10, 2020. (Doc. No. 110). The Amended CMO also required any motion for decertification be filed on or before April 17, 2020. (*Id.*). On April 17, 2020, however, the magistrate judge entered an Order granting Mr. Drywall's motion to continue and to extend the remaining case management deadlines in this matter. (Doc. No. 207). The magistrate judge held that developments in the case since those deadlines were set made their continuance necessary. (*Id.*). In the same Order, the

2

magistrate judge scheduled a telephonic hearing with counsel for May 1, 2020, after which the Court anticipated resetting all outstanding case management deadlines. On May 1, 2020, the magistrate judge held the scheduled telephonic hearing and, based on the parties' representations, ordered *inter alia* that Mr. Drywall file the instant Motion by May 8, 2020 and that Plaintiffs respond by May 15, 2020. (Doc. No. 217). The Court did not, however, reset all outstanding case management deadlines. On May 29, 2020, the magistrate judge denied without prejudice Mr. Drywall's Motion for a Discovery Conference (Doc. No 228) to discuss a dispute regarding its efforts to depose certain Named Plaintiffs, pending the Court's decision on the instant Motion.

The parties have had a number of discovery disputes requiring multiple conferences in this action. Some of their disputes have been resolved while others remain pending. Currently pending are (1) Plaintiffs' Renewed Motion for Protective Order (Doc. No. 156), which requests that the Court excuse the Named Plaintiffs and Opt-In Plaintiffs from complying with written discovery requests served on them by Mr. Drywall in October 2019;[1] (2) Mr. Drywall's Motion to Compel, and Leave to Take, Depositions of Plaintiffs (Doc. No. 158), which requests that the Court compel, and grant Mr. Drywall leave to take, the depositions of the alleged 117 persons who executed an opt-in consent form,[2] which includes the five Named Plaintiffs and Opt-In Plaintiffs; (3) Plaintiffs'

---

[1] The discovery requests include the following: (1) Mr. Drywall's Second Requests for Production to Alexandro Perez; (2) Mr. Drywall's Second Requests for Production to Nelson Eguizabal Brito; (3) Mr. Drywall's Second Requests for Production to Carlos Castro; (4) Mr. Drywall's Second Requests for Production to Alexis Marquez; (5) Mr. Drywall's Second Requests for Production to Daniel Alvarado Martinez; (6) Mr. Drywall's Third Requests for Production to Plaintiff Daniel Alvarado Martinez; (7) Mr. Drywall's Third Requests for Production to Plaintiff Carlos Castro; (8) Mr. Drywall's Third Requests for Production to Plaintiff Nelson Eguizabal Brito; (9) Mr. Drywall's Combined Interrogatories to Opt-In Plaintiffs; and (10) Mr. Drywall's Combined Requests for Production to Opt-In Plaintiffs. (Doc. No. 156).

[2] This form actually is styled, "CONSENT TO BECOME PARTY PLAINTIFF UNDER 16(b) OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 216(b)." Not just the opt-in Plaintiffs, but also the Named Plaintiffs, filed such a form

3

Renewed Motion to Compel Discovery Responses (Doc. No. 133), which seeks Mr. Drywall's tax returns; (4) Mr. Drywall's Motion to Compel, and For Leave to Take, Depositions of Defendant [FCI] and Defendant Reyes (Doc. No. 171); and (5) Plaintiffs' Motion for Protective Order (Doc. No. 188), relating to the deposition notices served by Mr. Drywall on the five Named Plaintiffs on or about February 19, 2020, noticing the depositions for March 9, 10, 11, 12, and 13, 2020.

At the time the instant Motion was filed, Mr. Drywall had not deposed any of the Named Plaintiffs or any Opt-In Plaintiffs; nor had it deposed FCI, Reyes, or Mauricio Munguia (an FCI supervisor). However, based on uncontested representations in Plaintiffs' Response, it appears that Mr. Drywall has now deposed two of the five Named Plaintiffs and was scheduled to depose a third on Monday, May 18. The Court has not been informed whether the third deposition has in fact occurred.[3] According to Plaintiffs, although Mr. Drywall has not itself deposed Defendant Reyes, Mr. Munguia, or Serge Lemaire (a former Mr. Drywall supervisor), Mr. Drywall has "participated" in the depositions of those individuals. (Doc. No. 223 at 3).

Although a large amount of discovery remains outstanding, some issues have been resolved. On April 22, 2020, FCI confirmed it would appear for a deposition to be taken by Mr. Drywall. (Doc. No. 215). Additionally, in response to the Court's April 7, 2020 Order (Doc. No. 204), FCI produced some, but not all, documents it represented existed. (Doc. No. 215). However,

---

[3] In February 2020, Mr. Drywall tried to schedule depositions of the Named Plaintiffs for March 9, 2020 to March 13, 2020, with one deposition occurring each day, in case the Court ruled on the discovery disputes before the March 13, 2020 Discovery Deadline. (Doc. No. 173). When Named Plaintiffs did not appear for the depositions, Mr. Drywall filed a Discovery Dispute Statement requesting (1) reimbursement of the costs associated with the Named Plaintiffs' nonappearances for each deposition and (2) an order compelling the depositions of the five Named Plaintiffs. (Doc. No. 200). On March 27, 2020, Mr. Drywall filed a Motion for a discovery conference to address various disputes among the parties (Doc. No. 201), which was granted on April 17, 2020. (Doc. No. 207). The issue of Mr. Drywall's depositions of the Named Plaintiffs and Opt-In Plaintiffs remains pending.

4

because it is Mr. Drywall's desire to obtain written discovery from Named Plaintiffs and Opt-In Plaintiffs before deposing FCI and its supervisor, Mauricio Munguia, progress towards completing the outstanding discovery remains stalled.

On April 27, 2020, Plaintiffs filed their Motion for Summary Judgment. (Doc. No. 210). On May 8, 2020, Mr. Drywall filed the instant Motion, moving the Court to deny or continue consideration of Plaintiffs' Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) on the grounds that it has not had sufficient time to conduct discovery. (Doc. No. 219). Mr. Drywall also filed a memorandum in support (Doc. No. 221) and the declaration of its attorney, Steven Douglas Weber (Doc. No. 220, "Weber Declaration"). Mr. Drywall subsequently filed a Motion for Extension of Time to File Response/Reply to Plaintiffs' Motion for Summary Judgment (Doc. No. 222) and a motion to ascertain the status of and request expedited disposition of the instant Motion. (Doc. No. 224). On May 27, 2020, the Court extended Mr. Drywall's deadline to respond to Plaintiffs' Motion for Summary Judgment to June 25, 2020. (Doc. No. 230)

## LEGAL STANDARD

Motions for summary judgment are typically based on the results of discovery—*i.e.*, depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials. Fed. R. Civ. P. 56(c)(1)(a). Although Rule 56(b) allows a party to file for summary judgment "at any time," the general rule is that a non-moving party must receive "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); *see also White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231–32 (6th Cir.1994) ("[A] grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery.").

5

Rule 56(d) provides the proper procedure for a party seeking additional discovery in order to adequately respond to an opposing party's motion for summary judgment. Rule 56(d) states:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). A party seeking additional discovery bears the burden of demonstrating why such discovery is necessary. *King v. Harwood*, 852 F.3d 568, 579 (6th Cir. 2017). The Sixth Circuit has indicated that in order to satisfy this burden, a non-movant party must file a declaration or affidavit that "indicates to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003) (alterations omitted) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). Where a party has complied with Rule 56(d)'s procedural requirements, the district court then considers whether, on balance, the plaintiff has satisfied the five factors outlined by the Sixth Circuit in *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995) (the "*Plott* Factors").[4] In *Plott*, the Sixth Circuit

---

[4] In *HCA-Info. Tech. & Servs., Inc. v. Informatica Corp.*, No. 3:10-cv-01155, 2011 WL 5117727 (M.D. Tenn. Oct. 25, 2011), the court first evaluated whether the party requesting additional discovery met its burden under Rule 56(d), including whether the party had identified with adequate precision the desired information, explained why it had not previously discovered the information, and established how the information would affect the outcome of the summary judgment motion. *Id.* at *6. After finding the party had met its burden relating to one of the issues on which it sough additional discovery, the court evaluated whether the party was entitled to discovery according to the *Plott* factors. *Id.*

established five factors that it considers when determining whether a district court has abused its discretion in denying a Rule 56(d) motion:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) (quoting *Plott*, 71 F.3d at 1196–97).[5]

## DISCUSSION

Mr. Drywall moves to the Court to deny or delay consideration of Plaintiff's Motion for Summary Judgment because (according to it) it has not had a full and fair opportunity to conduct adequate discovery prior to Plaintiffs filing their Motion for Summary Judgment. (Doc. No. 219). In support of its Motion, Mr. Drywall filed the Weber Declaration (Doc. No. 220), and a memorandum in support (Doc. No. 221). In the Weber Declaration, Mr. Drywall's counsel asserts that Plaintiffs' Motion for Summary Judgment is premised on Defendants not filing a motion for decertification in this case. (Doc. No. 219 ¶ 5). Mr. Weber states that Mr. Drywall intends to file a motion for decertification and, based on the Court's April 17, 2020 Order (Doc. No. 207), the deadline to file any motion for decertification has not yet passed because the Court continued all case management deadlines. Mr. Weber also states that in order for Mr. Drywall to respond to Plaintiffs' Motion for Summary Judgment, Mr. Drywall requires certain outstanding discovery.

---

[5] The *Cacevic* and *CenTra* opinions discuss "Rule 56(f)." That provision of Rule 56 was transferred to Rule 56(d) by the 2010 Amendments to the Federal Rules of Civil Procedure. *See Clark v. Affinion Grp.*, No. 16-cv-02141, 2016 WL 8738239, at *6 (W.D. Tenn. Dec. 30, 2016) ("Prior decisions construing then-Rule 56(f) apply to present-Rule 56(d) because 'subdivision (d) carries forward without substantial change the provisions of former subdivision (f).'") (quoting *Siggers v. Campbell*, 652 F.3d 681, 696 n.8 (6th Cir. 2011)) (quoting Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment).

7

(*Id.* ¶ 9). According to Mr. Weber, through that discovery "[Mr. Drywall] hopes to uncover" certain things that it labels "genuine issues of fact that will rebut the Motion," including:

> [1] the relationship between FCI and MRD did not go beyond the typical contractor-subcontractor relationship; [2] MRD did not have improper authority to hire, fire and discipline FCI's workers; [3] MRD did not improperly control FCI's workers employment; [4] MRD did not improperly fire FCI's workers; [5] MRD did not improperly make unilateral decisions pertaining to FCI's workers; [6] MRD did not improperly have the final say as to FCI's workers; [7] MRD did not improperly supervise and provide instruction on what work to do and how to do it; [8] MRD was not improperly in charge of specific groups of FCI's workers each day; [9] MRD did not improperly control the makeup of FCI's workers group and direct such workers to move from one group to another throughout the day; [10] MRD did not improperly exercise control over FCI's workers' pay and insurance; [11] MRD did not improperly track FCI's workers daily hours; [12] MRD did not improperly adjust FCI's workers' pay as it deemed necessary; [13] MRD did not improperly respond to questions about pay; [14] MRD did not improperly help maintain FCI's insurance; [15] FCI and MRD do not have common ownership or management or leadership; [16] MRD and FCI do not have interrelated operations; [17] what tools, gear, and equipment FCI's workers used; [18] the experience of FCI's workers; [19] training of FCI's workers; [20] and what hours FCI's workers worked."

(Doc. No. 219 ¶ 10).

In its memorandum in support of its Motion, Mr. Drywall focuses on the *Plott* Factors, but before the Court turns to this analysis it must determine whether Mr. Drywall has met its burden under Rule 56(d) by (1) detailing specific reasons why it cannot present relevant facts, (2) what material facts it hopes to uncover, and (3) how that discovery would shed further light on the issues underlying Plaintiffs' Motion for Summary Judgment. *See Cacevic*, 226 F.3d at 489. As discussed above, a party seeking additional discovery pursuant to Rule 56(d) must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . ." Fed. R. Civ. P. 56(d). If it meets this burden, "the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.* The party making such a request must specify "what material facts [it] hope[s] to uncover, and why [it] has not previously discovered the information." *Cacevic*, 226

F.3d at 488. "Bare allegations or vague assertions of the need for discovery are not enough." *Lane v. Wexford Health Sources (Contreator)*, 510 F. App'x 385, 388 (6th Cir. 2013) (quoting *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004)).

Plaintiffs argue that Mr. Drywall's Motion must be denied because (according to Plaintiffs) Mr. Drywall fails to show any specific facts or materials that would be essential to its response to Plaintiff's Motion for Summary Judgment. (Doc. No. 223). Plaintiffs argue that Mr. Drywall's vague, conclusory statements about why it believes the requested discovery is necessary, and what subject matter it hopes to explore, is the classic definition of a fishing expedition. Plaintiffs argue that Mr. Drywall's general claim that all of the discovery it seeks is related to the employer/joint employer analysis, class certification, damages, or affirmative defenses is insufficient because these things, which the requested discovery purportedly will help Mr. Drywall uncover, are *topics* rather than *facts*. (*Id.* at 4). Similarly, Plaintiffs assert that the "issues" outlined in Paragraph 10 of the Weber Declaration, which Mr. Drywall labels "genuine issues of fact," are also not facts but rather conclusory statements. (*Id.* at 5). Regarding Mr. Drywall's claim (via paragraph 11 of the Weber Declaration) to seek various documents, Plaintiffs argue that Mr. Drywall claims that the sought documents "show[ ]" or "support[ ]" various subjects but do not describe any specific document that might fit such a description. According to Plaintiffs, the only specific documents Mr. Drywall describes, including "all Form 1099s, Form W-2s, and/or other tax forms that Plaintiffs and Opt-In Plaintiffs received from FCI, Reyes, MRD, and Skanska[,]" were (already) delivered to Mr. Drywall's counsel pursuant to the Court's April 7, 2020 Contempt Order (Doc. No. 204). (*Id.* at 5 n.11).

Plaintiffs also argue that Mr. Drywall mischaracterizes the basis for Plaintiffs' Motion for Summary Judgment and the written and testamentary discovery conducted thus far. According to

Named Plaintiffs, each of them has fully responded to the interrogatories and requests for production that Mr. Drywall served in September and October 2018. Based on those requests, Named Plaintiffs assert that they have produced 44 documents, including two videos. They also assert that Mr. Drywall itself has produced over 2,000 documents and has received what Named Plaintiffs characterize as "copious" amounts of written discovery from Defendants FCI and Reyes. Named Plaintiffs further argue that Mr. Drywall "participated" in the depositions of Defendant Reyes, Mauricio Munguia, and Serge Lemaire. Finally, as discussed above, Mr. Drywall has now deposed two of the five Named Plaintiffs and was scheduled to depose a third Named Plaintiff on Monday, May 18.

Despite Named Plaintiffs' characterization of the discovery thus far, the Court finds that Mr. Drywall has met its burden of detailing specific reasons why it cannot present relevant facts, including *inter alia* that: (1) five discovery motions remain pending, including two of Plaintiffs' motions for protective orders in response to Mr. Drywall's discovery requests; (2) FCI and Reyes initially refused to be deposed by Mr. Drywall; and (3) Plaintiffs refused to submit joint discovery dispute statements despite this Court's rule requiring parties file a joint discovery dispute statement in connection with any request for a discovery conference or discovery motion.[6]

However, in order to satisfy its burden under Rule 56(d), Mr. Drywall must also set forth the *facts* it hopes to uncover and explain how that discovery would shed further light on the issues underlying Plaintiffs' Motion for Summary Judgment. The Court finds that Mr. Drywall has met its burden as to certain facts it sets forth in Paragraph 10 of the Weber Declaration. In the Weber Declaration, Mr. Drywall's counsel states that through the discovery listed in the preceding

---

[6] Although this assertion is merely stated in Mr. Drywall's memorandum in support of its Motion, Plaintiffs do not contest that they refused to submit joint discovery dispute statements.

10

paragraph "[Mr. Drywall] hopes to uncover" certain things that it labels "genuine issues of fact that will rebut the Motion." (Doc. No. 220 ¶ 10). Although Mr. Drywall labels these "genuine issues of fact," it is clear that the "issues" suffer from a variety of deficiencies. First, Numbers 1, 3, 16, 17, 18, 19, and 20 are not facts but rather are general *subjective characterizations* of underlying facts or general topics that Mr. Drywall would like to explore.[7] For example, Mr. Drywall states that through discovery it hopes to uncover that "the relationship between FCI and MRD did not go beyond the typical contractor-subcontractor relationship." (Doc. No. 220 ¶ 10). Although this is an assertion, it is not one of material fact. Rather, labeling Mr. Drywall's arrangement with FCI a "typical contractor-subcontractor relationship" is a mere semantic characterization of the facts (as asserted by Mr. Drywall) underlying that arrangement—the validity of which turns not just on the underlying facts, but also (and arguably primarily) on one's perception of what all is or is not appropriately encompassed within the term, "typical contractor-subcontractor relationship." Presumably, Mr. Drywall included this "genuine issue of fact" because Plaintiffs—in support of their Motion for Summary Judgment—argue that "MRD's pervasive control cannot be explained away as the typical contractor-subcontractor relationship." (Doc. No. 212 at 19). However, in order to determine whether a defendant is a statutory or joint employer, the court does not look to whether there exists between the defendant and the primary employer a "typical contractor-subcontractor relationship." Rather, the question is whether Mr. Drywall falls within the FLSA's definition of employer[8] under the theory that it and FCI were joint

---

[7] By contrast, Number 15— wherein Defendant notes it desire to uncover that "Mr. Drywall and FCI do not have common ownership or management or leadership" —clearly asserts a purported fact.

[8] The FLSA's definition of "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). "[T]he term 'employee' means any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to

employers of Plaintiffs and Opt-In Plaintiffs. Therefore, even if one were to assume that the proposition that Mr. Drywall and FCI had a "typical contractor-subcontractor relationship" was one of "fact," it is immaterial because Mr. Drywall's ability to establish it is not necessary to defeat Plaintiff's Motion for Summary Judgment.

In addition, in Numbers 2, 4 – 14 of Paragraph 10, Mr. Drywall's counsel asserts that through additional discovery Mr. Drywall hopes to uncover *inter alia* that Mr. Drywall "did not have *improper* authority to hire, fire and discipline FCI's workers" and "did not *improperly* [1] control FCI's workers employment; [2] fire FCI's workers; [3] make unilateral decisions pertaining to FCI's workers, [etc.]" (Doc. No. 220 ¶ 10 (emphasis added)). From the face of the Weber Declaration, it is unclear exactly what facts Mr. Drywall seeks here. For example, Number 2 states that "MRD did not have *improper* authority to hire, fire and discipline FCI's workers." (*Id.* (emphasis added)). Because of the double negative, it is possible that Mr. Drywall hopes to uncover that (1) Mr. Drywall *did* have the authority to hire, fire and discipline FCI's workers, but it was not *improper* authority, or (2) Mr. Drywall did not have any authority to hire, fire and discipline FCI's workers at all. The same conundrum applies to Numbers 4-14. The Court will consider whether Mr. Drywall can meet its burden under Rule 56(d) under both interpretations.

It is clear that under the first interpretation of Numbers 2, 4 – 14 of Paragraph 10, Mr. Drywall does not meet its burden under Rule 56(d) because it fails to set forth specific *facts* it hopes to uncover. As Plaintiffs argue, whether Mr. Drywall's authority and actions were proper or

---

suffer or permit to work." 29 U.S.C. § 203(g). These definitions are patently circular—tautological—thus begging the question of what they really mean. There is much the Court can say and has said before on this topic, but it need not do so at this juncture.

improper are not facts. Rather, they are characterizations of Mr. Drywall's authority and actions. Accordingly, under the first interpretation, Mr. Drywall has not met its burden under Rule 56(d).

On the other hand, under the second interpretation of Numbers 2, 4 – 14 of Paragraph 10, Mr. Drywall does set forth specific *facts* it hopes to uncover. Indeed, Numbers 2, 4 – 14 of Paragraph 10 each directly correspond to specific facts in Plaintiffs' Statement of Undisputed Material Fact in support of their Motion for Summary Judgment (Doc. No. 213, "SUMF"). Specifically, the issues correspond as follows:

1. Number 2, which states that Mr. Drywall did not have the authority to hire, fire and discipline FCI's workers is relevant to challenge SUMF ¶¶ 35, 36, 38;

2. Number 4, which states that Mr. Drywall did not fire FCI's workers is relevant to challenge SUMF ¶ 36;

3. Number 5, which states that Mr. Drywall did not make unilateral decisions pertaining to FCI's workers is relevant to challenge SUMF ¶¶ 30, 38;

4. Number 6, which states that Mr. Drywall did not have the final say as to FCI's workers is relevant to challenge SUMF ¶¶ 30, 39;

5. Number 7, which states that Mr. Drywall did not supervise and provide instruction on what work to do and how to do it is relevant to challenge SUMF ¶¶ 15, 28, 31;

6. Number 8, which states that Mr. Drywall was not in charge of specific groups of FCI's workers each day is relevant to challenge SUMF ¶¶ 15, 26, 27;

7. Number 9, which states that Mr. Drywall did not control the makeup of FCI's workers group and direct such workers to move from one group to another throughout the day is relevant to challenge SUMF ¶¶ 26, 27;

8. Number 10, which states that Mr. Drywall did not exercise control over FCI's workers' pay and insurance is relevant to challenge SUMF ¶ 54;

9. Number 11, which states that Drywall did not track FCI's workers daily hours is relevant to challenge SUMF ¶ 46;

10. Number 12, which states that Mr. Drywall did not adjust FCI's workers' pay as it deemed necessary is relevant to challenge SUMF ¶ 54;

11. Number 13, which states that Mr. Drywall did not respond to questions about pay is relevant to challenge SUMF ¶ 59;

12. Number 14, which states that Mr. Drywall did not help maintain FCI's insurance is relevant to challenge SUMF ¶ 63;

13

Thus, under this interpretation of these items, Mr. Drywall has directly challenged propositions that Plaintiffs, in their SUMF, have characterized as undisputed and material *facts*. Having characterized these propositions as ones of fact, Plaintiffs hardly should be permitted to argue simultaneously that Mr. Drywall's assertions to the contrary are not likewise ones of *fact*. Accepting as it does Plaintiffs' characterization, the Court concludes that Mr. Drywall has adequately identified the *facts* that it hopes to uncover.

The Court also finds that Mr. Drywall has adequately explained how the facts it hopes to uncover are relevant to its opposition to Plaintiff's Motion for Summary Judgment. Specifically, Mr. Drywall states that, "[a]ll the discovery sought by MRD goes to the merits of Plaintiffs' claims in the Motion as to whether MRD is Plaintiffs' or Opt-In Plaintiffs' statutory or joint-employer, whether the conditionally certified class should be decertified, the amount of any alleged damages, and MRD's affirmative defenses." (Doc. No. 221 at 15). Alone, this assertion is far too general to satisfy the applicable burden. However, by considering the Weber Declaration and Mr. Drywall's memorandum in support of the instant Motion in conjunction with Plaintiffs' memorandum in support of their Motion for Summary Judgment and Plaintiffs' SUMF, it is clear that the facts that Mr. Drywall hopes to uncover are relevant to the issues underlying Plaintiffs' Motion for Summary Judgment.

In Plaintiffs' Motion for Summary Judgment, Plaintiffs argue that the undisputed facts show that Defendants Mr. Drywall, Reyes, and FCI were statutory and joint employers of Named Plaintiffs and Opt-In Plaintiffs. (Doc. No. 212 at 13-20). According to Plaintiffs, "[t]he court determines as a matter of law whether a party is an employer using an 'economic reality' test." (*Id.*

at 13 (quoting *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994))).[9] When applying the economic reality test, "[r]elevant factors to consider may include whether the plaintiff is an integral part of the operations of the putative employer; the extent of the plaintiff's economic dependence on the defendant; the defendant's 'substantial control of the terms and conditions of the work' of the plaintiff; the defendant's authority to hire or fire the plaintiff; and whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment." (*Id.* at 13-14 (quoting *Ellington v. City of E. Cleveland*, 689 F.3d 549, 556 (6th Cir. 2012))). It is clear that the facts listed above are relevant to these factors. Accordingly, the Court finds that Mr. Drywall has met its burden under Rule 56(d). *See PSC Metals, Inc. v. S. Recycling, LLC*, No. 3:17-cv-01088, 2017 WL 4403360, at *2 (M.D. Tenn. Oct. 4, 2017) (stating that because summary judgment is premature until parties have a full opportunity to conduct discovery, a Rule 56(d) motion requesting time for discovery should be granted "almost as a matter of course unless the

---

[9] For the limited purpose of deciding this Motion, the Court will assume that the economic reality test is appropriately applied to the facts of this case. Such assumption is appropriate because the parties do not (currently) disagree on this point and because it does not prejudice either party. The Court notes, however, that in *Stansbury v. Faulkner*, No. 2:18-cv-02746, 2020 WL 807540 (W.D. Tenn. Feb. 18, 2020), the court held that the "'economic reality test' is used primarily to determine whether an employment relationship is classified as employer-employee or independent contractor." *Id.* at *4. In *Stansbury*, the question was not how the plaintiff's work for the defendant entity should have been classified (*i.e.*, independent contractor or employee) but rather whether, during the relevant time, the plaintiff worked for the defendant entity at all. *Id.* The court also stated:

> The Department of Labor recently promulgated regulations that disapprove of using the economic reality test in determining joint employer status. *See* 29 C.F.R. § 791.2(c) ("Whether the employee is economically dependent on the potential joint employer is not relevant for determining the potential joint employer's liability under the Act. Accordingly, to determine joint employer status, no factors should be used to assess economic dependence.") (effective March 16, 2020).

*Id.* at *4 n.2. Nevertheless, the Court need not decide now whether the economic reality test is the proper test to determine whether Mr. Drywall was Plaintiffs' and Opt-In Plaintiffs' statutory and joint employer.

15

non-moving party has not diligently pursued discovery of the evidence") (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012)).

Having found that Mr. Drywall has satisfied its burden pursuant to Rule 56(d), the Court will briefly consider whether the *Plott* Factors weigh in favor of granting Mr. Drywall the relief it requests. In its memorandum, Mr. Drywall focuses almost exclusively on the *Plott* Factors (rather than the Rule 56(d) standard), arguing that each factor is either neutral or weighs in favor of Mr. Drywall, supporting the Court postponing the time for any response to Plaintiffs' Motion for Summary Judgment until after Mr. Drywall completes its requested discovery or, alternatively, denying Plaintiffs' Motion for Summary Judgment. Plaintiffs did not explicitly address the *Plott* Factors in their Response.

Mr. Drywall begins its analysis with the fourth *Plott* Factor, arguing that it was not dilatory in its discovery efforts. (Doc. No. 221 at 13). Mr. Drywall served discovery requests on Opt-In Plaintiffs on October 18, 2019, eight days after the Amended CMO was issued, which was also the deadline set by the Amended CMO and five months before the end of discovery. (*Id.*). Mr. Drywall also served discovery requests on the Named Plaintiffs in October 2019. Plaintiffs' Second Motion for a Protective Order regarding this discovery is still pending. (Doc. No. 188). Mr. Drywall also contends that it was not dilatory with respect to deposing Opt-In Plaintiffs, Named Plaintiffs, or FCI. Mr. Drywall states that its request to depose Opt-In Plaintiffs is pending and that it does not wish to take Opt-In Plaintiffs' depositions until after it receives the written discovery it has requested. (*Id.*). Mr. Drywall further asserts that, even though it did not want to depose Named Plaintiffs until after it received the outstanding written discovery, it has felt pressured to do so due to procedural factors. Although the Named Plaintiffs did not appear for their initial depositions, it appears that Mr. Drywall has now deposed at least two and possibly

16

three out of the five named Plaintiffs. (Doc. No. 223).[10] Finally, Mr. Drywall contends that it has not been dilatory in deposing FCI or its supervisor, Mauricio Munguia. According to Mr. Drywall, FCI initially opposed Mr. Drywall's request for a deposition but just recently agreed to be deposed by Mr. Drywall. Further, Mr. Drywall contends that it does not want to depose FCI or Mr. Munguia until after it has received written discovery from Named Plaintiffs and Opt-In Plaintiffs because "Plaintiffs were FCI's workers and FCI and Mr. Munguia will likely be in the position to interpret documents that Plaintiffs and Class Members may have sent to or received from FCI." (Doc. No. 221 at 14).

Next, Mr. Drywall argues that the first factor—*i.e.,* when it learned of the issue for which it seeks discovery—weighs in its favor because Mr. Drywall did not know the identity of Opt-In Plaintiffs and therefore could not seek discovery from them until after the opt-in period. (Doc. No. 221 at 15). Plaintiffs filed their last set of opt-in consent forms on September 20, 2019 (Doc. Nos. 99; 101), and Mr. Drywall served its written discovery on Opt-In Plaintiffs on October 18, 2019 (Doc. No. 110 at E). This was within the deadline set forth in the Amended CMO. Mr. Drywall also asserts that it timely sought leave to take Opt-In Plaintiffs' depositions, a request that is still pending before the Court.

Next, Mr. Drywall argues that the second factor—*i.e.*, whether the desired discovery would affect the resolution of summary judgment—favors its request for an extension because all of the discovery sought by Mr. Drywall goes to the merits of Plaintiffs' claims, including whether Mr.

---

[10] Because Mr. Drywall decided not to file a reply to Plaintiffs' Response and did not otherwise contest Plaintiffs' statement that "MRD has now deposed two of the five named Plaintiffs and is scheduled to depose a third on Monday, May 18." (Doc. No. 223 at 3), the Court has no reason not to credit Plaintiffs' assertion that Mr. Drywall has deposed at least two, and possibly three, of the Named Plaintiffs.

Drywall is Plaintiffs' and Opt-In Plaintiffs' statutory and joint employer, whether the conditionally certified class should be decertified, the amount of any alleged damages, and Mr. Drywall's affirmative defenses. In addition, Mr. Drywall argues that it has not had an opportunity to depose the Named Plaintiffs, Opt-In Plaintiffs, and FCI or FCI's employee, Mr. Munguia. Plaintiffs rely heavily on the affidavits of Named Plaintiffs and testimony of Mr. Munguia in their Motion for Summary Judgment and Mr. Drywall argues that it should be able to test the statements in the affidavits and deposition transcripts.

Next, Mr. Drywall argues that the third factor—*i.e.,* the length of the discovery period—is either neutral or weighs in its favor. (Doc. No. 221 at 16). Discovery in this case has been ongoing for approximately one year and nine months. Mr. Drywall argues that given the complexity of the case and the various issues that arose regarding the parties—including Defendant Reyes's bankruptcy filing and the Court finding FCI to be in contempt and subject to sanctions under Rule 37 for violating this Court's discovery order—this amount of time is not unreasonable. Rather, Mr. Drywall argues, the length of the discovery period is justified because the pending issues are fact-intensive, the Court extended the discovery period based on the conditional certification of the action, and the parties have been and continue to be engaged in several discovery disputes.

Finally, Mr. Drywall argues that the fifth factor—*i.e.* whether the non-moving party was responsive to discovery requests—weighs in its favor because Plaintiffs have not been responsive to discovery requests, but rather have thwarted Mr. Drywall's efforts to bring discovery disputes to the Court by refusing to submit joint discovery dispute statements. Mr. Drywall argues that while avoiding discovery conferences, Plaintiffs filed unauthorized motions for protective orders. According to Mr. Drywall, Plaintiffs' efforts have prevented Mr. Drywall from obtaining responses to the Named Plaintiffs' Discovery and Opt-In Plaintiffs' Discovery, and from serving

18

any alternative written discovery. Mr. Drywall argues that Plaintiffs strategically filed their Motion for Summary Judgment before the resolution of the pending discovery disputes and before Mr. Drywall had a full and fair opportunity to conduct adequate discovery.

Like Mr. Drywall, the Court will begin its analysis with the fourth *Plott* Factor— *i.e.* whether the party seeking discovery was dilatory in its discovery efforts. The Sixth Circuit has made clear that "[t]he main inquiry in assessing a request under Rule 56(d) is 'whether the moving party was diligent in pursuing discovery.'" *Bailey v. Sperry Van Ness/R.M. Moore, LLC*, No. 3:16-cv-128, 2016 WL 4250328, at *1 (E.D. Tenn. Aug. 10, 2016) (quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014)). Although Plaintiffs' point that Mr. Drywall fails to explain why it conducted no discovery between October 2018 and October 2019 is well taken, Mr. Drywall served its first set of discovery requests on Named Plaintiffs in September 2018, approximately three months after Named Plaintiffs filed their Complaint in this matter. Since then, the parties have exchanged some discovery but have largely been engaged in extensive discovery disputes. Mr. Drywall has filed numerous motions seeking to compel discovery and has not sat on its hands throughout the process. Moreover, all of Mr. Drywall's discovery requests were served and depositions noticed prior to the expiration of the discovery deadlines. Accordingly, the fourth *Plott* Factor weighs in favor of Mr. Drywall.

Next, the Court finds that the first *Plott* Factor— *i.e.* when the defendant learned of the issue that is the subject of the desired discovery—also weighs in favor of Mr. Drywall. "This factor primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *Doe v. City of Memphis*, 928 F.3d 481, 492-93 (6th Cir. 2019). In this case, the first *Plott* Factor is relevant only to Mr. Drywall's discovery requests directed at Opt-In Plaintiffs. Mr. Drywall could not know

19

the identity of all Opt-In Plaintiffs until after the opt-in period concluded and Plaintiffs filed their last set of opt-in consent forms on September 20, 2019. (Doc. Nos. 98, 99, 101). Mr. Drywall served its written discovery on the approximately 112 Opt-In Plaintiffs on October 18, 2019—which, as noted above, was eight days after the Court issued the Amended CMO and within the deadline set forth therein. (Doc. No. 221 at 15).

As for the second *Plott* Factor— *i.e.* how long the discovery period had lasted—the Court finds this factor to weigh slightly in Mr. Drywall's favor. As Mr. Drywall acknowledges, the discovery period in this case lasted approximately a year and nine months. The Sixth Circuit has recognized that "[a] discovery period of nearly two years is certainly somewhat lengthy." *Doe*, 928 F.3d at 494. However, what constitutes a reasonable amount of time is determined by the facts and circumstances of each case. *Id.* Here, although the facts of the case are not particularly complex, the discovery period was plagued by unrelenting disputes. Therefore, although one year and nine months is typically a sufficient amount of time for parties to conduct some if not all discovery, the facts and circumstances of this case justify a longer discovery period.

Next, the third *Plott* factor—whether the desired discovery would change the Court's summary judgment ruling—weighs slightly in Mr. Drywall's favor. The Court cannot, at this time, fully evaluate what effect the additional discovery will ultimately have on the outcome of Plaintiffs' Motion for Summary Judgment. Nevertheless, the Court finds that the evidence Mr. Drywall seeks "at least . . . ha[s] the potential to materially influence the Court's summary judgment determination." *Ashley Furniture Indus. Inc. v. Am. Signature, Inc.*, No. 2:11-cv-00427, 2011 WL 4383594, at *4 (S.D. Ohio Sept. 19, 2011). Accordingly, the third *Plott* factor weights slightly in Mr. Drywall's favor.

20

Finally, the Court finds that the fifth *Plott* Factor—whether the party moving for summary judgment was responsive to discovery requests—also weighs in favor of Mr. Drywall. Indeed, Plaintiffs have filed a number of motions for protective orders against Mr. Drywall's discovery requests in this action (Doc. Nos. 116, 156, 188), two of which are still pending. Mr. Drywall has also argued, and Plaintiffs did not contest, that Named Plaintiffs have refused to make themselves available to resolve discovery disputes, which prolonged those disputes because Mr. Drywall was forced to file motions to schedule discovery conferences. (Doc. No. 221 at 17). Instead of addressing the outstanding discovery, Plaintiffs argue that the five Named Plaintiffs have fully responded to the interrogatories and requests for production that Mr. Drywall sent in September and October 2018, producing 44 documents and two videos. (Doc. No. 223 at 3). Plaintiffs further argue that "[a]s is common FLSA actions, the employer defendants possess almost all relevant discovery." (*Id.*). However, this ignores that Named Plaintiffs and Opt-In Plaintiffs have not been responsive to the discovery requests Mr. Drywall served in October 2019; Mr. Drywall is entitled to determine what discovery Plaintiffs can provide in this case rather than merely assume that Plaintiffs can provide no further discovery because (as is allegedly "common"), Defendants rather than Plaintiffs possess almost all relevant discovery. Nor do Plaintiffs address Named Plaintiffs' and Opt-In Plaintiffs' efforts to avoid being deposed by Mr. Drywall, including Named Plaintiffs nonappearance for their noticed deposition in March 2019. (Doc. No. 200).

On balance, it is clear that the *Plott* Factors weigh in Mr. Drywall's favor. Thus, Mr. Drywall did not have "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Id.* (citation omitted). Accordingly, discovery shall proceed. However, Mr. Drywall is not entitled to the full extent of discovery it requests in its Motion.

Rather, the Court will refer the issue to the magistrate judge to determine the nature and timing of the discovery to which Mr. Drywall is entitled.

Further, Mr. Drywall raises the point that it has not yet had an opportunity to move for decertification of the conditionally certified FLSA classes and the deadline to do so has not passed. This point is well taken. "District courts have broad discretion under the rules of civil procedure to manage the discovery process and control their dockets." *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014); *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("District courts [have] broad discretion over the management of pre-trial activities, including discovery and scheduling."). Here, the Court finds, in its discretion, that Mr. Drywall should be granted an opportunity to move for decertification. When the Court conditionally certified the classes in this action, it explicitly contemplated a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. (Doc. No. 97 at 4). Indeed, the Court noted:

> "[T]he certification is conditional and by no means final." *Comer* [*v. Wal-Mart Stores, Inc.*], 454 F.3d [544,] 546 [(6th Cir. 2006)]. After discovery, the defendant may move for decertification of the conditional class, which triggers the second phase of the court's review. *See O'Brien* [*v. Ed Donnelly Enters.*], 575 F.3d [567,] 583 [(6th Cir. 2009)]. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

(*Id.*). Accordingly, the Court finds that Plaintiffs' Motion for Summary Judgment is premature. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018) ("In the absence of any statutory directive, the proper means of managing a collective action—the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed—is largely a question of 'case management,' and thus a subject of substantial judicial discretion." (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-cv-2708, 2011 WL 1595458, at *2 (W.D. Tenn. Apr. 27, 2011) (noting that

the court previously stayed the defendant's motion for summary judgment pending resolution of the defendant's motion to decertify); *Green v. Harbor Freight Tools USA, Inc.*, No. 09-cv-2380, 2011 WL 147539, at *2 (D. Kan. Jan. 18, 2011) (finding that motions for summary judgment, which became ripe after conditional certification but prior to the decertification stage, were premature because certain defenses would overlap with issues that should first be decided in the context of whether this case proceeds as a collective action).

## <u>CONCLUSION</u>

For the above-stated reasons, Defendant Mr. Drywall's Motion to Defer Consideration of Or Deny Plaintiffs' Motion for Summary Judgment (Doc. No. 219) will be **GRANTED IN PART**, in that the Court will not rule on Plaintiffs' Motion for Summary Judgment prior to the completion of additional limited discovery, the extent and timing of which will be determined by the magistrate judge. In addition, the deadline for Mr. Drywall's Response to Plaintiffs' Motion for Summary Judgment will be continued until the magistrate judge determines that Mr. Drywall has the opportunity to conduct limited discovery. Once the magistrate judge is satisfied that Mr. Drywall has had a full and fair opportunity to conduct discovery, the magistrate judge will reset the deadlines for Mr. Drywall's response to Plaintiffs' Motion for Summary Judgment.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE