UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL ALVARADO MARTINEZ, et al., | |
| Plaintiffs, | Case No. 3:18-cv-00583 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| FIRST CLASS INTERIORS OF NAPLES, LLC, et al., | |
| Defendants. | |

## <u>MEMORANDUM ORDER</u>

As Judge Richardson has found, the discovery period in this action has been "plagued by unrelenting disputes" among the parties. (Doc. No. 232, PageID# 2659.) This Memorandum Order addresses several discovery motions that provide strong support of that characterization. The pending motions are Plaintiffs' motion to compel discovery responses (Doc. No. 133); Plaintiffs' motion for a protective order (Doc. No. 156); Defendant MR Drywall's (MRD) motion to compel and for leave to take Plaintiffs' depositions (Doc. No. 158); MRD's motion to compel and for leave to take the depositions of Defendant First Class Interiors of Naples (FCI) and Defendant Jose Roberto Reyes (Doc. No. 171); and Plaintiffs' motion for a protective order (Doc. No. 188).

These motions are considered in light of Judge Richardson's direction, in his June 18, 2020 ruling on MRD's Rule 56(d) motion (the June 18, 2020 Order) to defer consideration of Plaintiffs' summary judgment motion, that the Magistrate Judge determine the extent and timing of "additional limited discovery" to be taken at this stage of the case. (Doc. No. 232, PageID# 2662.) For the reasons that follow, the Court will order that MRD may serve limited written discovery on and depose a representative group of opt-in class members and may serve additional limited

written discovery on and depose the five named plaintiffs before responding to Plaintiffs' motion for summary judgment (Doc. No. 210) and filing any anticipated motion to decertify the conditionally certified opt-in classes.

## I.      Procedural History

Plaintiffs bring this lawsuit as a proposed collective action on behalf of workers who allege that Defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 et seq., in compensating them for work performed during the construction of a J.W. Marriott hotel in Nashville, Tennessee.[1] The Court has conditionally certified two opt-in plaintiff classes: an "Overtime Class" of "all workers who were employed by Defendants performing drywall installation, framing and/or finishing work on the Marriott Project at any time between July 2017 and May 2018[,]" and a "Last Paycheck Class" of "all workers who were employed by Defendants performing drywall installation, framing, and/or finishing work on the Marriott Project whose employment was terminated at any time between May 21 and May 29, 2018." (Doc. No. 98, PageID# 533.) A two-week post-certification opt-in period yielded a class of 117 plaintiffs, including the five named and 112 opt-in plaintiffs. (Doc. Nos. 99, 101.)

After a period of discovery, Plaintiffs moved for summary judgment. (Doc. No. 210.) MRD then moved to defer consideration of Plaintiffs' motion while it pursued additional discovery. (Doc. No. 219.) In his June 18, 2020 Order, Judge Richardson granted MRD's motion in part and continued the deadline for MRD to respond to Plaintiffs' motion for summary judgment subject to the Magistrate Judge setting a plan for limited discovery. (Doc. No. 232, PageID# 2660–61.) The

---

[1]      Plaintiffs' complaint also asserted a claim of fraud in hiring under Tennessee law, Tenn. Code Ann. § 50-1-102, and fraudulent filing of Internal Revenue Service information under 26 U.S.C. § 7434. (Doc. No. 1.) The parties moved to dismiss those claims (Doc. No. 216) and the Court dismissed them without prejudice (Doc. No. 218). FCI and Reyes also voluntarily dismissed their crossclaim brought against MRD. (Doc. No. 25.)

2

Court further found that MRD was entitled to the opportunity to move for decertification of the conditionally certified classes.

Judge Richardson also found that several of the outstanding discovery issues raised by MRD had been resolved: (1) MRD had deposed two and possibly three of the five named plaintiffs; (2) MRD had participated in the depositions of Reyes and two related witnesses, Mauricio Munguia and Serge Lemaire; (3) FCI had confirmed that it would appear to be deposed by MRD; and (4) FCI had produced outstanding written discovery. MRD has not contested Judge Richardson's findings. Plaintiffs have also confirmed to the Court that, at least with regard to all outstanding discovery disputes, they require no further discovery. (Doc. No. 231.)

## II.     Legal Standard

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401). Rule 26 permits the court to limit discovery if it determines that: (1) the additional "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or" (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount

in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response" is considered "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding the discovery of certain information. Fed. R. Civ. P. 26(c)(1). The party seeking the protective order bears the burden to show good cause "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)). Trial courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

4

## III.      Analysis

### A.      Plaintiffs' Renewed Motion to Compel Discovery Responses (Doc. No. 133)

Plaintiffs moved to compel production of MRD's tax return information (Doc. No. 133), which MRD opposed on grounds that the information is both irrelevant to Plaintiffs' claims and confidential (Doc. No. 137). Plaintiffs have represented to the Court that they are no longer seeking this discovery. Accordingly, Plaintiffs' Renewed Motion to Compel Discovery Responses (Doc. No. 133) will be found moot.

### B.      MRD's Motion to Compel and For Leave to Take the Depositions of FCI and Reyes (Doc. No. 171)

As Judge Richardson found in his June 18, 2020 Order, MRD "has 'participated' in the depositions of" Defendant Reyes, FCI supervisor Mauricio Munguia, and former MRD supervisor Serge Lemaire. (Doc. No. 232.) Judge Richardson also found that FCI had agreed to be deposed by MRD. (*Id.*) Accordingly, this motion will also be found moot.

### C.      Plaintiffs' Motions for Protective Orders (Doc. Nos. 156, 188) and MRD's Motion to Compel Plaintiffs' Depositions (Doc. No. 158)

These motions address a common topic of dispute in FLSA actions: the appropriate scope of discovery regarding named plaintiffs and opt-in class members. MRD has served written discovery requests on and seeks leave to depose the five named plaintiffs and all of the 112 opt-in plaintiffs, arguing that it requires this comprehensive discovery to advocate effectively against class certification and to assert individualized defenses to Plaintiffs' claims. (Doc. No. 158.) Plaintiffs have moved for protective orders to limit the scope of written discovery (Doc. No. 156) and depositions (Doc. No. 188) on grounds that taking discovery from a representative subset of opt-in class members is an appropriate alternative in this collective action. Plaintiffs also object to MRD's written discovery requests as vague, overly burdensome, and not proportional to the needs of the case. (Doc. No. 156.)

Federal courts have developed two lines of cases addressing the appropriate scope of discovery in FLSA actions. The first approach, advocated by MRD, treats opt-in plaintiffs no differently from plaintiffs in any civil action and allows defendants to seek full discovery from all class members. *See, e.g.*, *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (allowing discovery from entire class of 306 opt-in plaintiffs); *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 446, 449–52 (S.D.N.Y. 1995) (allowing discovery from entire class of 152 opt-in plaintiffs); *Rosen v. Reckitt & Colman, Inc.*, No. 91 CIV. 1675, 1994 WL 652534, at *4 (S.D.N.Y. 1994) (allowing depositions to be taken of all 49 opt-in plaintiffs); *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1188 (E.D. Va. 1991) (allowing depositions to be taken of all 127 opt-in plaintiffs), *vacated on other grounds sub nom. Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142 (4th Cir. 1992); *Kaas v. Pratt & Whitney*, No. 89-8343-CIV, 1991 WL 158943, at *5 (S.D. Fla. 1991) (allowing discovery to be taken from all 100 opt-in plaintiffs). The second approach, which Plaintiffs advocate, applies the principles of representative discovery developed in Rule 23 class actions and "limit[s] individualized discovery, reasoning that such discovery would undermine the purpose and usefulness of collective actions." *Ross v. Jack Rabbit Servs., LLC*, Civ. Action No. 3:14-cv-00044, 2015 WL 1565430, at *2 (W.D. Ky. Apr. 8, 2015); *see also, e.g.*, *Gentrup v. Renovo Servs., LLC,* No. 1:07–cv–430, 2010 WL 6766418, at *7 (S.D. Ohio Aug. 17, 2010) (allowing discovery from representative sample of 106-member opt-in class); *Cranney v. Carriage Servs., Inc.,* No. 2:07–cv–01587, 2008 WL 2457912, at *3 (D. Nev. June 16, 2008) (limiting discovery to ten percent of 300-member class); *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (limiting discovery of 1500–member class to statistically relevant sampling); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1344 (N.D. Ga. 2002) (describing prior order allowing pre-decertification discovery from 25 opt-in plaintiffs in more-than-300–

member class). To determine the scope of discovery appropriate in a particular FLSA action, the Court considers the size of the class, the costs and burdens associated with discovery, and the type of discovery sought. *See Ross*, 2015 WL 1565430, at *2–4.

The Court conducts its analysis mindful of Judge Richardson's determination that MRD "is not entitled to the full extent of discovery" it requested in its Rule 56(d) motion. (Doc. No. 232, PageID# 2660.) Rather, Judge Richardson has delineated specific facts MRD has claimed it needs to establish through discovery in order to respond to Plaintiffs' motion for summary judgment and to move for decertification of the conditionally certified classes. (Doc. No. 232.) Those facts include: MRD's authority to hire, fire, and discipline FCI's workers; whether MRD did fire FCI workers; whether MRD made unilateral decisions pertaining to FCI workers; whether MRD had "the final say" as to FCI workers; whether MRD supervised and provided instruction on what work to do and how to do it; whether MRD was in charge of specific groups of FCI workers each day; whether MRD controlled the makeup of the FCI workers group and directed those workers to move from one group to another during the workday; whether MRD exercised control over FCI workers' pay and insurance; whether MRD tracked FCI workers' daily hours; whether MRD adjusted FCI workers' pay; whether MRD responded to questions about pay; and whether MRD helped to maintain FCI's insurance. (*Id.* at PageID# 2652.)

Judge Richardson has also found that MRD shall have the opportunity to move for decertification of the conditionally certified plaintiff classes. (Doc. No. 232.) The FLSA establishes a private cause of action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Accordingly, the certification (and decertification) of a plaintiff class turns on whether the plaintiffs can establish that they are similarly situated as that term has been construed in the context of FLSA actions. *See*

7

*O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009) (holding that, because of the Act's remedial purposes, FLSA's "similarly situated" standard is less stringent than that applied in a Rule 23 analysis), *abrogated on other grounds*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). The Sixth Circuit applies three non-exhaustive factors to make this determination: "(1) the 'factual and employment settings of the individual[ ] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (alteration in original) (quoting *O'Brien*, 575 F.3d at 584). Further, and again in recognition of the remedial purpose of the Act, a class of similarly situated plaintiffs may be comprised of "employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated." *Id.* at 398 (alteration in original) (quoting *O'Brien*, 575 F.3d at 584–85). Because MRD intends to move to decertify the plaintiff classes, discovery as to these factors may also be appropriate.

### 1. Written Discovery

The Court first addresses Plaintiffs' motion for a protective order against MRD's interrogatories and requests for production. (Doc. No. 156.) Plaintiffs assert that MRD has served 6,403 individual requests for written discovery on the named and opt-in plaintiffs. These include 22 interrogatories and 31 requests for production served on each of the 112 opt-in plaintiffs (Doc. Nos. 163-9, 163-10); 74 requests for production from each of the 5 named plaintiffs (Doc. Nos. 163-1–163-5); an additional 33 requests for production from Plaintiff Daniel Alvarado Martinez (Doc. No. 163-6); an additional 34 requests for production from Plaintiff Carlos Castro (Doc. No. 163-7); and an additional 30 requests for production from Plaintiff Nelson Equizabal Brito (Doc. No. 163-8).

Plaintiffs oppose these requests on multiple grounds. (Doc. No. 157.) Plaintiffs generally assert that the discovery requested is not proportional to the needs of the case and that the burden of obtaining responses from all opt-in plaintiffs outweighs its benefit. That burden, they state, is exacerbated by the need to translate the requests from English to Spanish (and, the Court assumes, the opt-in class members' responses from Spanish to English), many opt-in class members' low literacy levels, and the fact that many opt-in class members have moved away from Nashville, where Plaintiffs' counsel are located. Plaintiffs state that the question of MRD's liability turns primarily on factors related to MRD's policies and conduct, not individual plaintiffs' actions, and, thus, the relevance of discovery from every opt-in plaintiff is low. Plaintiffs further assert that MRD's requests are not stated with particularity and, instead, quote directly from Plaintiffs' complaint and the named plaintiffs' declarations, include vague language, are overly broad, and seek documents "showing" things that Plaintiffs argue are not typically shown by written materials, like individual's perceptions of events and daily activities. Finally, Plaintiffs claim that MRD requests documents and information that are not in Plaintiffs' possession or have already been produced to MRD.

MRD protests that Plaintiffs have not supported any of their objections with the kind of particular and specific demonstration of fact that is necessary to obtain a protective order under Rule 26(c). *See Serrano*, 699 F.3d at 901; *see also Potts v. Nashville Limo & Transp., LLC*, No. 3:14-CV-01412, 2018 WL 2431641, at *2 (M.D. Tenn. May 30, 2018). For example, MRD argues that Plaintiffs have not provided the details of where the opt-in plaintiffs who have moved away from Nashville now live, how many will need translation services, or the costs Plaintiffs' will incur by answering MRD's requests. (Doc. No. 163.) Nor, MRD asserts, have Plaintiffs

demonstrated that they do not possess the requested information or that MRD does. MRD further argues that its requests are appropriate in scope and particularity.

The Court addresses two related questions: whether MRD may serve written discovery on all 112 opt-in plaintiffs and whether the scope of the discovery served by MRD is appropriate under Rule 26(b).

### a. Opt-In Plaintiff Written Discovery Requests

The size of the class—a total of 117 named and opt-in plaintiffs—is not a particularly significant factor in determining what scope of written discovery is appropriate in this action. The class size is neither notably small nor notably large. And, as the authority cited above and that marshaled by the parties shows, courts have allowed representative discovery and required comprehensive discovery in actions involving opt-in classes that are larger, smaller, and similarly sized. Addressing the type of discovery sought and its potential costs and burdens is therefore more useful in this case. *See Ross*, 2015 WL 1565430, at *2–4.

Even a cursory review of the written discovery served by MRD shows that the burden of responding to it is not proportional to its likely benefit. Many of the discovery requests are extraordinarily broad and seek information the relevance of which is not readily apparent. For example, MRD's interrogatories to the opt-in plaintiffs require disclosure of every employer, dates of employment, and person who hired the plaintiff "[f]or the time period of the year 1900 to the present[.]" (Doc. No. 163-10, PageID# 1566, Interrog. No. 2.) Surely MRD does not hold a good-faith belief that the opt-in class of construction workers includes a significant number of supercentenarians. MRD also requires each opt-in plaintiff to "[i]dentify, by name and available contact information, each member of the Overtime Class and/or Last Paycheck Class that did not sign an Opt-In Consent Form[,]" information that the individual workers who did opt in to the action are unlikely to possess. (*Id.* at PageID# 1566, Interrog. No. 1.) Nor are the opt-in plaintiffs

likely to be able to "[i]dentify all managers, owners, and/or personnel that MRDS and FCI had and/or have in common." (*Id.* at PageID# 1570, Interrog. No. 21.) Other interrogatories use legal terms of art that increase the likelihood that answering the interrogatories will require the assistance of counsel. *See Ross*, 2015 WL 1565430, at *3 (finding use of terms "familiar to those in the legal profession" but "rarely used in everyday speech" in propounded interrogatories to weigh against comprehensive opt-in class discovery). For example, several interrogatories ask the opt-in plaintiffs to identify all the ways that corporate actors "supervised, controlled, and/or directed" them. (Doc. No. 163-10, PageID# 1568–69, Interrogs. 12–14.)

In MRD's requests for production of documents from the opt-in plaintiffs, the imbalance lies in the parties' access to the requested information. For example, MRD asks the opt-in plaintiffs to produce "[d]ocuments sufficient to show all past and present owners of FCI" and "the management structure of FCI[,]" as well as "leadership positions" the defendants held in each other's corporations and documents to show "common management[,]" "common ownership[,]" and "interrelated operations." (Doc. No. 163-9, PageID# 1559–60, Req. Nos. 1–7.) Again, the requests use legal terms of art, asking, for example, for documents to show that all opt-in class members "were working under a centralized control of labor relations" or that particular defendants "supervised, controlled, and/or directed" class members' work on the project. (*Id.* at PageID# 1560–61, Req. Nos. 8, 17–19.)

Considering the type of discovery sought and the cost and burden of responding to that discovery, the Court finds that requiring all opt-in plaintiffs to answer the interrogatories and requests for production MRD has served is not appropriate in this case.[2] The Court further finds

---

[2]     Because Plaintiffs have offered no support for their assertions that the opt-in class members' primary language is Spanish or that they have low literacy levels, the Court makes no

that answering the interrogatories and requests for production MRD has served would impose an undue burden on the opt-in plaintiffs. The Court will therefore grant Plaintiffs' requested protective orders in part and set a plan for limited representative discovery from the opt-in class members.

### b.      Named Plaintiff Written Discovery Requests

The five named plaintiffs have already responded to an initial set of interrogatories and requests for production of documents served by MRD in September and October 2018. (Doc. No. 157.) The discovery at issue here includes second requests for production of documents served on all five named plaintiffs and third requests for production of documents served on Plaintiffs Martinez, Brito, and Castro. Plaintiffs' objections to MRD's additional requests for production from the named plaintiffs address the nature and burden of the requests.

Plaintiffs first object that sixty-nine of MRD's requests for production from the named plaintiffs are boilerplate requests for "all documents, electronically stored information, and things showing" the particular allegations of Plaintiffs' complaint. (Doc. No. 163-1.) Plaintiffs find the wording of what these requests seek—"all documents, electronically stored information, and things" that "show" Plaintiffs' allegations—to be vague and ambiguous and, thus, responding to it to be unduly burdensome. (Doc. No. 157.) Plaintiffs further assert that MRD's "rote recitation" of their pleadings is not a sufficiently particularized request for relevant documents. (*Id.*) MRD responds that Plaintiffs have not identified with specificity the harm or burden of responding to these requests and asserts that any ambiguous language is the fault of Plaintiffs' own drafting. (Doc. No. 163.)

_____

determination as to the English-language proficiency or reading ability of the opt-in class members.

MRD is, of course, entitled to seek discovery of documents that support the allegations of Plaintiffs' complaint, but the Federal Rules envision a limited use of such contention discovery that is timed by the court to heighten its utility. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").[3] Requests for production that simply plug a pleading's allegations into boilerplate requests "can be almost mindlessly generated, [and] can be used to impose great burdens on opponents," *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985), and do not meet Rule 34's requirement that requests "describe with reasonable particularity each item or category of items to be inspected[.]" Fed. R. Civ. P. 34(b)(1)(A). This is especially true when the requests seek "all" information supporting an allegation. *See, e.g.*, *Kinetic Co. v. Medtronic, Inc.*, Civ. No. 08-6062, 2010 WL 11561275, at *4 (D. Minn. Nov. 23, 2010) (allowing contention discovery "because the present discovery requests are narrowly tailored and do not seek 'all facts' supporting Plaintiff's claims"); *Brassell v. Turner*, No. 3:05CV476, 2006 WL 1806465, at *3 (S.D. Miss. June 29, 2006) (requiring parties to show that contention interrogatories "were limited, specifically crafted questions").

MRD's requests for production to the named plaintiffs appear to fall on the "mindlessly generated" end of the spectrum. *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 337. Of the seventy-four requests for production served on the five named plaintiffs, all but eight request "[a]ll

---

[3]     The Court notes that, although Rule 33 directly addresses contention interrogatories, contention requests for production of documents are a "form [of discovery that] does not exist under the Federal Rules." *Bonilla v. Trebol Motors Corp.*, Civ. No. 92-1795, 1997 WL 178844, at *65 (D.P.R. Mar. 27, 1997), *rev'd in part, vacated in part sub nom. Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998).

documents, electronically stored information, and things showing" a quoted clause of Plaintiffs'

complaint. (Doc. No. 163-3.) The Court is thus skeptical that MRD "specifically crafted" these

requests to generate relevant discovery. *Brassell*, 2006 WL 1806465, at *3.

Similarly, MRD served Plaintiffs Martinez, Brito, and Castro with requests for production

that seek "[a]ll documents, electronically stored information, and things" showing statements these

plaintiffs made in affidavits filed in support of Plaintiffs' motion for conditional class certification.

(Doc. Nos. 39–41.) These additional discovery requests also seek documents these three individual

named plaintiffs are unlikely to possess, including "all documents, electronically stored

information, and things" showing payments to "a worker who was employed by Defendants

performing drywall installation, framing, and/or finishing work on the Marriott Project at any time

between July 2017 and May 2018," and payments to "a worker who was employed by Defendants

performing drywall installation, framing, and/or finishing work on the Marriott Project whose

employment was terminated at any time between July 2017 and May 2018." (*Id.*) The relevance

of this requested information is difficult to identify, as is the basis for MRD's belief that the named

plaintiffs would possess it.

Again, the Court finds that the burden of responding to these requests for production far

outweighs their likely benefit and Plaintiffs' motion for a protective order will be granted in part.

MRD may serve amended requests for production on the named plaintiffs as set out in the limited

representative discovery plan.

### 2. Depositions

MRD has moved to compel the depositions of the five named plaintiffs and all 112 opt-in

plaintiffs. (Doc. No. 158.) MRD noticed the depositions of the five named plaintiffs, and plaintiffs

sought a protective order to prevent those depositions from taking place until the scope of opt-in

discovery was determined. (Doc. No. 188.) MRD also moved to compel the depositions of Defendants FCI and Reyes. (Doc. No. 171.)

As Judge Richardson noted in the June 18, 2020 Opinion, Plaintiffs now represent that MRD has "'participated' in the depositions of Defendant Reyes, Mauricio Munguia, and Serge Lemaire" and FCI has agreed to be deposed by MRD. (Doc. No. 232, PageID# 2649.) Plaintiffs further state that MRD has deposed two named plaintiffs and was scheduled to depose a third at the time of Plaintiffs' filing. (Doc. No. 232.) MRD has not disputed these findings. Accordingly, it appears that MRD's motion to compel is now partially moot because MRD has deposed Reyes, an FCI representative, and at least two of the named plaintiffs.

Federal Rule of Civil Procedure 30 requires that a party seek leave of court to take more than ten depositions in a single action unless the parties are able to reach an agreement for the additional discovery. Fed. R. Civ. P. 30(a)(2)(A)(i). "Because this limit is intended to curb abusive discovery practices, . . . a party wishing to conduct more than 10 depositions has the burden of persuading the court that these additional depositions are necessary." *Moore v. Abbott Labs*, No. 2:05-cv-1065, 2009 WL 73876, at *1 (S.D. Ohio Jan. 8, 2009). As under Rule 26, this showing "cannot be based upon general assertions. Rather, 'the moving party must make a particularized showing why extra depositions are necessary.'" *Id.* (quoting *Schiller Am., Inc. v. Welch Allyn, Inc.*, No. 06-21439, 2007 WL 2702247, at *1 (S.D. Fla. Sept. 14, 2007)).

MRD makes several arguments in support of its motion to depose all 112 opt-in class members and the five named plaintiffs. (Doc. No. 159.) First, MRD states that every plaintiff "has information regarding their and others' interactions with MRD that support or refute Plaintiffs' claims that MRD is their employer." (*Id.* at PageID# 1402.) Second, MRD states that these depositions are necessary to its anticipated motion for decertification of the opt-in plaintiff classes

in which it must establish that the plaintiffs are not similarly situated, a determination MRD asserts is focused on proof regarding individual plaintiffs.[4] (Doc. No. 159.) Third, MRD states that it must test "sweeping statements" made regarding MRD's interactions with workers through individualized questioning and cross-examination of all opt-in plaintiffs. (*Id.* at PageID# 1404.) Finally, MRD asserts that "there has been no showing that it would be impossible to depose each of the Plaintiffs" and that it would be unfair to allow the opt-in plaintiffs to participate in this lawsuit without allowing MRD "the ability to cross-examine its accusers . . . ." (*Id.* at PageID# 1408.)

MRD's arguments are arguments against representative discovery generally and do not constitute a particularized showing of why it must depose all 117 plaintiffs in this case. "In FLSA cases, the use of representative testimony to establish class-wide liability has long been accepted." *Monroe*, 860 F.3d at 408.[5] Similarly, "courts have sanctioned representative sampling even when a defendant intends to later move for class decertification[.]" *Ross*, 2015 WL 1565430, at *3; *see also Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-cv-432, 2016 WL 305168, at *4 (S.D. Ohio Jan. 26, 2016) (noting that "decertification motions may and have been resolved following representative discovery"); *Gentrup*, 2010 WL 6766418, at *6 (rejecting defendant's argument "that individualized discovery is necessary for their motion for decertification because the entire purpose of the second stage of the decertification procedure is for the Court to assess the 'disparate

---

[4]     MRD also cites proposed unclean hands and fraud affirmative defenses based on Plaintiffs' individual representations as bases for these depositions. The Court has denied MRD's motion to amend its answer to include these affirmative defenses by separate order and does not consider their relevance to the discovery addressed by this Order.

[5]     As MRD correctly notes, the *Monroe* court was addressing trial testimony, not deposition testimony, in this statement. However, the approval of representative proof in the trial of FLSA actions is relevant to the sanctioning of representative discovery.

16

factual and employment settings of individual class members'"). Again, "[a] purpose of the FLSA is to allow plaintiffs to proceed collectively, resulting in reduced costs and more efficient resolution of disputes." *McNelley v. ALDI, Inc.*, No. 1:09 CV 1868, 2011 WL 13341125, at *2 (N.D. Ohio Mar. 7, 2011) (citing *Hoffman La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "Representative testimony is in accordance with that purpose." *Id.* (allowing depositions of 20 opt-in plaintiffs in 218-person class).

MRD has not made the "particularized showing" of why more than ten depositions are necessary that Rule 30 requires. *Potts*, 2018 WL 2431641, at *3. Accordingly, its motion to compel depositions of all named and opt-in plaintiffs will be denied. However, the Court will allow MRD to depose a representative group of opt-in class members as set out in the representative discovery plan.

### D.     Representative Discovery Plan

Plaintiffs have offered a plan for representative written discovery and depositions. (Doc. No. 157.) Plaintiffs propose that MRD serve "limited written discovery on a representative sample of 5 Plaintiffs." (*Id.* at PageID# 1375.) That written discovery would be limited to fifteen requests for production "and/or" interrogatories per plaintiff and to information "relevant to the FLSA's similarly situated analysis: (1) the factual and employment settings of the individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action.'" (*Id.* at PageID# 1376 (quoting *Monroe*, 860 F.3d at 397).) Plaintiffs recommend that their counsel propose ten representative opt-in plaintiffs "based on their current geographical location, work schedule, literacy, fluency, etc." (*Id.* at PageID# 1375.) Plaintiffs would then allow MRD to select five of the proposed opt-in plaintiffs to receive that written discovery. Plaintiffs do not offer a plan for representative depositions.

MRD objects to Plaintiffs' proposed plan as offering too few opt-in class members to create a statistically representative sample. (Doc. No. 163.) MRD further objects that Plaintiffs' limitation of written discovery to fifteen interrogatories "and/or" requests for production per plaintiff is confusing. MRD also renews its general objection to representative discovery in this case. (*Id.*)

Balancing the size of the class, the costs and burdens of discovery to Plaintiffs, and the type of discovery sought by MRD, and considering the June 18, 2020 Order's direction to implement a schedule for limited discovery, the Court finds that representative discovery is appropriate in this case. *See Potts*, 2018 WL 2431641 at *2. The Court also finds that the discovery plan Plaintiffs propose is not sufficient and that MRD's specific objections are well-taken. Accordingly, the Court will order limited representative discovery as follows:

MRD may serve requests for production and interrogatories on twelve opt-in class members. Plaintiffs and MRD will each choose six opt-in class members to receive this discovery. Plaintiffs and MRD shall meet and confer regarding the selection of the twelve opt-in class members to identify any circumstances that may increase the cost or burden of discovery from particular opt-in class members and shall endeavor to minimize those costs and burdens in their selections. Selection of the twelve opt-in class members shall be completed no later than December 7, 2020.

The opt-in-plaintiff written discovery is limited to ten requests for production and fifteen interrogatories. The requests for production and interrogatories shall be limited in scope to the specific facts identified in the June 18, 2020 Order and the factors relevant to the FLSA similarly-

situated analysis as articulated by the Sixth Circuit in *Monroe*.[6] MRD shall state its interrogatories and requests for production in plain language, without use of legal terms of art, such that they may be responded to without the assistance of counsel. No contention requests for production shall be included, although the Court may find contention discovery appropriate at a later stage of the litigation. MRD shall serve the opt-in class member discovery by no later than December 14, 2020. The opt-in class members shall provide their responses no later than thirty days after the discovery is served.

MRD has already served interrogatories and requests for production on and received full responses from the five named plaintiffs and does not seek to serve additional interrogatories. Should MRD require additional discovery from the named plaintiffs limited to the same subjects, it may serve an additional ten requests for production on each named plaintiff. No contention requests for production shall be included, although the Court may find contention discovery appropriate at a later stage of the litigation. MRD shall serve the named plaintiff discovery by no later than December 14, 2020. The named plaintiffs shall provide their responses no later than thirty days after the discovery is served.

MRD may depose all five named plaintiffs. It may also depose the twelve opt-in class members on whom it has served written discovery. The opt-in class members' depositions will be limited to two hours for each side. The depositions will be set for a mutually convenient date, time, and location. In setting the depositions, the parties shall take all reasonable steps to accommodate the opt-in plaintiffs' work schedules and to minimize any economic hardship.

---

[6]     To wit: "(1) the 'factual and employment settings of the individual[ ] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Monroe*, 860 F.3d at 397 (alteration in original) (quoting *O'Brien*, 575 F.3d at 584).

MRD has filed a motion to continue and to extend case management deadlines, including the January 19, 2021 trial date. (Doc. No. 238.) That motion will be addressed by Judge Richardson when it is ripe for review. A deadline for the completion of depositions and a schedule to complete the briefing of Plaintiffs' motion for summary judgment will be set by separate order after MRD's motion has been resolved.

**E.    Motion to Ascertain Status**

MRD filed a motion to ascertain the status of the discovery motions resolved by this Order, which MRD states is opposed by Plaintiffs.[7] (Doc. No. 237.) This is the first opposed motion to ascertain status that this Magistrate Judge can recall receiving. Unfortunately, that novelty is representative of how discovery has proceeded in this case.

Discovery throughout this case has been unnecessarily contentious. The parties have reached few, if any, agreements. As Judge Richardson found in his June 18, 2020 Order, Plaintiffs have refused to participate in required conferences to negotiate the resolution of discovery disputes. The Court will not allow this intransigence to continue as discovery proceeds. To that end, the Court finds guidance for counsel in the words of Magistrate Judge Wayne D. Brazil that it hopes they will take to heart in bringing this case to its long-delayed conclusion:

> The discovery system depends absolutely on good faith and common sense from counsel. The courts, sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions, simply do not have the resources to police closely the operation of the discovery process. The whole system of Civil adjudication would be ground to a virtual halt if the courts were forced to intervene in even a modest percentage of discovery transactions. That fact should impose on counsel an acute sense of responsibility about how they handle discovery matters. They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.

---

[7]    Plaintiffs did not file a response in opposition to this motion by the deadline set by this Court's Local Rules.

*In re Convergent Techs. Sec. Litig.*, 108 F.R.D. at 331.

The motion to ascertain status will be granted. The pending motions have been resolved by this Memorandum Order. A full schedule for the remainder of the litigation will be set after Judge Richardson addresses MRD's motion to continue and extend deadlines (Doc. No. 238).

## IV. Conclusion

For the reasons stated in this Memorandum Order, the Court ORDERS as follows:

Plaintiffs' motion to compel discovery responses (Doc. No. 133) is FOUND MOOT;

Plaintiffs' motion for a protective order (Doc. No. 156) is GRANTED IN PART AND DENIED IN PART;

Defendant MR Drywall's (MRD) motion to compel and for leave to take Plaintiffs' depositions (Doc. No. 158) is GRANTED IN PART AND DENIED IN PART;

MRD's motion to compel and for leave to take the depositions of Defendant First Class Interiors of Naples (FCI) and Defendant Jose Roberto Reyes (Doc. No. 171) is FOUND MOOT;

Plaintiffs' motion for a protective order (Doc. No. 188) is GRANTED IN PART AND DENIED IN PART;

MRD's motion to ascertain status (Doc. No. 237) is GRANTED.

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge