IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL ALVARADO MARTINEZ; ALEXANDRO PEREZ; NELSON EGUIZABAL BRITO; CARLOS CASTRO; and ALEXIS MARQUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> FIRST CLASS INTERIORS OF NAPLES, LLC; JOSE ROBERTO REYES Individually and d/b/a FIRST CLASS INTERIORS OF NAPLES, LLC; and MR. DRYWALL SERVICES, LLC, <br><br> Defendants. | CASE NO.: 3:18-CV-00583 <br><br> JUDGE RICHARDSON |

**DEFENDANT MR DRYWALL SERVICES, L.L.C.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56(a), Defendant MR. DRYWALL SERVICES, L.L.C. ("MRD"), by and through its undersigned counsel, hereby moves the Court for summary judgment in its favor and against Plaintiffs as to Plaintiffs' claim in Count I. The record does not raise a genuine issue of material fact, and MRD is entitled to judgment as a matter of law.

**INTRODUCTION**

Plaintiffs allege that "Defendants," their definition of which incorrectly lumps together Defendant First Class Interiors of Naples, LLC ("FCI"), Defendant Jose Roberto Reyes ("Reyes"), and MRD, "are statutory and joint employers of Plaintiffs" in relation to their work on the construction project at issue in this case ("Project"). (Doc. No. 1 ¶ 74). While unclear, it

1

appears that Plaintiffs allege that, although they chose to be classified as independent contractors for tax purposes, they were FLSA statutory employees of FCI, and that MRD is also liable for their wages under the joint employer doctrine. As set forth below, the available evidence shows, however, that MRD was not a joint employer under the law.

While Plaintiffs' theory does not appear to be that MRD was their statutory employer under the FLSA, because the Court has previously noted that MRD would be liable if it is either a joint employer or a statutory employer, MRD also discusses below how the evidence demonstrates it was not the Plaintiffs' statutory employer under the FLSA. At most, the Plaintiffs were independent contractors of MRD pursuant to the terms of the FCI Subcontract between MRD and FCI ).

Thus, as discussed below, because Plaintiffs cannot demonstrate that MRD was a joint employer or statutory employer, the Court should grant this Motion.

## STATEMENT OF FACTS

The relevant statement of facts and citations to supporting evidence is set forth in MRD's LR56.01 Statement Of Undisputed Material Facts ("MRD SMF") filed concurrently herewith. MRD also incorporates its Response to Plaintiffs' Statement of Facts and Statement of Additional Facts ("MRD Opp. SMF"), filed concurrently herewith.

As to the procedural background, Plaintiffs commenced this lawsuit on June 25, 2018, as a collective action under the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 201, for allegedly unpaid wages, retaliation, and corresponding damages. (Doc. No. 1 ¶ 1). Plaintiffs purport to bring this collective action, not only on behalf of themselves, but also for all persons similarly situated, and specifically "seek redress for Defendants' willful failure to compensate them for hours worked at the applicable federal minimum wage and for failing to compensate

them for hours worked in excess of 40 hours per week at one and one half times the regular hourly rate." (Doc. No. 1 ¶ 1). Plaintiffs' claim against MRD is limited to Count I, which asserts a violation of FLSA for failure to pay overtime wages.

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341–42 (6th Cir. 1990), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A mere scintilla of evidence is insufficient, because "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.*, *quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

## ARGUMENT

### I. MRD IS NOT THE PLAINTIFFS' EMPLOYER.

To succeed on an unpaid overtime claim under the FLSA, a plaintiff must establish: (1) an employer-employee relationship; (2) that the employer or its employees are engaged in interstate commerce; (3) that the employee worked more than forty hours; and (4) that overtime was not paid. *Stansbury v. Faulkner*, No. 2:18-cv-02746, 2020 WL 807540, at *4 (W.D. Tenn. Feb. 18, 2020) (citing *Whaley v. Henry Ford Health System*, 172 F. Supp. 3d 994, 1001 (E.D. Mich. 2016).

The FLSA defines an "employee" as "any individual employed by an employer." 29

U.S.C. § 203(e)(1). An entity "employ[s]" an individual if it "suffer[s] or permit[s the individual] to work." *Id.* § 203(g). "The term of art 'work,' which includes 'to suffer or permit to work,' means 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Stansbury*, No. 2:18-cv-02746, 2020 WL 807540, at *926-27; *Brock v. City of Cincinnati*, 236 F.3d 793, 801 (6th Cir. 2001).

### A. MRD IS NOT AN FLSA JOINT EMPLOYER.

Under the FLSA, a worker may be jointly employed by two entities, each of which is responsible for complying with the FLSA. 29 C.F.R. § 791.2. The issue of joint employment for FLSA purposes "depends upon all the facts in the particular case" and is "largely an issue of control." *Keeton v. Time Warner Cable*, No. 2:09-CV-1085, 2011 WL 2618926, at *3 (S.D. Ohio July 1, 2011).

To determine whether two or more companies are joint employers, the Sixth Circuit considers the following four factors: (1) the interrelation of operations between the companies, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Keeton*, No. 2:09-CV-1085, 2010 WL 2076813, at *3 (*citing Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.,* 927 F.2d 900, 902 (6th Cir. 1991)) (*quoting Metro. Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)).

While some courts have used the above economic reality test to determine joint employment, the Department of Labor recently promulgated regulations that disapprove of using the economic reality test in determining joint employer status. *See* 29 C.F.R. § 791.2(c) ("Whether the employee is economically dependent on the potential joint employer is not

4

relevant for determining the potential joint employer's liability under the Act. Accordingly, to determine joint employer status, no factors should be used to assess economic dependence.") (effective March 16, 2020). The Department of Labor has recognized two scenarios of joint-employment, and here, it appears that Plaintiffs are alleging the first scenario, *i.e.*, "the employee has an employer who suffers, permits, or otherwise employs the employee to work," here, FCI, "but another person simultaneously benefits from that work," here, allegedly MRD. 29 C.F.R. § 791.2(a)(1). In this scenario, to determine if there is a joint-employer relationship, courts should consider whether the defendant: "(i) Hires or fires the employee; (ii) Supervises and controls the employee's work schedule or conditions of employment to a substantial degree; (iii) Determines the employee's rate and method of payment; and (iv) Maintains the employee's employment records." *Id*. No single factor is dispositive in determining joint employer status, *id*., and all here demonstrate there is no joint employment.

As discussed below, regardless of whether the Court applies the Sixth Circuit test or the Department of Labor regulation to determine joint employment under the FLSA, the evidence demonstrates that MRD was not the Plaintiffs' joint employer. Namely, it is undisputed that there is no common ownership or management between MRD and FCI, and the evidence here shows that there was no interrelated operations and no centralized control of labor relations between MRD and FCI. As to the Department of Labor regulation, it is undisputed that FCI hired the Plaintiffs and was the only party with the authority to fire them (even if the Court were to assume that, in some rare occasions, this was done at MRD's suggestion). It is also undisputed that FCI set the Plaintiffs' pay rate and method of payment. As to employment records, there is no dispute that MRD only kept its own records of the hours worked by Plaintiffs, but because this was done in order for MRD to monitor FCI's performance under the

5

FCI Subcontract and ensure that FCI was not overbilling for its supplemental labor force, they are excluded from the regulation, and are not relevant to the questions of whether MRD was a joint employer. Finally, the evidence also shows that FCI solely supervised and controlled the Plaintiffs' work schedule and conditions of employment. To the extent that MRD coordinated with FCI or, on occasions, had to talk to a worker for not following safety regulations, provided a tool (which was in any event paid for by FCI), or supervised the work to ensure compliance with the FCI Subcontract, such "supervision and control" was both irrelevant under the Department of Labor regulations and did not raise to the level of being substantial, as needed for this last factor to favor a finding of joint employment.

      *1.*    <u>MRD is not a joint employer under the Sixth Circuit's test.</u>

The evidence in this case demonstrates that MRD was not a joint employer under the test used in the Sixth Circuit.

      *i.*    *There is no common management or ownership.*

There is no dispute, as the Plaintiffs actually included in their Statement of Undisputed Material Facts In Support Of Plaintiffs' Motion for Summary Judgment ("Plaintiffs' SMF"), that there is no common ownership or management between FCI and MRD because MRD and FCI are separate entities and Reyes was FCI's sole owner. Plaintiffs' SMF ¶¶ 1-2, 4; MRD Opp. SMF ¶¶ 1-2, 4; MRD SMF ¶¶ 8-17.

      *ii.*    *There is no interrelated operations and centralized control of labor relations.*

There is no interrelated operations and no centralized control of labor relations between MRD and FCI. First, the evidence indicates that the FCI Subcontract was the product of arm's-length dealings; and that MRD and FCI engaged in arm's length dealings throughout the Project, as shown by MRD's refusal to pay FCI for FCI's inflated hours, MRD requiring FCI to repay a

6

loan, and a dispute over the amounts of money to be paid after Skanska supplemented FCI's labor on the Project, which is what led to termination of the relationship between the two companies and FCI asserting a cross claim against MRD in this case. MRD SMF ¶¶ 20, 26; (Doc. No. 21 at 19). Such facts show that MRD and FCI not interrelated. *Int'l Longshoremen's Ass'n, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991).

Second, the FCI Subcontract's language shows that FCI and MRD were not interrelated or had a centralized control of labor relations. *See* Exh. 10 (the FCI Subcontract). The Sixth Circuit has held that while "contract language is not controlling, it is persuasive evidence of the parties' intentions and of their understanding of their contractual arrangement. *Norfolk,* 927 F.2d at 903. Here, among other things, the FCI Subcontract, which is an accurate reflection of the relationship and division of labor between FCI and MRD (MRD SMF ¶ 21) dictates that FCI was the employer had exclusive control over the Plaintiffs (MRD SMF ¶¶ 22, 36), FCI was to provide labor, tools and expendables for the Project (MRD SMF ¶ 23), and FCI was responsible for providing and maintaining worker's comp and general liability insurance (MRD SMF ¶ 39). The FCI Subcontract also set forth the terms for payment from MRD to FCI. MRD SMF ¶¶ 31-32.

There was likewise no centralized control of labor relations. Both FCI and Plaintiffs testified the FCI recruited, hired, and paid the workers. *See, e.g.,* MRD SFM ¶¶ 45-47, 56, 58. There is simply no evidence that MRD had any role in hiring, establishing the workers' wages, or paying them. *Id.* at ¶¶ 45-47, 56, 58, 59-60. Likewise, as FCI and Plaintiffs agree, MRD had no input in or control over whether to classify Plaintiffs as employees or independent contractors. MRD SMF ¶¶ 49-51. Nor did MRD have authority to fire FCI employees. MRD SMF ¶¶ 52. At most, MRD could request that FCI send home workers who were not complying

with Skanska's and applicable safety rules and laws, which FCI had agreed to comply with under the FCI Subcontract. MRD SMF ¶¶ 53. And while MRD could suggest that a worker no longer be assigned to the Project, FCI was free to assign its workers to other projects it was working on. MRD SMF ¶¶ 54, 55; MRD Opp. SMF Response to ¶ 35. In addition, the Plaintiffs were supervised by FCI and MRD's interactions with FCI's workers were not beyond the extent necessary for the performance of MRD's and FCI's basic contractual duties under the Skanska Contract and FCI Subcontract. MRD SMF ¶¶ 91-97. In sum, Plaintiffs have not shown that the interactions between MRD and FCI "were substantially interrelated beyond the extent necessary to the performance of their basic contractual duties." *Norfolk*, 927 F.2d at 903.

Rather, MRD merely contracted with FCI to provide construction services to fulfill MRD's contract with Skanska. District courts have rejected joint employment under similar circumstances. *See e.g. Narjes v. Absolute Health Services, Inc.*, No. 5:17cv739, 2018 WL 3208180, *4-6 (N.D. Ohio June 29, 2018) (where pharmacy contracted with delivery service to deliver to its customers, the pharmacy was not a joint employer of delivery service's independent contractor under the FLSA because none of the *Norfolk* or *Sanford* factors were met); *Gonzalez v. HCA, Inc.*, No. 3:10-cv-00577, 2011 WL 3793651, *13-14 (M.D. Tenn. 2011) (parent corporation was not plaintiff's employer because the facts did not support a finding that it was a joint employer with subsidiaries, as there was no common control, interrelations of operations, or centralized labor relations). Accordingly, all four factors in the test used in the Sixth Circuit demonstrate that MRD was not a joint employer under the FLSA.

    2. <u>MRD is not a joint employer under the Department of Labor Regulations.</u>

All of the factors in the Department of Labor test also favor a finding that MRD is not a joint employer.

### i. *MRD did not hire or fire the Plaintiffs*

It is beyond dispute that FCI hired the workers. In fact, both FCI and Plaintiffs admitted that FCI was solely responsible for recruiting and hiring the Plaintiffs, and that MRD had no role in hiring of the Plaintiffs. *See, e.g.,* MRD SFM ¶¶ 45-47, 56, 58.

The evidence also demonstrates that MRD did not fire any of FCI's workers, and did not have authority to do so. MRD SMF ¶¶ 52. Again, while MRD could coordinate with FCI and request that a worker who failed to comply with safety rules or otherwise failed to comply with the requirements of the FCI Subcontract be sent home, or even suggest that specific workers no longer be assigned to the Project, MRD could not fire these workers from the employ of FCI who could, in turn, assign them other projects. MRD SMF ¶¶ 53-55; MRD Opp. SMF Response to ¶ 36. While Plaintiffs allege that MRD did fire workers, when FCI and Plaintiffs were deposed they admitted that MRD merely sent workers home for safety violations and that they weren't aware of MRD firing anyone. *Id.* Moreover, often times, it was Skanska, and not MRD, who requested that a worker be sent home, and MRD merely passed the message along. MRD SMF ¶ 110; MRD Opp. SMF ¶ 36. Such monitoring of contractual obligations does not result in MRD being the Plaintiffs' joint employer. 29 C.F.R. § 791.2(a)(1); *Norfolk*, 927 F.2d at 902-903 (holding that advising, making recommendations, and having input into another party's employees is not sufficient to make defendant a joint employer). Thus, even if the Court were to assume that MRD requested that a certain worker not be assigned to the Project going forward, the evidence discussed above shows that it was FCI that had the power to make the decision on whether to fire such employee. At a minimum, FCI could assign such workers to other available projects. Thus, there can be no question that FCI was the party with sole authority to fire the workers from its employ. As the Department of Labor has explained, FCI's "voluntary decision

9

to grant the potential joint employer's [*i.e.*, MRD's] request, recommendation, or suggestion does not constitute indirect control that can demonstrate joint employer status." 29 C.F.R. § 791.2 (a)(3)(ii).

Plaintiffs might argue that FCI was forced to fire the workers when MRD terminated the FCI Subcontract. However, MRD had a right to do so and did not prevent FCI from working on other projects and sending its labor force to such other projects. "Acts that incidentally impact the employee also do not indicate joint employer status." *Id.* Moreover, FCI has admitted that it worked on other projects after MRD terminated the FCI Subcontract (MRD Opp. SMF Response to ¶ 80) and it could have assigned its workers to such project.

> ii. *MRD did not supervise and control the Plaintiffs' work schedule or conditions of employment to **a substantial degree**.*

With regards to direct or indirect control, the Department of Labor clarified that "[i]ndirect control is exercised by the potential joint employer through mandatory directions to another employer that directly controls the employee. But the direct employer's voluntary decision to grant the potential joint employer's request, recommendation, or suggestion does not constitute indirect control that can demonstrate joint employer status. Acts that incidentally impact the employee also do not indicate joint employer status." 29 C.F.R. § 791.2 (a)(3)(ii).

FCI and the Plaintiffs deposed confirmed that only FCI was their employer and in charge of them, and that they would get their assignments and discuss any work-related question with FCI, who supervised their work. MRD SMF ¶¶ 91-96. Plaintiffs allege only that MRD Superintendents were on site and gave instructions to Plaintiffs. (Dkt. 1, ¶¶ 27-28). When deposed, FCI and Plaintiffs admitted that MRD's Superintendents were not always present at the jobsite and that their role was to inspect the finished product. MRD SMF ¶¶ 102-106. Such oversight or instruction, even on a day-to-day basis, is insufficient to establish employment. *See,*

10

*e.g., Narjes*, No. 5:17cv739, 2018 WL 3208180 at *4-6 (no joint employment found despite company's setting of schedules and monitoring of independent contractor's compliance with dress code and timeliness of deliveries, among other facts, because there was no interrelations between companies or common ownership or management); *Teamsters Local Union No. 89 v. Kroger Co.*, 921 F.Supp.2d 733, 743 (W.D. Ky. 2013) (holding that the entity defendant's mere involvement in the day-to-day operations with a delivery service company it contracted with to provide transportation services, was not enough to show "interrelation of operations" without additional evidence that the entity defendant had control over the terms and conditions of employment, such as hiring, firing, discipline, or negotiating authority); *Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.*, 778 F.2d 132, 138 (2d Cir. 1985) (finding the fact that a company complains to a contractor about problems that the company's customers had with the contractor's drivers, and that the company "expected appropriate action to be taken" against the contractor's driver did not demonstrate joint employment).

Moreover, as cited above, the deposition testimony conclusively shows that any such supervision by MRD was minimal and focused on FCI's compliance with the FCI Subcontract, which MRD had a right to do without becoming the Plaintiffs' employer. 29 C.F.R. § 791.2(d)(3) ("The potential joint employer's contractual agreements with the employer requiring the employer to comply with specific legal obligations or to meet certain standards to protect the health or safety of its employees or the public . . . [and] the monitoring and enforcement of such contractual agreements against the employer does not make joint employer status more or less likely under the Act.") Thus, MRD ensuring that FCI complied with the work required by the FCI Subcontract, by communicating with FCI's Supervisors, and then those FCI Supervisors then directing FCI's workers, does not establish that MRD exercised the supervision or control

11

necessary to create an employment relationship. *See, e.g. Kroger*, 921 F. Supp. 2d at 745 (noting that the entity defendant "acted to oversee its contractor's performance to ensure consistency among its warehouses, and to see that its products meet its standard which further supports [the entity defendant's] identity as . . . a customer, not a joint employer."). Indeed, per its contract with MRD, FCI controlled and supervised its workers exclusively.  MRD SMF ¶ 22.

Therefore, this factor also weighs in favor of finding that MRD was not a joint employer.

       iii.  *MRD did not determine the Plaitniff's rate or method of payment*

As set forth above, both FCI and every Plaintiff that was asked has admitted that FCI was the only party that determined their rate of pay and was responsible for paying their wages. *See, e.g.,* MRD SFM ¶¶ 45-47, 56, 58.  They have likewise admitted that when there were questions about payments, then directed their questions to FCI, not MRD.  *Id.*  There is simply no evidence that MRD had any role in establishing the workers' wages, or paying them.  *Id.* at ¶¶ 45-47, 56, 58, 59-60.  Unable to dispute this fact, Plaintiffs try to confuse the issue by equating the rate that MRD paid FCI, and adjustments to such rates, with the rate that FCI paid the workers, but even Plaintiffs are forced to admit that such rates were different, and that FCI would pay its workers the rate it had agreed to pay them notwithstanding disagreements it had with MRD as to what MRD owed FCI. *See* MRD SMF ¶¶ 27-29; 56-63.  In sum, the evidence cited above shows that: (1) not one worker received compensation from MRD; (2) the workers did not speak with MRD regarding their wages;  and (3) FCI determined and paid the workers' wages.  It is simply beyond dispute that this factor weighs in favor of finding that MRD was not a joint employer.

       iv.  *MRD did not maintain the Plaintiffs' Employment Records.*

Under the regulation, "employment records" means "records, such as payroll records, that reflect, relate to, or otherwise record information pertaining to the hiring or firing, supervision

and control of the work schedules or conditions of employment, or determining the rate and method of payment of the employee." 29 C.F.R. § 791.2(a)(2). However, the definition excludes records "maintained by the potential joint employer related to the employer's compliance with the contractual agreements," such as legal obligations or to meet certain safety or quality standards. *Id*. Therefore, "monitoring and enforcement of such contractual agreements against the employer does not make joint employer status more or less likely under the Act." *Id*. at (d)(3). Such contractual agreements include, but are not limited to, "requiring employers to establish workplace safety practices and protocols or to provide workers training regarding matters such as health, safety, or legal compliance." *Id*. Nor do "the potential joint employer's contractual agreements with the employer requiring quality control standards to ensure the consistent quality of the work product, brand, or business reputation do not make joint employer status more or less likely under the Act. Similarly, the monitoring and enforcement of such agreements against the employer does not make joint employer status more or less likely under the Act. Such contractual agreements include, but are not limited to, specifying the size or scope of the work project, requiring the employer to meet quantity and quality standards and deadlines, requiring morality clauses, or requiring the use of standardized products, services, or advertising to maintain brand standards." *Id*. at (d)(4).

Here, MRD did not maintain any of the relevant employment records. Rather, FCI did so, including the forms it provided to Plaintiffs when FCI hired them, and records tracking the number of hours the Plaintiffs worked. MRD SMF ¶¶ 80-86. MRD did maintain its own records relating to the number of hours Plaintiffs worked on certain aspects of the Project. MRD SMF ¶¶ 88-90. These records, however, were not used in relation to Plaintiffs' employ or wages earned. Rather, they were maintained solely for MRD to accurately process its payments to FCI

under the FCI Subcontract and monitor and enforce FCI's and MRD's contractual agreements. *Id.* Records maintained by MRD to ensure compliance with the FCI Subcontract do not amount to "Employment Records" under the Department of Labor regulation.

In conclusion, the evidence here demonstrates that MRD was not the Plaintiffs' joint employer and the Court should grant this Motion.

### B. NOR IS MRD PLAINTIFF'S STATUTORY EMPLOYER.

As discussed above, Plaintiffs admit that they were employed by FCI, a subcontractor of MRD. MRD is not the Plaintiffs' employer because it did not "suffer or permit [Plaintiffs] to work." 29 U.S.C. § 203(g). Rather, it was FCI that did so, and their work was necessarily and primarily for the benefit of Skanska, as the general contract on the Project, and not MRD. *See Stansbury v. Faulkner*, No. 2:18-cv-02746, 2020 WL 807540, at *5 (W.D. Tenn. Feb. 18, 2020). As such, MRD is not the Plaintiffs' employer. To the extent that Plaintiffs argue that they did perform work for MRD's benefit, it was not as a statutory employer but rather pursuant to the FCI Subcontract and thus, at best, Plaintiffs would be considered MRD's independent contractors.

"Under the FLSA, only employees are entitled to overtime and minimum-wage compensation." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citing *Ellington*, 689 F.3d at 553). Independent contractors do not enjoy FLSA's protections. *Id.* The FLSA defines "'employer' more broadly than the term would be interpreted in traditional common law applications." *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir. 1991) (quoting *McLaughlin v. Seafood, Inc.,* 867 F.2d 875, 877 (5th Cir. 1989) (per curiam)). Whether a FLSA plaintiff is an employee or an independent contractor is a mixed question of law and fact. *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (Citing *Lilley*

14

*v. BTM Corp.,* 958 F.2d 746, 750 n.1 (6th Cir.1992)). To determine if an individual is an employee or an independent contractor, the Sixth Circuit uses the "economic reality" test. *Stansbury v. Faulkner*, No. 2:18-cv-02746, 2020 WL 807540, at *4 (W.D. Tenn. Feb. 18, 2020).

When applying the economic reality test, "[r]elevant factors to consider may include whether the plaintiff is an integral part of the operations of the putative employer;[1] the extent of the plaintiff's economic dependence on the defendant; the defendant's 'substantial control of the terms and conditions of the work' of the plaintiff; the defendant's authority to hire or fire the plaintiff; and whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 556 (6th Cir. 2012). Courts have also considered investment in equipment or materials. *LeMaster v. Alternative Healthcare Sols.*, Inc., 726 F. Supp. 2d 854, 860 (M.D. Tenn. 2010) (citing *Imars v. Contractors Mfg. Servs., Inc.*, No. 97–3543, 1998 WL 598778, at *3 (6th Cir. Aug. 24, 1998)). "No one factor is determinative; '[a] central question is the worker's economic dependence upon the business for which he is laboring.'" *Id.* (quoting *Brandel,* 736 F.2d at 1120).

The economic realities of the instant case lead only to the conclusion that MRD was not the Plaintiffs' employer, and that summary judgment is proper as a matter of law.

       1.    <u>Plaintiffs Were Not Economically Dependent On MRD, Who Was Not Responsible For Their Wages</u>.

As discussed above, it was FCI who determined Plaintiffs' rate of pay and who was solely responsible for paying their compensation. *See* Section A.2.iii. As such, Plaintiffs were economically dependent on FCI, not on MRD. In fact, FCI has admitted that regardless of

---

[1] For purposes of this Motion, MRD will not dispute that drywall work is an integral service it provides to general contractors. However, MRD notes that, as is customary and as MRD did here, it generally subcontracts with other companies who supply the labor force for its drywall services.

15

whether or what amounts MRD paid FCI under the terms of the FCI Subcontract, FCI was responsible for paying the Plaintiffs the monies it owed them for the work their performed. *Id.* Moreover, FCI admitted that it was its decision whether to pay the Plaintiffs overtime, and that FCI made its decisions not based on anything that MRD told them, but solely on whether it could afford to pay them based on the monies FCI had. *Id.*

Plaintiffs have also admitted that FCI was the only party that paid them and the one who set their rate. *Id*. When they were allegedly owed wages, they demanded payment from FCI, whom they considered their employer and who was responsible for payment. *Id*. It is beyond dispute, then, that if the Plaintiffs were economically dependent on any party, it was on FCI. *Id.*

> i. *Substantial control of the terms and conditions of Plaintiffs' work.*

As discussed on section A.2.ii above, MRD did not have substantial control of the terms and conditions" of Plaintiffs' work.

> ii. *Authority to hire or fire the Plaintiffs.*

As discussed on section A.2.i above, MRD did not have authority to hire or fire the Plaintiffs.

> iii. *Maintenance of employment records and rate and method of payment.*

As discussed on section A.2.iii and A.2.iv above, MRD did not maintain the Plaintiffs' employment record nor established their rate or method of payment.

> v. *Investment in equipment or materials.*

It is undisputed that FCI made all the investments in the equipment and materials used by the Plaintiffs, as was required by the FCI Subcontract. MRD SMF ¶¶ 75-79. The fact that MRD might have stored the equipment in its offices or, on occasions, handed the tools to the Plaintiffs, is irrelevant. *Id.* The tools belonged to FCI and FCI paid for them. *Id.* While MRD might have,

16

on occasions, purchased a tool, the monies spend on such purchases was later deducted from the payments that MRD made to FCI. *Id.* FCI was also the party who paid for the Plaintiffs' housing. MRD SMF ¶ 68.

In sum, even if the Court were to find that the Plaintiffs "performed work" for MRD, they did so as independent contractors and MRD was not their statutory employer under the economic realities test. As such, summary judgment must be entered.

## CONCLUSION

For the reasons set forth above, MRD respectfully requests that the Court grant this Motion, summary judgment in favor of MRD, and grant such other and further relief as the Court deems just and proper.

Dated: May 21, 2020

Respectfully submitted,

/s/ Steven D. Weber
Steven D. Weber
STARK WEBER PLLC
1221 BRICKELL AVENUE
SUITE 900
MIAMI, FL 33131
(305) 377-8788 (main)
steve@starkweber.com

(admission Pro Hac Vice)

*Lead Attorneys for Defendant MR Drywall Services, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via the Court's CM/ECF system upon the following:

Karla Campbell, Esq.
Callie Jennings, Esq.
Anthony Orlandi
Branstetter, Stranch & Jennings, PLLC

17

223 Rosa L. Parks Ave., 2nd Floor
Nashville, Tennessee 37203
aorlandi@bsjfirm.com
ecf-processor@bsjfirm.com
calliej@bsjfirm.com
karlac@bsjfirm.com

*Attorneys for Plaintiffs*

Bruce E. Loren
Loren & Kean Law
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL 33418
Email: bloren@lorenkeanlaw.com

Mark W. Peters
Heath H. Edwards
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Email: mark.peters@wallerlaw.com
Email: heath.edwards@wallerlaw.com

*Attorneys for Defendants Jose Roberto Reyes, Individually and dba First Class Interiors of Naples, LLC*

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street, Suite 3102
Nashville, TN 37203
615.915.3300 (main)
866.277.5494 (fax)
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com
bforrester@webbsanderslaw.com

*Attorneys for Defendant MR Drywall Services, L.L.C.*

on this 21st day of May, 2021.

/s/ Steven D. Weber
Steven D. Weber
