IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL ALVARADO MARTINEZ;<br>ALEXANDRO PEREZ;<br>NELSON EGUIZABAL BRITO;<br>CARLOS CASTRO; and<br>ALEXIS MARQUEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>FIRST CLASS INTERIORS OF NAPLES,<br>LLC; JOSE ROBERTO REYES<br>Individually and d/b/a<br>FIRST CLASS INTERIORS<br>OF NAPLES, LLC; and<br>MR. DRYWALL SERVICES, LLC,<br><br>    Defendants. | CASE NO.: 3:18-CV-00583<br><br>JUDGE RICHARDSON |

### DEFENDANT MR DRYWALL SERVICES, L.L.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DECERTIFY CASE AS A COLLECTIVE ACTION

Defendant MR Drywall Services, L.L.C. ("MRD"), by and through its undersigned counsel, hereby moves this Court to decertify this case as a collective action. As discussed below, this action must be decertified as to MRD because the evidence and the record, including but not limited to Plaintiffs'[1] pleadings, affidavits, and deposition testimony, demonstrates that MRD was not the statutory or joint employer of the Plaintiffs. Moreover, decertification is proper as to MRD because (1) differences in several aspects of the factual and employment settings of the Plaintiffs weight in favor of decertification; (2) Plaintiffs are subject to various defenses that are individual to each of the Plaintiffs; and (3) fairness and procedural

---

[1] The term "Plaintiffs" refers collectively to Opt-In Plaintiffs and the Named Plaintiffs.

1

considerations weigh in favor of decertification. Finally, there is no evidence of a single decision, policy, or plan that MRD applied to Plaintiffs in violation of the Fair Labor Standards Act (the "FLSA") and thus this also favors decertification.

## STATEMENT OF FACTS

MRD incorporates by reference its Statement of Undisputed Facts in support of its Motion for Summary Judgment and its Responses to Plaintiffs' Statement of Material Facts, both filed concurrently herewith.[2]

## LEGAL STANDARD

After a district court conditionally certifies a case as a collective action, a defendant may move to decertify any such collective action whereby a court will "examine more closely the question of whether particular members of the class are, in fact, similarly situated . . . since 'the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D. N.J. 2000)). The Sixth Circuit has approved the following three factors to be weighed by the district court during the second stage analysis: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F.App'x 669, 671-72 (6th Cir. 2012); *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), (abrogated on other grounds by *Campbell-Ewald Co., v. Gomez*, 577 U.S. 153 (2016).

---

[2] "MRD's SMF" refers to MRD's Statement Of Undisputed Material Facts In Support of it's Motion for Summary Judgment. "MRD's Opp. SMF" refers to MRD's Response to Plaintiffs' Statement Of Undisputed Material Facts In Support Of Their Motion For Summary Judgment.

The lead plaintiffs "bear the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiffs." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). If the court determines that such plaintiffs are not, in fact, similarly situated, the class is decertified, the opt-in plaintiffs' claims are dismissed without prejudice, and the lead plaintiffs may proceed individually. *Kutzback v. LMS Intellibound, LLC*, 301 F. Supp. 3d 807, 817 (W.D. Tenn. 2018).

## ARGUMENT

### I. THE FACTUAL AND EMPLOYMENT SETTINGS OF THE PLANTIFFS WEIGHT IN FAVOR OF DECERTIFICATION.

#### a. MRD Is Not the Plaintiffs' Employer.

As set forth in MRD's Motion for Summary Judgment, concurrently filed and incorporated herewith by reference, MRD is not the Plaintiffs' statutory or joint employer, and the Court should decertify the class as to MRD on this basis.

#### b. In the Alternative, Plaintiffs Had Differing Factual and Employment Settings That Merit Decertification.

##### i. Plaintiffs were allegedly subject to different degrees of the alleged supervision by MRD.

As discussed in the pending Motions for Summary Judgment, a factor that courts consider to determine if a defendant is a statutory or joint employer under the FLSA is whether the potential employer exercised substantial supervision and control over the workers' schedule and employment conditions. *See* MRD's Motion for Summary Judgment, at pp. 4-5 and 15. The material underlying facts regarding MRD's alleged supervision and control are undisputed. The question, however, is whether such alleged supervision, which was done in order to ensure compliance with FCI's contractual obligations, are sufficient to consider MRD a joint employer

3

of the Plaintiffs. To be clear, MRD respectfully submit that none of the alleged supervision or interactions between Plaintiffs and MRD are sufficient to consider MRD a statutory or joint employer. MRD's Motion for Summary Judgment at Sections I.A and I.B. But, if the Court disagrees and denies summary judgment in favor of MRD, then any disputed facts that prevent summary judgment as to this question also mandate decertification.

For example, the evidence demonstrates that Plaintiffs had differences as to their interactions with MRD. Some Opt-In Plaintiffs testified that while MRD Superintendents did not supervise them, they observed MRD Superintendents directly speaking to other workers assigned in other areas, and believed, although they did not know, that such MRD Superintendent were supervising these other workers.[3] *Compare* Exh. A, Magana Depo. 78:5-15 (although she testified earlier that she was not supervised by MRD, she "heard" that Rhonda and Sergio from MRD directed other workers) *with* Exh. B, Lizardo Depo. 21:2-22:10 (testifying that Byron was the only person who instructed and supervised him. Deponent believed Byron worked for Skanska, but it is undisputed that Byron was FCI's Supervisor). An FCI Supervisor testified that some workers, but not others, would direct questions about their assigned locations to MRD's Superintendents. Exh. C, Munguia Depo. 21:13-22 ("·Q. If a worker had a question about where they should be working, who would they ask? A. They would ask me or Biron depending on where the workers were.· If they were in the tower area, that was my responsibility. If they were in the podium area, that was the responsibility of either Ninja [MRD] or Biron [FCI].").

---

[3] As set forth in MRD's Motion for Summary Judgment, there is no evidence of substantial supervision or control as to the Plaintiffs. But, if the Court finds otherwise, then the testimony also establishes that different groups of workers had varying degree of "supervision" by MRD, and thus decertification is proper.

4

Case 3:18-cv-00583   Document 275   Filed 05/21/21   Page 4 of 13 PageID #: 3511

In addition, while MRD did not have authority to fire FCI workers, some of the Plaintiffs testified that they "observed" MRD employees request that FCI send employees that did not comply with safety rules be sent home. Compare MRD's Opp. SMF ¶¶ 35-36 *with* Responses to same. Again, as discussed in the Motion for Summary Judgment, such requests are not sufficient, under the law, to make MRD a joint employer. MRD's Motion for Summary Judgment, at Section I.A. However, to the extent the Court disagrees, the evidence demonstrates that such occurrences were rare and not common to all Plaintiffs. As such, the other Plaintiffs are not similarly situated to those whose MRD "sent home," "disciplined," or requested that FCI no longer assign them to the Project, and decertification is proper.

There is also different testimony as to the tools that the workers used. For example, some workers testified that they brought their own tools, while others testified that FCI provided them with tools, and still others testified that MRD handed them tools (although, as shown in the pending Motions for Summary Judgment, even if MRD handed FCI workers' tools, the tools belonged to FCI and FCI paid for them). *Compare* Exh. C Munguia Dep. 64:5-19 ("The personnel had to buy basic tools, but the more expensive tools like the nail guns would be provided by M&R and some other equipment by First Class.") *with* Exh.D, Reyes (June 2019) Depo. at *id.* 215:19-216:1 ("Okay. And who provided the tools and equipment? A: FCI provided a lot of the tools, but also MR ·from those tools that I say earlier that were getting charged (inaudible) [deducted from FCI's payments]… "*Most* [but not all] workers come to the job site prepared with personal tools."). This too shows that the workers were not similarly situated.

In sum, as to the critical question of whether MRD supervised and controlled FCI's employees to a substantial degree, the Plaintiffs had different factual experiences, and if they

create a factual dispute that prevents summary judgment in favor of MRD (which MRD submits, they do not), then decertification is proper.

> ii. **The Plaintiffs Performed Different Jobs for FCI and Were Treated Differently Under the FCI Subcontract.**

There are at least three types of FCI workers that have joined this lawsuit as alleged class members. First, under the FCI Subcontract, the principal type of worker that FCI would supply was a piecework worker to supply drywall and finishing work which was to be billed, not based on number of workers or hours worked, but by completed work. MRD SMF ¶ 24. In addition, FCI was allowed to supplement its work force and be compensated, only as to these additional workers by the number of hours worked. MRD's SMF ¶¶ 24-25. There were two types of additional workers: skilled and unskilled. As to these, MRD paid FCI two different rates, depending on the type of work the worker did and their skill set. MRD's SMF ¶¶ 24-29. The rate that MRD paid FCI for the different types of workers was not tied to the rate that FCI paid them. *Id.* This is evidenced, in part, by the fact that FCI agreed to pay some of its unskilled laborers the same rate as the finishers, even though MRD was paying MRD a lower hourly rate for them, and FCI thus complained when MRD would properly change their coding from skilled worker to laborer. *See generally* MRD's Opp. SMF ¶ 74 and MRD's Response thereto; MRD's SMF ¶¶ 56-58, 60-62. Unskilled workers do not fit the definition of class member in this case, yet at least one Opt-In Plaintiff has testified that he was an unskilled laborer not performing drywall installation or finishing work. Exh. B, Lizardo Depo. at 25:20-26:9 (testified that he was a laborer and his work was to "throw the trash away, clean the floors,"); *see also* MRD's SMF ¶¶ 24-25, 29. Also, s to the piecework workers, MRD was not paying an hourly rate at all, and if FCI had to ire more workers that it had planned to complete the tasks was irrelevant to what

6

MRD paid FCI under the FCI Subcontract. MRD's SMF ¶ 24. These different factual and employment settings also required decertification as to MRD.

### iii. The Plaintiffs Worked Different Schedules and Were Subject to Different Breaks

It is undisputed that the number of FCI workers that were present at the job site varied on a weekly, and sometimes daily basis. MRD's Opp. ¶ 9 and Response. It is also undisputed that FCI set different lunch breaks for each employee, varying from 30 minutes to one hour, and that the Plaintiffs did not clock out for their lunch or other frequent breaks, that some Plaintiffs were padding their hours by leaving early, with or without permission from FCI, and having a coworker clock out for them at the end of the day, and that sometimes workers assigned to the Project were not performing any work, thus, the number of hours worked by each alleged Class Member differs to such a degree that some, but not all, might have been owed overtime wages by FCI. *See* MRD's Opp. ¶ 22 and Response. More importantly is that even as those who might have, at times, worked over 40 hours a week, MRD does not owe overtime wages as it was not their joint employer and/or, at least as to some of them, they were FCI workers that performed contract work compensated by completed tasks and not by the hour. MRD's SMF ¶¶ 56-68. These key factual differences among the alleged Class Members also shows they are not similarly situated and decertification as to MRD is proper.

In conclusion, these differing key factual and employment settings among the Plaintiffs favor decertification as to MRD.

### II. DECERTIFICATION IS PROPER BECAUSE PLAINTIFFS ARE SUBJECT TO INDIVIDUAL DEFENSES.

If the Court does not agree that MRD is not, as a matter of law, the Plaintiffs' statutory or joint employer, then decertification is proper because Plaintiffs are subject to various defenses.

Namely, as shown through the depositions of the representative sample of the alleged Class Member, each Plaintiff and Class Member might have different arguments as to whether they were personally subject to substantial control or supervision by MRD to consider MRD an employer under the FLSA. *See* Section I above and MRD's Motion for Summary Judgment.

Again, MRD's position is that, as a matter of law, the occasional oversight MRD engaged in, which focused on compliance with the FCI Subcontract, is insufficient, as a matter of law, to consider MRD an employer under the FLSA. But, if the Court disagrees, then the evidence in this case demonstrates that each Plaintiff was subject to different degrees of interactions with MRD and thus their arguments as to whether MRD employed them differ and are specific to each Plaintiff. *Id.*

### III. **FAIRNESS AND PROCEDURAL CONSIDERATIONS WEIGH IN FAVOR OF DECERTIFICATION.**

To determine the fairness and procedural considerations at the decertification stage, "courts consider whether continuing the collective action comports with FLSA's 'broadly remedial and humanitarian' purposes." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, *4 (S.D. Ohio Nov. 2, 2015) (quoting *Wilks v. The Pep Boys*, No. 3:02-0837, 2006 WL 2821700, *8 (M.D. Tenn. Sept. 26, 2006)). "Courts balance the cost alleviation enjoyed by individual plaintiffs and any increase in judicial efficiency against the potential harm to defendants and any potential judicial inefficiency." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, *4 (S.D. Ohio Nov. 2, 2015). "Although FLSA must not be interpreted or applied in a narrow, grudging manner, the remedial nature of the FLSA, standing alone, does not justify allowing a case to proceed collectively." *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, *4 (S.D. Ohio Nov. 2, 2015).

In this case, Plaintiffs have failed to meet their burden to establish that they are similarly situated and have not provided sufficient evidence to support their arguments regarding MRD's liability under the FLSA. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (reiterating that the lead plaintiffs will still bear the burden at the decertification stage). It would be unfair and prejudicial to maintain this case as a collective action as to MRD where the record evidence shows that MRD was not a joint employer. At a minimum, it is unfair and prejudicial to MRD because the Plaintiffs are not similarly situated with regards to the amount of alleged supervision and control exerted by MRD over their work with FCI, the number of hours they worked, including how long their lunch and other breaks were, whether they left early with or without clocking out, and whether they were assigned to the Project but not actually doing any work, whether they had their own tools or were provided tools by FCI, whether they were piecework or supplemental hourly workers, whether they were skilled supplemental workers doing drywall and finishing work or unskilled supplemental laborers doing other chores, and whether they were ever disciplined or sent home by MRD. *See Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-cv-27, 2015 WL 6662919, *5 (S.D. Ohio Nov. 2, 2015) (decertifying a collective action that would result in an unfairness to the defendant and inefficiency to the court based on the plaintiffs' failure to show that they are similarly situated). Therefore, due to Plaintiffs' failure to overcome its burden, the unfair results to MRD should this case maintain its current collective action status, and the inefficiency that would befall this Court by improperly certifying this case as a collection action since the Plaintiffs are not similarly situated, weigh in favor of decertification.

## IV. FINALLY, THERE IS NO EVIDENCE OF ANY VIOLATION OF THE FLSA BY MRD THAT SUPPORTS FINAL CERTIFICATION.

Discovery in this case has shown that there was no class-wide practice or policy by *MRD* that violated the FLSA, and thus the Plaintiffs are not similarly situated as to MRD. Plaintiffs are "similarly situated" when they "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). In addition, plaintiffs are similarly situated when "their claims [a]re unified by theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009). However, "[t]here must be a showing beyond mere similarity." *Garcia v. SAR Food of Ohio, Inc.*, No. 1:14-CV-01514, 2015 WL 5022961, *3 (N.D. Ohio Aug. 24, 2015). "Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). "Courts [recognize] the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions. Otherwise, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671–72 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)).

In *Garcia v. SAR Food of Ohio, Inc.*, the plaintiff failed to meet his burden to show he is similarly situated as to the opt-in plaintiffs because he did not identify a "single, FLSA-violating policy" unifying the conditionally certified members' claims. No. 1:14-CV-01514, 2015 WL 5022961, *3 (N.D. Ohio Aug. 24, 2015) (failing to show a close nexus of facts, which could

constitute representative testimony for the opt-in plaintiffs).  Similarly, in *Frye v. Baptist Mem'l Hosp., Inc.*, the plaintiff's evidence and deposition testimony, which may have indicated individual FLSA violations, still failed "to demonstrate similarly situated plaintiffs experiencing a common FLSA injury" because too many variations and unique employees' experiences existed, which shows dissimilarities among the opt-in plaintiffs.  495 F. App'x 669, 672–73 (6th Cir. 2012).

In this case, the evidence shows that there was no common employment practices or policies *by MRD* that violated the FLSA.  Deposition testimony by FCI and Plaintiffs establishes that FCI was the only party responsible for hiring, setting the pay rates, and paying the Plaintiffs' wages.  MRD's SMF at ¶ 56-68.  FCI and the Plaintiffs have testified that FCI was the employer and was solely responsible for paying the workers, including overtime wages to workers who worked more than 40 hours a week, and that it was FCI's decision not to pay such overtime wages simply because it didn't have funds to do so.  MRD's SMF at ¶ 58, 102; Pls.; MRD's Response to MRD's Opp. ¶ 25. The Plaintiffs and FCI also testified that even if there were disagreements between MRD and FCI as to the payments MRD owed FCI, FCI was still responsible to pay the Plaintiffs. Accordingly, as the Sixth Circuit has recognized, the evidence in this case does not muster a sufficient demonstration of similarly situated plaintiffs as to MRD to withstand decertification.

## **CONCLUSION**

For the reasons set forth above, MRD respectfully requests that the Court to decertify this case as a collective action as to MRD and grant such other and further relief as the Court deems just and proper.

11

Case 3:18-cv-00583   Document 275   Filed 05/21/21   Page 11 of 13 PageID #: 3518

Dated: May 21, 2021               Respectfully submitted,

/s/ Steven D. Weber
Steven D. Weber
STARK WEBER PLLC
1221 BRICKELL AVENUE
SUITE 900
MIAMI, FL 33131
(305) 377-8788 (main)
steve@starkweber.com

(admission Pro Hac Vice)

*Lead Attorneys for Defendant MR Drywall Services, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via the Court's CM/ECF system upon the following:

Karla Campbell, Esq.
Callie Jennings, Esq.
Anthony Orlandi
Branstetter, Stranch & Jennings, PLLC
223 Rosa L. Parks Ave., 2nd Floor
Nashville, Tennessee 37203
aorlandi@bsjfirm.com
ecf-processor@bsjfirm.com
calliej@bsjfirm.com
karlac@bsjfirm.com

*Attorneys for Plaintiffs*

Bruce E. Loren
Loren & Kean Law
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL 33418
Email: bloren@lorenkeanlaw.com

Mark W. Peters
Heath H. Edwards
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219

Email: mark.peters@wallerlaw.com
Email: heath.edwards@wallerlaw.com

*Attorneys for Defendants Jose Roberto Reyes, Individually and dba First Class Interiors of Naples, LLC*

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street, Suite 3102
Nashville, TN 37203
615.915.3300 (main)
866.277.5494 (fax)
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com
bforrester@webbsanderslaw.com

*Attorneys for Defendant MR Drywall Services, L.L.C.*

on this 21st day of May, 2021.

/s/ Steven D. Weber
Steven D. Weber